KATHERINE A. ALBERTS, ESQ. (SBN 212825)
KATHERINE G. MORROW, ESQ. (SBN: 121511)
**LEONE ALBERTS & DUUS**
A Professional Corporation
1390 Willow Pass Road, Suite 700
Concord, CA 94520-7913
Telephone:     (925) 974-8600
Facsimile:     (925) 974-8601
Email: kalberts@leonealberts.com
          kmorrow@leonealberts.com

Attorneys for Defendant
WALNUT CREEK SCHOOL DISTRICT

THE UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.L.S., a minor, by and through his Guardian ad Litem, SERINA SANTOLERI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WALNUT CREEK SCHOOL DISTRICT, a public entity, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:<br><br>**DECLARATION OF KATHERINE G. MORROW, ESQ. IN SUPPORT OF DEFENDANT WALNUT CREEK SCHOOL DISTRICT'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) (FEDERAL QUESTION); DEMAND FOR JURY TRIAL**<br><br>Complaint filed: August 15, 2024<br>Trial Date: Not yet set |

I, KATHERINE G. MORROW, declare as follows:

     1.     I am an attorney at law licensed to practice before this Court.  I am an attorney with the law firm of Leone Alberts & Duus, attorneys of record for Defendant Walnut Creek School District. I am familiar with the facts, pleadings, and records in this action, and if called upon to testify I would competently testify to the following.

     2.     On or about August 15, 2024, Plaintiff B.L.S., a minor by and through his guardian ad litem, Serina Santoleri ("Plaintiff"), commenced an action in the Superior Court of

1

the State of California, County of Contra Costa, Case No. C24-02211 ("State Court Action").  A true and correct copy of the complaint is attached hereto as Exhibit A ("Complaint").

3.    I am informed and believe that Defendant Walnut Creek School District ("WUSD") was served with the Complaint via personal service on June 4, 2025.

4.    Defendant WUSD filed an answer to the Complaint in the State Court Action on June 26, 2025.  A true and correct copy of the answer is attached hereto as Exhibit B.

5.    This litigation is a civil action of which this Court has original jurisdiction under title 28, United States Code sections 1331 and 1343; and is one which may be removed to this Court by Defendant pursuant to the provisions of title 28, United States Code, section 1441, subdivision (a).  Such removal is proper given the Complaint seeks relief under title 42, United States Code section 12101, for alleged violation of the Americans with Disabilities Act; title 29, United States Code section 794, for alleged violations of the Rehabilitation Act of 1973; and title 42, United States Code section 1983, for alleged violations of constitutional rights.

6.    The Complaint also alleges state law claims arising out of the same case or controversy that may be heard by this Court under a grant of supplemental jurisdiction pursuant to title 28, United States Court, section 1367, subdivision (a).

7.    Attached to this declaration as Exhibits C 1- 9 are true and correct copies of the documents in court file in the State Court Action, including an index identifying those documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on June 26, 2025, at Concord, California.

_____
KATHERINE G. MORROW, ESQ.

DECLARATION OF KATHERINE G. MORROW IN SUPPORT OF        Case No.
DEFENDANT WALNUT CREEK SCHOOL DISTRICT'S NOTICE OF
REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) (FEDERAL
QUESTION)

# EXHIBIT A

STEVEN H. CROSS, Bar No. 316147
LAW OFFICE OF STEVEN H. CROSS
(925) 263-6687
steven@scrosslaw.com
1555 Botelho Dr., Ste. 149,
Walnut Creek, CA 94596

Attorney for Plaintiff          Per local Rule, This case is assigned to
                                Judge Devine, John P, for all purposes.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA

C24-02211

███████████████████, a minor, )   Case No.:
by and through his Guardian ad Litem, )
SERINA SANTOLERI, an individual,  )   **COMPLAINT FOR DAMAGES FOR:**
                                  )
                                  )   Violation of
          Plaintiff,              )   1. 42 U.S.C. 12101 (ADA);
                                  )   2. 29 U.S.C 794;
          vs.                     )   3. California Civil Code § 52.1, (UNRUH
                                  )      ACT);
WALNUT CREEK SCHOOL DISTRICT, a   )   4. Education Code § 220;
public entity, and DOES 1 through 100, )  5. Constitutional Rights (42 U.S.C. 1983);
inclusive,                        )   6. Safe Place to Learn Act (CA Ed. Code §
                                  )      234);
          Defendants.             )      and
                                  )   7. Negligence (Gov. Code §§ 815.2, 820);
                                  )   8. Negligent Supervision, Hiring, and/or
                                  )      Retention (Gov. Code §§ 815.2, 820);
                                  )   9. Negligent Infliction of Emotional Distress;
                                  )   10. Intentional Infliction of Emotional Distress;
                                  )   11. Failure to Perform Mandatory Duty to
                                  )      Protect Student;
                                  )
_____ )   **Demand for Jury Trial**

          COMES NOW Plaintiff ███████████████████, (hereafter "Plaintiff") a

minor, by and through his Guardian ad Litem, SERINA SANTOLERI, an individual, and

Plaintiff's mother, bring this action, complain, and alleges against Defendant WALNUT CREEK

SCHOOL DISTRICT and DOES 1 – 100 (together, "Defendants"), inclusive, and each of them,

on information and belief as follows:

<u>PARTIES, JURISDICTION, AND VENUE</u>

1.    At all relevant times, Plaintiff ███████████████████████ (hereafter "█████")
was a minor, residing with SERINA SANTOLERI, (hereafter "█████ Mother") in Contra
Costa County, California.

2.    At all relevant times, ██████████████████████ was a student at different
schools within the WALNUT CREEK SCHOOL DISTRICT (hereafter "WCSD") including Tice
Creek School and Walnut Creek Intermediate School.

3.    SERINA SANTOLERI is Plaintiff's mother and filed concurrently with this Complaint is
an application for her to be appointed as ████████ Guardian ad Litem.

4.    At all times relevant herein Defendant WCSD is and was a governmental entity, duly
organized and existing under the laws of the State of California, and responsible for the
management and administration of all public schools within the WCSD, as well as the employer of
all school officials, teachers, and all other of the WCSD staff. WCSD is located at 960 Ygnacio
Valley Rd, Walnut Creek, CA 94596.

5.    Defendant WCSD was, and is, charged with the implementation and enforcement of all
State and Federal laws and regulations applicable to the management of all schools within the
WCSD, including the training and supervision of all teachers and other staff to ensure that all State
and Federal laws and regulations applicable to educational facilities are followed.

6.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1
– 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend
this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and
believes and thereon alleges that each of the fictitiously named defendants is negligently
responsible in some manner for the occurrences herein alleged, and that plaintiff's injuries as
herein alleged were proximately caused by the negligence of these defendants.

7.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned,
each of the defendants sued herein as DOES 1 – 50, inclusive, was the agent and employee of each
of the remaining defendants and was at all times acting within the purpose and scope of such

1   agency and employment. Plaintiff is informed and believes and thereon alleges that at all times

2   herein mentioned, each of the defendants sued herein as DOES 51 – 100, inclusive, was another

3   student or family member of another student in the WCSD.

4      8.   Venue is proper in Contra Costa County in the State of California because it is where the

    subject torts took place, and where the Defendants reside, do business, and work.

5      9.   An award of compensatory damages is sought in an amount exceeding the minimum

6   jurisdiction of this court and to be proven at trial.

7   EXHAUSTION OF ADMINISTRATIVE REMEDIES

8      10.   Pursuant to the California Government Claims Act, Plaintiff submitted a timely Claim to

9   defendant WCSD; the WCSD did not acknowledge or respond to the claim. The Government

10  Claim is attached hereto as **Exhibit 1** and is incorporated by reference herein.

    GENERAL ALLEGATIONS

11     11.   ▮▮▮▮▮ is entitled to an individualized education plan ("IEP") under California Law. The

12  schools discussed below failed to timely hold the necessary meetings to evaluate and provide an

13  effective and reasonable IEP plan. And the IEP plan that was in place was not consistently

14  followed (or sometimes at all), causing a serious and permanent detriment to ▮▮▮▮s education

15  and progress.

16     12.   At Walnut Creek Intermediate School (hereafter "WCI"), ▮▮▮▮ was bullied constantly.

17  His family complaint constantly. After many months of complaints, the principal, Mr. Law,

    eventually said "I should have changed ▮▮▮▮ classes a months ago when you asked." Instead

18  of addressing his assailants, WCI took ▮▮▮▮ out of class almost daily, placing him in the

19  hallway without instruction. WCI did not provide on-campus counseling services or other

20  necessary and reasonable accommodations under the requirements of his IEP. In addition to failing

21  to implement the terms of his IEP plan, the school also denied him access to third-party assistance

22  provided by his parents and health care providers.

23     13.   Across the 2022-2023 school year, ▮▮▮▮ brought his school issued chromebook and

24  personal cell phone and backpack to school. Often, students in Ms. Montgomery's class would

    take these items out of ▮▮▮▮ backpack and taunt him. Students would go further to break and

25

steal his cell phone, break and steal his chromebook, and vandalize his property. No teacher intervention occurred to stop student taunting. ▮▮▮▮ was often sent to the office where he remained for the day without instruction. While at WCI, ▮▮▮▮ scooter was stolen, three bikes were damaged by other students, and he came home often with scrapes, bruises, and bumps as he reported being punched, pushed daily, humped in the bathroom, slapped, kicked, berated, harassed, bullied, and humiliated by other students. He was pushed off his bike and had his backpack, laptop, cell phone, hat, and other items stolen or taken and thrown on the ground by other students.

14.  Most days across the 2022-2023 school year, his teacher, Ms. Montgomery, openly discussed, humiliated, or shamed ▮▮▮▮ about his medication in front of the class and other students. Further, administration, office personnel, and other teachers such as Mrs. McIntyre openly discussed, encouraged, recommended ▮▮▮▮ take medication in phone calls, parent/teacher meeting, face-to-face meetings, at the front office desk, and shamed ▮▮▮▮ and his family regarding his medication. ▮▮▮▮ mother and grandmother brought the issues to the attention of employees of the WCSD such as Mr. Law and Ms. Banister constantly.

15.  In August, 2022, ▮▮▮▮ rode his bike to school and parked it with the other bikes on campus. Students made fun of ▮▮▮▮ for having a "girly" blue colored bike. After school and on campus, ▮▮▮▮ pushed ▮▮▮▮ off his bike several times. ▮▮▮▮ believes ▮▮▮▮ vandalized his bike by letting the air out of the tires as his bike was unrideable. ▮▮▮▮ informed Mr. Law and the PE teacher. No action or remedy occurred other than taking ▮▮▮▮ out of class.

16.  On September 14, 2022, Mr. Law made the unreasonable decision to suspend ▮▮▮▮ and insisted that ▮▮▮▮ write an apology letter to his bully.

17.  In September, 2022, ▮▮▮▮ rode his bike to school and parked it with the other bikes on campus. After school, ▮▮▮▮ found that his bike's chain and gear were removed, the chain was broken it in half, and unrideable. Braylon informed Ms. Banister who called his grandmother to pick up him up from school because his bike was broken. No action or remedy occurred other than taking him out of class.

18.  In September, 2022, ▮▮▮▮ was gifted a Warriors hat for his birthday and wore it to school. Another student stole it. ▮▮▮▮ and his mother informed Ms. Banister. No action or

1  remedy occurred.

2      19.   On October 28, 2022, that same student intentionally ripped ████s Halloween costume

3  and he informed Ms. Banister.

4      20.   On November 7, 2022, Mr. Law (principal) saw ████ in the hall and, after a recent

   bullying incident, asked ████ "<u>what are you, a baby</u>?" During a meeting with Mr. Law and

5  Mrs. Banister in Mr. Law's office, Mr. Law informed ████ grandmother that "he made a

6  mistake. I said something to ████ in front of other students that I shouldn't have…"

7      21.   On December 2, 2022, ████ came home with strangulation marks from his hoodie

8  strings due to another student strangling him. That same student mentioned above pulled the draw

9  strings tight around ████s neck and lifted ████ up off the ground. Mr. Law's response:

10 "They are friends and nothing further was said or done about the matter." A police report was

   made with the WCPD.

11     22.   On January 10, 2023, ████ got a new bike for Christmas. ████ rode his bike to

12 school and parked it with the other bikes on campus. After school, ████ found his new bike

13 brakes broken with the spokes cut. ████ informed Mr. Law. No action or remedy occurred.

14     23.   On January 28, 2023, ████ brought his chromebook to school. However, students from

15 Ms. Montgomery's class took it and would drop it on the cement or hide it from him, hindering his

16 ability to learn. Ms. Banister was informed. Other than the librarian helping to fix the computer, no

17 other action was taken by the school.

18     24.   On February 23, 2023, an eighth grader came up to him with six other older boys and

   assaulted and battered ████ kicking him in the testicles.  All seven boys laughed and walked

19 away. ████ told his PE teacher, Mr. Loving, about the incident. To ████ knowledge, Mr.

20 Loving didn't do anything about it. After Mr. Law was informed, he chose not to believe ████

21 and dismissed his complaint. Later, it was revealed that those students had done exactly as ████

22 had stated and they were made to apologize, with no other action by the school. Even after it was

23 shown to be the truth, Mr. Law continued to invalidate and dismiss and minimize the way ████

   was treated.

24     25.   On February 27, 2023, Mr. Law acknowledges multiple HIPPA violations by Mrs.

25

Montgomery via email to ███ mother, "In regard to Mrs. Montgomery... I agree. She should not make any references to ███ medication publicly. I will remind her that she should keep these comments private."

26.    On March 3, 2023, Ms. Jenny, the front office person, spoke loudly in the office while on speaker phone about ███ private medical and mental health information on speaker phone with his family. On March 22, 2023, Ms. Montgomery acknowledged video recording ███ in front of the class, even after ███ asked her not to. ███ was embarrassed and humiliated.

27.    On April 26, 2023, during resource class and to support him, Mr. Peterson grabbed ███ wrist with anger and force-leaving a red mark on ███ wrist. Mr. Peterson frightened him such that he understandably ran out of the classroom and hid in a bathroom. It took the administration 15 minutes to find him. After, ███ shared with Mr. Law and Ms. Banister what happened. No actions were taken to investigate Mr. Peterson's actions towards ███ When ███ got home, he shared the Peterson assault incident with his family who immediately called the school to form a complaint and the Walnut Creek Police Department to file a police report. Ms. Banister investigated and found no wrongdoing on Mr. Peterson's part. However, student eyewitness statements support ███ in that they were also shaken by the incident with Ms. Peterson.

28.    In April, 2023, ███ rode his scooter to school and parked it with the other bikes and scooters on campus. After school, ███ found his new scooter had been stolen. ███ identified a female student who stole it. ███ informed Mr. Law, Ms. Banister, and Mr. Miller. No action or remedy occurred.

29.    In April, 2023, students from Ms. Montgomery's class took ███ chromebook off his desk during class, out of his backpack during recess and would drop it on the cement or hide it from ███ so that he didn't have it to learn with. The chromebook never was returned and ███ went without a chromebook for 7-10 days. Ms. Banister was informed. No action or remedy occurred. 7-10 days later, Ms. Jenny, from the school indicated that he would need a new one.

30.    On May 4, 2023, ███ was suspended for being out of his seat and standing up during

class. Mr. Miller had yelled at ▮▮▮ to sit down before sending ▮▮▮ out of the classroom. ▮▮▮ was kept alone in the office until he could be picked up. ▮▮▮ remained in the office the full day without instruction.

31. When ▮▮▮ guardians have voiced their concerns, they have been invalidated. When Braylon voices his fear and concerns, they are invalidated. When concerns are raised, Mr. Law was abrasive, combative, negative, and not supportive. After a complaint with the district was filed, Mr. Law became even colder, distant, and stopped responding. This made IEP all but impossible since Mr. Law was their point of contact.

32. ▮▮▮ was transferred to Tice Creek from WCI without consulting his guardians. In April, 2023, ▮▮▮ guardian made a Complaint to WCI regarding the way he was being treated and the lack of FAPE / IEP provided to him due to his disability. Instead of addressing her concerns, they retaliated and decided to have him transferred. ▮▮▮ was transferred a week before school was to start by preventing ▮▮▮ guardians from receiving the appropriate registration. On August 8, 2023, a week before school started, WCSD forwarded an email about transferring ▮▮▮ out of the school district. His guardians scrambled to complete registration only to be transferred anyway. Apparently, the registration information was timely-sent to ▮▮▮ father, who has never been involved in his education or upbringing (there is a restraining order against him on file with the school). This inappropriate and abrupt transfer completely uprooted ▮▮▮ without notice and caused additional hardship as Tice Creek is miles from his home (unlike WCI, which is two blocks away). This disruption to his education, emotional well-being at school, and upheaval was enacted by the school due to his disability – they got rid of a "problem" child instead of protecting him, educating him, or otherwise addressing his guardian's complaints and implementing proper IEP (any IEP).

33. Since transferring to Tice Creek, in August, 2023, ▮▮▮ has been consistently bullied by other students. He has been punched, slapped, kicked, berated, harassed, threatened, pushed, and jumped. Tice Creek has been made aware of this bullying on multiple occasions in August, September, & October, has not acted reasonably to protect ▮▮▮ Tice Creek has also failed to reasonably discipline his assailants, and denied reasonable tutoring. As an example, on October 23,

2023, ████ was told he would be jumped by another student. Tice Creek was made aware but did not stop "Jay" (assailant) or protect ████ Sure enough, later that day, ████ was punched in the chest, pushed, and embarrassed in front of other students by Jay. ████ was injured physically and emotionally. He was too afraid to go back to school because of the attack.  Instead of preventing the attack, separating the student who made the threat, changing classes, or otherwise, the school did <u>nothing</u>.

34.    ████ guardians requested an IEP meeting while at WCI. They were in contact with the school almost daily from August, 2022, to March, 2023, to try to set up IEP. The district failed to evaluate and implement an IEP by ignoring these requests. The items requested were headphones, hard-copy homework, one-on-one time with an aide, counseling, psychotherapy, tutoring, backpack checks, etc. These requests were made during informal meetings and admin/teacher meetings to no avail. It wasn't until the Complaint mentioned above was sent to the school that an actual IEP meeting was hastily, finally, set up around May, 2023. September, 2022 to May, 2023, is an unreasonable delay in conducting an IEP evaluation. During the meeting, Ms. Banister (WCI) indicated that these requests (headphones, hard-copy homework, etc.) would "easily be granted." <u>They never were.</u> The district failed to comply with their duty to provide IEP for any of the requests made.

35.    Tice Creek did not perform any better. During an IEP meeting at Tice Creek (9/11/23), ████ guardians were asked to backdate and sign documentation related to an IEP meeting in March or April, 2023. When the guardian informed the IEP panel that no such meeting occurred, the psychologist, Lynn Childers, took the form back. Clearly, they unreasonably delayed evaluation and implementation of IEP and have failed to hide their tracks.

36.    On October 11, 2023, ████ was tested by Sylvan Learning Center; he is in 7th grade with a 3rd grade and 2nd grade reading and writing level. It is the district's failure to evaluate and implement a proper IEP that has caused him to be so far behind. A proper IEP should have been in effect and implemented to give Braylon access to an appropriate and reasonable education to address loss of learning and lack of educational growth.

37.    ████ has also been improperly disciplined on multiple occasions and this has affected

his education (as he has been pulled out of class) and will likely affect his future, due to the negative impact of having those items on his record., ███ was suspended when defending himself around October 23, 2023. The school did nothing. On October 18, 2022, ███ was not allowed to participate in the 6th grade Skate night, without reason. On another occasion, he was suspended when someone else brought a nerf gun to school. He was also suspended on May 4, 2022, and September 15, 2022, without good reason. He has received the brunt of exceptional and swift and unreasonable punishment due to him being a "problem", when his only crime has been having ADHD. Outside of being formally punished, his education has been severely hindered by the schools pulling him out of class and sending him to the office. He missed almost half a year at WCI from being pulled from class. Instead of addressing his needs, they just remove him. \

38.   Due to his ADHD, ███ was excluded from the participation in, denied the benefits of, and subjected to discrimination.

39.   Plaintiff has suffered verbal and physical abuse at the hands of other students and the WCSD has failed to create and/or implement appropriate and reasonable accommodations, leading to additional issues and emotional distress.

<u>FIRST CAUSE OF ACTION</u>
(Violation of 42 U.S.C. 12101; American with Disabilities Act against WCSD and Does 1-50)

40.   Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

41.   As a public learning institution, Defendant is covered for the purposes of Title II of the ADA. Plaintiff has a learning disability protected under the ADA act. Defendant discriminated against Plaintiff as outlined above and including but not limited to ignoring his pleas for help from bullying, and removing him from class and hindering his education. The reason for these actions is clear: Defendant WCSD's staff viewed Plaintiff as a "problem child" due to his disabilities. As the result, he was not taken seriously and ignored at the detriment to his physical, emotional, and education health. Defendant further failed to reasonably accommodate Plaintiff's disability.  As a result of that discrimination, Plaintiff suffered damages in an amount according to proof, and was

1   prevented from receiving the education and degree with which he sought.

2                              SECOND CAUSE OF ACTION
    (Violation of 29 U.S.C 794 (Section 504 of the Rehabilitation Act of 1973) against WCSD and
3                                      Does 1 - 50)

4       42.   Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in

5   each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth

6   herein.

        43.   As a public learning institution, Defendant is a covered entity for purposes of Section 504
7
    of the Rehabilitation Act of 1973. Plaintiff has a learning disability protected under the ADA act.
8
    Defendant discriminated against Plaintiff as outlined above and including but not limited to
9
    ignoring his pleas for help from bullying, removing him from class and hindering his education,
10
    and allowing inappropriate touching to occur by staff. The reason for these actions is clear:
11
    Defendant WCSD's staff viewed Plaintiff as a "problem child" due to his disabilities. As the result,
12
    he was not taken seriously and ignored at the detriment to his physical, emotional, and education
13
    health. Defendant further failed to reasonably accommodate Plaintiff's disability. As a result of that

14  discrimination, Plaintiff suffered damages in an amount according to proof, and was prevented

    from receiving the education and degree with which he sought.
15
                               THIRD CAUSE OF ACTION
16    (Violation of California Civil Code § 52.1, (UNRUH ACT) asserted against all Defendants)

17      44.   Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in

18  each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth

    herein.
19
        45.   Plaintiff, as a result of Defendants, and each of their conduct as alleged above, was unable
20
    enjoy the right to his state sponsored education as a result of either his disability or his or his
21
    parent's reporting of the school and/or its administration's treatment of Plaintiff.

22      46.   Defendants' actions were made in an attempt to interfere with Plaintiff's right to said

23  education. As a result of Defendants' conduct, Plaintiff suffered damages in a sum according to

    proof.
24
        47.   Plaintiff is also entitled to an award of attorney's fees under the UNRUH Act.
25

FOURTH CAUSE OF ACTION
(Violation of Education Code § 220 asserted against all Defendants)

48.   Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

49.   Education Code § 200 provides "It is the policy of the State of California to afford all persons in public schools, regardless of their disability ... equal rights, and opportunities in the educational institutions of the state. The purpose of this chapter is to prohibit acts that are contrary to that policy and to provide remedies therefor...no person shall be subjected to discrimination on the basis of disability ... in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid." Defendants allowed and/or caused Plaintiff to suffer severe and pervasive bullying, harassment, assault, and battery.  Defendants had actual knowledge that Plaintiff was bullied and harassed because of his disabilities. Plaintiff and his parents informed WCSD that Plaintiff was subjected to severe bullying and harassment, but WCSD was deliberately indifferent by failing to take any actions to prevent the ongoing bullying, harassment, assault, or battery.  Defendants continued the practice of allowing Plaintiff and his assailants to be unsupervised.

50.   The conduct of Defendants discriminated against Plaintiff on the basis of his disability by denying him the right to equal access to the educational benefits and opportunities of the state in violation of Education Code § 220. Due to these acts and failures to act as hereinabove described, Defendants proximately caused the injuries to Plaintiff and are subject to liability pursuant to California Government Code 22 §§ 815.2(a) and 820(a). As a direct and proximate result of the acts, omissions, and intentional conduct of Defendants, Plaintiff was injured and he continues to suffer therefrom, serious emotional distress.

51.   As a result of Defendants' conduct, Plaintiff suffered damages in a sum according to proof. Non-Public Entity Defendants' actions were in reckless disregard for the probability that severe injury would result from their failure to carefully adhere to their duties, and this said conduct amounts to physical abuse, neglect, recklessness, oppression, fraud and/or malice. An award of

1   punitive damages is justified and appropriate.

## FIFTH CAUSE OF ACTION
(Violation of Constitutional Rights (42 U.S.C. 1983) asserted against all Defendants)

52.   Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

53.   Defendants participated in the deprivation of constitutional rights of Plaintiff by discriminating against, harassing, intimidating, and bulling Plaintiff as alleged.

54.   Defendants intentionally discriminated against Plaintiff as a member of an identifiable class (student with disabilities) by knowingly failing to address the severe abuse he experienced while within the WCSD that was based on disability.

55.   Defendants violated Plaintiffs rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by actions, including, but not limited to, depriving him of equal protection under the law on the basis of his disability.

56.   Defendants acted with deliberate indifference in responding to the complaints of physical, verbal, and emotional abuse and repeatedly exposed Plaintiff to the risk of abuse, harassment, intimidation, bullying, discrimination and ultimately, attacks that left him with severe injuries. As a proximate result of the violations alleged herein above, Plaintiff has suffered damages according to proof.

## SIXTH CAUSE OF ACTION
(Violation of Safe Place to Learn Act (CA Ed. Code § 234))

57.   Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

58.   California's Safe Place to Learn Act, codified at Ed. Code, §§ 234 et. seq., mandates and governs WCSD existing policies and procedures to remedy discrimination, harassment, intimidation, and bullying based on characteristics set forth in Ed. Code, § 220, such as disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual

orientation, or association with a person or group with one or more of these actual or perceived characteristics. The Ed. Code requires all school personnel who witness or receive reports of an act of discrimination, harassment, intimidation, or bullying must take immediate steps to intervene.

59.    Under the Act, the WCSD policy addressing discrimination, harassment, violence, intimidation, or bullying must be posted in all schools and offices, including staff lounges and student government meeting rooms. The posting must provide information to students, parents and guardians, employees, members of the Board of Education, and the general public on how to file a complaint at the school, the process for investigating complaints, and all timelines.

60.    Any student, parent or guardian, or other individual may report an incident to a teacher, the principal, a compliance officer, or any other available school employee. The complaint alleging unlawful discrimination, harassment, intimidation, or bullying against any student, employee, or other person participating in WCSD programs and activities must be investigated and resolved through the Uniform Complaint Procedures, as described in this section.

61.    Any student who engages in acts of discrimination, harassment, violence, intimidation, or bullying related to school activity or school attendance occurring within a WCSD school is subject to prompt disciplinary action up to and including expulsion.

62.    California law provides additional specific protections for students harassed and discriminated against, including specific statutes governing school-place bullying and harassment of students. The statutory framework mandates that when a school and its school district are aware of alleged harassment and discrimination, it must respond in a manner that is not clearly unreasonable by taking timely and appropriate action to investigate what occurred. If an investigation reveals that discriminatory harassment has occurred, the school must respond.

63.    When a school district's employees choose to take no action when confronted with a discriminatory and hostile environment, that implicates discriminatory intent.

64.    The seriousness of the harassment and intimidation by students against Plaintiff has manifested itself in actual physical distress and personal injury for which Plaintiff requires counseling. The injurious harassment also impacted Plaintiff's ability to perform and enjoy his education. The discrimination also includes a failure to discipline and enforce any policies against

known harassing students. Defendants' failure to act reasonably, and as a direct and proximate cause of said failure, Plaintiff has been injured according to proof.

## SEVENTH CAUSE OF ACTION
### (Negligence Asserted against all Defendants)

65.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

66.    Plaintiff had the right to a safe, secure, and peaceful school environment. Defendants failed to acknowledge and correct unsafe conditions, thereby promoting hazing and violence against Plaintiff. Defendants had a duty at all times to supervise the conduct of students on school campus and to enforce those rules and regulations necessary for the protection of the students and exercise ordinary care to protect students from the type of attacks described above.

67.    Defendants were negligent and careless in their lack of response, discipline, and/or assistance to Plaintiff; they failed to exercise ordinary care in supervising the conduct of other students to prevent the relentless bullying Plaintiff endured.

68.    Prior to occurrence of the injuries herein alleged, Defendants had actual and constructive notice that fights, beatings, and attacks such as have been alleged herein had occurred before, and were likely to occur again, in the absence of adequate supervision; defendants were negligent and careless in that having such knowledge they nevertheless failed to use ordinary care in the supervision of students and failed to provide adequate supervision or any supervision at all.

## EIGHTH CAUSE OF ACTION
### (Negligent Supervision, Hiring, and/or Retention against all Defendants.)

69.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

70.    Defendant WCSD employed teachers and administrators charged with protecting the safety of their students including Plaintiff.

71.    Defendant WCSD owns, operates, and/or manages WCI and Tice Creek. Their staff were unfit to protect and supervise Plaintiff. A significant part of their job was to supervise students and

ensure they refrained from placing them in unreasonable or avoidable danger.

72.    Tice Creek and WCI received multiple calls/ e-mails regarding Plaintiff being bullied. Defendant did nothing. WCSD was on notice as to the unfitness of their employees and knew or should have known that the staff was unfit to supervise and protect Plaintiff. Had Plaintiff been adequately supervised by school staff, they would have taken steps to address previous complaints about bullying of Plaintiff. However, Defendant WCSD failed to take adequate action against the individuals bullying Plaintiff and the faculty and staff continuously failed to protect him.

73.    As a result of the inaction and lack of supervision, Plaintiff was harmed and suffered greatly as a result of the incompetence, unfitness, and reckless disregard for student safety by the schools' faculty, staff, and administration.

74.    As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer great physical and emotional pain, embarrassment, loss of self-esteem, and loss of enjoyment of life, and has incurred and will continue to incur expenses for medical and psychological treatment, physical therapy, and counseling.

### NINTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress against all Defendants.)

75.    Plaintiffs repeat, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

76.    Defendants' conduct caused Plaintiff to suffer severe emotional distress. Defendants' conduct was negligent and Plaintiff suffered serious emotional distress.

77.    Defendants' negligence was a substantial factor in causing Plaintiff's serious emotional distress. Defendants acted with reckless disregard of the probability that Plaintiff would suffer emotional distress. Plaintiff has suffered severe emotional distress and Defendants were a substantial factor in causing this severe emotional distress.

78.    Non-Public Entity Defendants' actions were in reckless disregard for the probability that severe injury would result from their failure to carefully adhere to their duties, and this said conduct amounts to physical abuse, neglect, recklessness, oppression, fraud and/or malice. An

1    award of punitive damages is justified and appropriate.

2                          TENTH CAUSE OF ACTION
           (Intentional Infliction of Emotional Distress against all Defendants)

3
4    79.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in
     each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth
5    herein.

6    80.    Defendants' conduct caused Plaintiff to suffer severe emotional distress. Defendants'
7    conduct was outrageous and was intended to cause Plaintiff emotional distress. Also, Defendants
8    acted with reckless disregard of the probability that Plaintiffs would suffer emotional distress,
     Plaintiff has suffered severe emotional distress and Defendants were a substantial factor in causing
9    this severe emotional distress.

10   81.    Non-Public Entity Defendants' actions were intentional and in reckless disregard for the
11   probability that severe injury would result from their failure to carefully adhere to their duties, and
12   this conduct amounts to physical abuse, neglect, recklessness, oppression, fraud and/or malice. An
13   award of punitive damages is justified and appropriate.

14                         ELEVENTH CAUSE OF ACTION
        (Failure to Perform Mandatory Duty to Protect Student against all Defendants)

15   82.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in
16   each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth
17   herein.

18   83.    Gov. Code §815.6 imposes liability on WCSD for its violations of the mandatory duties
19   relating to supervision of students and their protection. In addition, Plaintiff is informed and
     believes, and thereon alleges that there is a State Constitutional right conferred on students to be
20   provided with a safe environment. (See: Cal. Const., art. 1, Section 28(a)(7), and discussion in
21   *M.N. v. Morgan Hill Unified School Dist.* (2018) 20 Cal.App.5th 607,617). In addition, Plaintiff is
22   informed and believes, and thereon alleges that there are a myriad of antibullying statutes and
23   regulations imposing a duty on the district to prevent bullying in the Education Code.

24   84.    As a direct and proximate result of acts by the Defendants, specifically their failure to
25   protect Plaintiff or prevent bullying or the battery, Plaintiff suffered the damages and injuries

hereinafter alleged. Their failure to perform mandatory duties owed to Plaintiff, including the failure to supervise the bullies and prevent bullying and physical harm, Plaintiff was hurt and injured. As a further direct and proximate result of the Defendants' failures, Plaintiff will incur medical expenses and other damages according to proof.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, Plaintiff demands judgment against the Defendants on each of the above-referenced claims and Causes of Action as set forth after each cause of action and as follows:

ALL CAUSES OF ACTION

1. For general damages including but not limited to mental distress and pain & suffering;

2. For medical, compensatory, economic, and other special damages caused by Defendants' actions described herein according to proof;

3. For costs of suit herein incurred;

4. For pre-judgment and post-judgment interest at the maximum legal rate;

5. For Attorney's Fees pursuant to the Rehabilitation Act of 1973;

6. For such other and further relief as the court may deem just and proper;

CAUSES OF ACTION FOUR, NINE, & TEN,

7. For punitive damages against Non-Public Entity Defendants;

Dated: 8/15/24                          **LAW OFFICE OF STEVEN H. CROSS**

By
STEVEN H. CROSS

DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: 8/15/24                          **LAW OFFICE OF STEVEN H. CROSS**

By
STEVEN H. CROSS

# EXHIBIT 1

STATE OF CALIFORNIA
**GOVERNMENT CLAIM**
DGS ORIM 006 (Rev. 08/19)

DEPARTMENT OF GENERAL SERVICES
OFFICE OF RISK AND INSURANCE MANAGEMENT

## CLAIMANT INFORMATION

| LAST NAME | FIRST NAME | MIDDLE INITIAL |
|---|---|---|
| ███████ | ███████ | |

| INMATE OR PATIENT IDENTIFICATION NUMBER (if applicable) | BUSINESS NAME(if applicable) | | |
|---|---|---|---|

| TELEPHONE NUMBER | EMAIL ADDRESS | | |
|---|---|---|---|
| (925) 325-2440 | serina.santoleri@yahoo.com | | |

| MAILING ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| 2742 Walnut Blvd. | Walnut Creek | CA | 94596 |

| IS THE CLAIMANT UNDER 18 YEARS OF AGE? | INSURED NAME(Insurance Company Subrogation) |
|---|---|
| ☒ Yes  ☐ No | |

| IS THIS AN AMENDMENT TO A PREVIOUSLY EXISTING CLAIM? | EXISTING CLAIM NUMBER (if applicable) | EXISTING CLAIMANT NAME(if applicable) |
|---|---|---|
| ☐ Yes  ☒ No | | |

## ATTORNEY OR REPRESENTATIVE INFORMATION

| LAST NAME | FIRST NAME | MIDDLE INITIAL |
|---|---|---|
| Cross | Steven | H. |

| TELEPHONE NUMBER | EMAIL ADDRESS |
|---|---|
| (925) 263-6687 | steven@scrosslaw.com |

| MAILING ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| 1555 Botelho Dr., Ste. 149 | Walnut Creek | CA | 94596 |

## CLAIM INFORMATION

| STATE AGENCIES OR EMPLOYEES AGAINST WHOM THE CLAIM IS FILED | DATE OF INCIDENT |
|---|---|
| Walnut Creek School District | 8/15/22 - present |

LATE CLAIM EXPLANATION (Required, if incident was more than six months ago)

Claimant's mother is on active military service.

| DOLLAR AMOUNT OF CLAIM | CIVIL CASE TYPE(Required, if amount is more than $10,000) |
|---|---|
| 10,000,000 | ☐ Limited ($25,000 or less)  ☒ Non-Limited (over $25,000) |

DOLLAR AMOUNT EXPLANATION

Failure to protect a vulnerable disabled student, failure to initiate proper IEP, and retaliation against student.

INCIDENT LOCATION

Walnut Creek Intermediate School & Tice Creek School

SPECIFIC DAMAGE OR INJURY DESCRIPTION

See attached.

CIRCUMSTANCES THAT LED TO DAMAGE OR INJURY

See attached.

EXPLAIN WHY YOU BELIEVE THE STATE IS RESPONSIBLE FOR THE DAMAGE OR INJURY

See Attached/

STATE OF CALIFORNIA
**GOVERNMENT CLAIM**
DGS ORIM 006 (Rev. 08/19)

DEPARTMENT OF GENERAL SERVICES
OFFICE OF RISK AND INSURANCE MANAGEMENT

### AUTOMOBILE CLAIM INFORMATION

| | | |
|---|---|---|
| DOES THE CLAIM INVOLVE A STATE VEHICLE?  ☐ Yes  ☑ No | VEHICLE LICENSE NUMBER(if known) | STATE DRIVER NAME (if known) |
| HAS A CLAIM BEEN FILED WITH YOUR INSURANCE CARRIER?  ☐ Yes  ☑ No | INSURANCE CARRIER NAME | INSURANCE CLAIM NUMBER |
| HAVE YOU RECEIVED AN INSURANCE PAYMENT FOR THIS DAMAGE OR INJURY?  ☐ Yes  ☑ No | AMOUNT RECEIVED (if any) | AMOUNT OF DEDUCTIBLE(if any) |

### NOTICE AND SIGNATURE

I declare under penalty of perjury under the laws of the State of California that all the information I have provided is true and correct to the best of my information and belief. I further understand that if I have provided information that is false, intentionally incomplete, or misleading I may be charged with a felony punishable by up to four years in state prison and/or a fine of up to $10,000 (Penal Code section 72).

| SIGNATURE | PRINTED NAME  Steven Cross on behalf of claimant | DATE  12/8/23 |
|---|---|---|

### INSTRUCTIONS

- Include a check or money order for $25, payable to the State of California.
  - $25 filing fee is not required for amendments to existing claims.
- Confirm all sections relating to this claim are complete and the form is signed.
- Attach copies of any documentation that supports your claim. Do not submit originals.

Mail the claim form and all attachments to:
Office of Risk and Insurance Management
Government Claims Program
P.O. Box 989052, MS414
West Sacramento, CA 95798-9052

Claim forms can also be delivered to:
Office of Risk and Insurance Management
Government Claims Program
707 3rd Street, 1st Floor
West Sacramento, CA 95605
1-800-955-0045

### Department of General Services Privacy Notice on Information Collection

This notice is provided pursuant to the Information Practices Act of 1977, California Civil Code Sections 1798.17 & 1798.24 and the Federal Privacy Act (Public Law 93-579).

The Department of General Services (DGS), Office of Risk and Insurance Management (ORIM), is requesting the information specified on this form pursuant to Government Code Section 905.2(c).

The principal purpose for requesting this data is to process claims against the state The information provided will/may be disclosed to a person, or to another agency where the transfer is necessary for the transferee-agency to perform its constitutional or statutory duties, and the use is compatible with a purpose for which the information was collected and the use or transfer is accounted for in accordance with California Civil Code Section 1798.25.

Individuals should not provide personal information that is not requested.

The submission of all information requested is mandatory unless otherwise noted. If you fail to provide the information requested to DGS, or if the information provided is deemed incomplete or unreadable, this may result in a delay in processing.

**Department Privacy Policy**
The information collected by DGS Is subject to the limitations in the Information Practices Act of 1977 and state policy (see State Administrative Manual 5310-5310.7). For more information on how we care for your personal information, please read the DGS Privacy Policy.

**Access to Your Information**
ORIM is responsible for maintaining collected records and retaining them for 5 years. You have a right to access records containing personal information maintained by the state entity. To request access, contact:

**DGS ORIM**
**Public Records Officer**
**707 3rd St., West Sacramento, CA 95605**

**(916) 376-5300**

 was diagnosed with ADHD several years ago and receives regular medical care. █████ has been registered in the WCSD since first grade. During the 2022-23, █████ was in sixth grade at Walnut Creek Intermediate School (WCI). Across the year, █████ experienced unwanted bullying, assault, discrimination, harassment, intimidation, unactioned IEP, and lack of safety by students, teacher, and the principal which directly impacted █████ access to a free, appropriate public education (FAPE) and hindering his mental wellness. █████ came home often with marks on his body from student assault: bloody scrapes from being pushed down, ligature marks on his neck from being strangled with hoodie strings, kneed in the testicles for "being annoying", etc. Further, the special ed teacher has been aggressive towards █████ grabbed his hand in anger leaving a mark and scarring █████ and other students. █████ ran out to the class and hid in the bathroom for 30 minutes before administration found him. No investigation was conducted until we requested it. The "investigation" determined the teacher innocent and student witnesses "tampered with since they were friends." Police reports were filed. The principal and teachers humiliated █████ in peer group settings about his disability and medication, "█████ did you take your medication today?" Without authorization, a teacher videotaped █████ during class. Regularly, █████ was sent out of class missing so much course material and social development skills across the year. He was denied IEP services like headphones, psych evaluation, teachers aid, etc. He was made to go off campus to take his mental wellness therapy phone calls. When concerns were raised to Mr. Law, he invalidated our concerns. The administration overwhelmed us with emails and phone calls. We raised a school district and Dept. of Education complaint on 3/13/23. The principal, Jason Law, retaliated by no longer communicating with me and began a slew of suspensions for █████ ADHD behaviors, "I'm going to punish him just like the others." The district scheduled an initial complaint intake phone call with us. At the last minute, the district changed the informal meeting to an in-person meeting with WCI staff, "they have a right to face their accusers." The complaint was transferred to their attorney. No outcomes have been communicated. Just this week we learned WCI tried to kick him out of the school, "we no longer accept inter-district transfers." I live in the district and each year provide evidence of my relationship and address. My grandson deserves the right to public school education without the fear of mental or physical abuse and retaliation.

| Date | School | Informed School Y/N | Who was Informed | Incident Description |
|---|---|---|---|---|
| 8/15/22 | WCI | | Mr. Law, Ms. Banister | Reported HIPPA concerns from August - May 2023 |
| 8/15/22 | WCI | | Mr. Law, Ms. Banister | Across August - May 2023: Antagonized and humiliated in Ms. Montgomery, Mr. Peterson, Mr. Miller's classes |
| 8/15/22 | WCI | | Mr. Law, Ms. Banister | Across August - May 2023: Scooter stolen, scrapes, bumps, bruises, slapped, kicked, berated, bullied, harassed, humiliated, etc. |
| 8/15/22 | WCI | | Mr. Law, Ms. Banister | Across August - November 2022: Cut ▮ bicycle chain. Had 3 bikes that were all tampered with and damaged by students |
| 8/16/22 | WCI | | Mr. Law | Pushed off his bike when riding to and from school |
| 8/22/22 | WCI | | Mr. Law, Ms. Banister | Aug. 2022 - March 2023 IEP requested multiple times in person and over the phone IEP meetings. Implementation, and change of classroom to support Braylon's safety. Requests and services delayed and denied: headphones, on-campus psych and couselling services, backpack check, teacher-aid, etc. |
| 8/30/22 | WCI | | Ms. Banister | Warriors hat stolen by Pedro. Informed Ms. Banister several times. Never returned ▮ hat. |
| 9/6/22 | WCI | | Ms. Banister | Nathan takes his backpack, cell phone, laptop, and throws them |
| 9/7/22 | WCI | | Mr. Law, Ms. Banister | Serina emailed Mr. Law to request a class change due to Pedro and others bullying and antagonizing Braylon in class. Took Mr. Law two months to agree. |
| 9/15/22 | WCI | | Mr. Law, Ms. Banister | Suspension- after a girl bullied ▮, he sent her a picture of his knife comb. No threat was made. Safety was not in geopardy. ▮ was suspended and made to write the girl an apology letter which humiliated him. |
| 9/19/22 | WCI | | Mr. Law, Ms. Banister | Mr. Law set up a F2F meeting. No bullying solution, no IEP support |
| 9/21/22 | WCI | | Mr. Law, Ms. Banister | Reported bullying concerns via email to Mr. Law and Ms. Banister that ▮ was being ANTAGONIZED by ▮ and students in class |
| 9/29/22 | WCI | | Mr. Law, Ms. Banister | Shamed- Ms. Montgomery talking about pills in front of the class, Monique asked Mr. Law F2F not to discuss pill to ▮ or in group settings |
| 10/3/22 | WCI | | Mr. Law, Ms. Banister | ▮ PUSHED ▮ while standing in line, Serina sent an email |
| 10/3/22 | WCI | | Mr. Law, Ms. Banister | The girl F ▮ PUSHED ▮ into PUSHED ▮ down on the ground, Serina sent an email |
| 10/3/22 | WCI | | Mr. Law, Ms. Banister | ▮ PUNCHED Braylon in the head, Serina sent an email |
| 10/7/22 | WCI | | Mr. Law, Ms. Banister | ▮ PUNCHED ▮ in the arm, Serina email requested ▮ be moved out to the class |
| 10/7/22 | WCI | | Mr. Law, Ms. Banister | Serina emailed Mr. Law - ▮ hitting, punching, pushing ▮ daily. |
| 10/24/22 | WCI | | Mr. Law, Ms. Banister | Denied therapy session on campus by Ms. Banister |
| 11/4/22 | WCI | | Mr. Law, Ms. Banister | Serina emailed Mr. Law - ▮ humping ▮ In the bathroom. Safety - shouldn't be happening ▮ |
| 11/7/22 | WCI | | Mr. Law, Ms. Banister | I was in the office speaking to Mr. Law and Ms. Banister about an incident involving ▮ Mr. Law told me he made a mistake. He saw ▮ in the hallway and said, "what are you a baby?" Mr. Law later realized that he should not have said that to ▮ and apologized. |
| 11/7/22 | WCI | | | 504- we asked if a 504 would be appropriate and WCI said no |
| 12/2/22 | WCI | | Mr. Law, Ms. Banister | Strangulation marks from a student that strangled ▮ around the neck with hoodie strings |

| 2/23/23 | WCI | Y | Principal, Mr. Law | |
|---|---|---|---|---|

Thursday, 5pm

After school and as usual, ███ ███ came to my home. ███ informed me that he did not have a good day. ███ said, "I was kneed in the balls by an eighth grader named ███ ███ was in PE and ███ came up to him with six other older boys. Unwantedly, ███ came up to ███ and asked, "are you ███?" ███ said "yes." Then, ███ kneed ███ In the testicles. All seven boys laughed at ███ then, walked away. ███ fell to his knees in pain. Pedro witnessed this act. A few minutes later the ███ and his friends returned to ███ and asked, "did it hurt?" Braylon replied, yes. Then, ███ and his friends walked away again. ███ was left in pain, humiliated, and confused why these boys he didn't know would do that to him.

███ told his PE teacher, Mr. Loving about the incident. To ███ s knowledge, Mr. Loving didn't do anything about it. I called the school and left a message for the Principal, Mr. laws to call me back about the incident. Mr. Law return my phone call around 5pm. Within ███ beside me, I told Mr. Law about incident. "There's ███ s story which we know isn't the whole story," said Mr. Law

Mr. Law advised that he'd investigate the situation in the morning with ███ Nathan, and witnesses. We advised ███ was a witness.

Mr. Laws seemingly invalidated ███ s statement as if it was a half-truth or lie. I advised ███ was a witness and six other friends of Nathan. I told Mr. Law that I was tired of ███ being abused at school, and was concerned for his physical and mental safety. Further, that I thought that ███ was being bullied. Mr. laws said this was a one off, which doesn't constitute being bullying. I replied, "I'm aware of the definition of bullying, and it didn't half to be a repetitious unwanted act.

"We'll, today we took B out of class and had him in the office bc there was a sun and didn't want ███ acting out to the sub." I said, thank you. ███ seemed to like that quiet time and got a lot done. Mr. Laws snapped back," ███ should be in class and not in the office." Wait a minute, I said, seems I can't win here. Damned if I do and damned if I don't want my emotions to get the best of me so I said as much and looked forward to his investigation and the outcome tomorrow. We ended the call.

| Date | | | | |
|---|---|---|---|---|
| 2/24/23 | WCI | Y | Mr. Law, VP, Mr. Miller | Friday, 4pm, Mr. Laws and Mr. Miller<br>Mr. Laws advised ███████ was a 7th grader, ███████ apologized to ███████ parents were notified, ███████ spent time in the office for detention (why not suspension or written apology note like ███████ was made to do for the girl), ███████ and his friends were kneeling each other in the balls and felt the need to do it to ███████ what ███████ had described on Thursday was exactly what happened. Mr. laws stated the cause, "███████ said, "I did it bc ███████ is annoying."<br>I think them for the information and asked if we could talk about a couple other topics that Serina was going to bring to their attention on Monday<br>Pills– I asked if we could work on not mentioning ███████ taking pills in front of other students in the classroom or outside the classroom as it violates his HIPPA rights Mr. laws, or Mr. Miller made the comment that ███████ will sometimes say to Mr. Laws/Miller, in the hallways, "I took my pill today." I explained it didn't matter if ███████ was saying it I was asking that the teachers not do it because it violates his rights and it makes him feel humiliated and didn't make him feel good. Come to the school and sit with ███████ walk from class to class – we've been asking to do this. Oh, Serina did come to the school replied, Mr. Miller and Mr. Law repeated, However, Serina was only shown around the school not allowed to accompany B. Discussed four concerns: Pills, ███████ & computer- learning–<br>Serina & better assignment info to support B–, Bullying– GOING TO BRING B IN FOR INVESTIGATION |
| | | | | 2/24/22 After investigating, Mr. Law and VP Mr. Miller called me. In fact, ███████ a 7th grader, kneed ███████ In the testicles because, "he's annoying." On that call, I expressed for pressing concerns; 1. administration and teachers openly asking ███████ about taking his ADHD medication in front of the class, students, on campus and violating HIPPA laws, 2. one teaching style and ███████ challenges of focusing on a computer for education, 3. Serina's challenge of supporting ███████ homework without clear instructions, 4. bullying. Mr. Law invalidated each concern; 1. sometimes ███████ tells us he takes his pill, 2. we teach multiple styles, etc. 3. maybe you or Serina should come sit with him 4. we have a ███████ complaint here that alleges bullying by ███████ and are VERY concerned about ███████ Mr. Law stated, "you know, we spend more…" I interrupted him, "more time with Braylon than anyone else in this school. You know how I know that, because you tell Serina and I every time we talk on the phone or meet in person. I am sincerely grateful that you provide him educational support…, Mr. Laws interrupted, "it doesn't sound like you are grateful." The conversation was abrasive, combative, negative, and did not support solutions. Respectfully, I choose to end the call in hopes of coming back fresh and positive on Monday. A police report was filed. |
| 2/27/23 | WCI | Y | Principal, Mr. Law | Emailed Serina… retaliatory tone. |
| 2/27/23 | WCI | Y | WCPD | ███████ bullying incident and other concerns around bullying at WCI |
| 3/1/23 | WCI | N | Mr. Law | Even after we and Mr. Law requested, Ms. Montgomery and the front office lady continued to discuss, advise, and humiliate ███████ about ADHD medication. See email from Mr. Law dated 3/1/23 |
| 3/3/23 | WCI | Y | Jenny, secretary | Hi, It's Jenny at WCI. I'm just calling about um were're just checking to make sure he took his meds this morning. There's one in his boxes, Friday's still is a pill in it. And he said he did take it. Um but the teacher said he's just all over the place this morning. If you could call me back 925-944-68-40 ext 8801 |
| 3/13/23 | WCSD | | Ms. Eagan | Submitted Initial complaint to the WCSD |
| 3/14/23 | WCI | | Mr. Law, Ms. Banister | Mr. Law called me to ask how to reach Serina or Rick. I ask what the issue was and he said he no longer felt comfortable talking to me. He refused to speak with me or include me in emails after the complaint was filed. I had a need to discuss the IEP, bullying, suspensions, etc. which he managed. |

| Date | Org | | Person | Description |
|---|---|---|---|---|
| 3/15/23 | WCI | | Mr. Law | Mr. Law taunted Serina by initiating contact with [redacted] father which is astranged and restrained by court order which is on file at the school |
| 3/15/23 | WCI | | Mr. Law | When [redacted] tried to self advocate hi voice was minimized, made to feel insignificant, dismissed, not believed, etc. Ex: Mr. Peterson assault, |
| 3/20/23 | WCI | | Mr. Law, Ms. Banister | March 20 - May 2023: WCSD/WCI overwhelmed Serina with emails and phone calls |
| 3/20/23 | WCI | | Mr. Law | teachers and admins increasing removed [redacted] from class and sat him in the office by himself |
| 3/22/23 | WCSD | Y | Mr. Law, WCSD | Ms. Montgomery videotaped [redacted] in class without his or our consent. VIDEO available. |
| 4/10/23 | WCSD | | Ms. Eagan | Ms. Eagan bullied Serina and I into believing we were required to meet in person for the initial complaint and "complaintants have a right to face their accusers." |
| 4/11/23 | WCSD | | Ms. Eagan | Ms. Eagan sent notice of transfer --> district hired an attorney to manage the complaint. Also, 1st time WCSD provided UPC documentation |
| 4/24/23 | WCSD | | Ms. Nepacena | WCSD attorney Katrina J. Nepacena initial meeting. Showed her the video. |
| 4/26/23 | WCI | | Mr. Law, Ms. Banister | Mr. Peterson grabbed [redacted] arm leaving a mark. An investigaton was made only after we requested it. Investigation discounted students who witnessed it. We found at fault |
| 5/4/23 | WCI | | Mr. Miller | Suspension- on campus suspension |
| 8/3/23 | WCSD | | Ms. Mendiola | Enrollment team sent Serina an email regarding Inter Distric Transfer. We never asked nor wanted [redacted] transferred. Serina was deployed when this email was sent. |
| 8/4/23 | WCSD | | Ms. Eagan | Ms. Eagan forwarded an district transfer email. Serina was deployed and should've included me on the initial email. TWO things: 1. why the district transfer. Our paperwork has always been accurate and lived in the district. 2. why didn't they send it to me |
| 8/4/23 | WCI | | Ms. Craven | Called Earlene Craven at WCI to complete registration. |
| 8/9/23 | WCI | | Mr. Arlene | Hand delivered registration documentation to Arlene Craven. Mr. Law saw [redacted] and ignored him. |
| 8/10/23 | WCSD | | Ms. Eagan | Ms. Eagan called to inform me that [redacted] was being transferred to Tice Creek Middle School 1.6 miles away because, 1. we registered too late, 2. WCI had no room because they were short two resource teachers. Informed Ms. Eagan that I could not get [redacted] to and from school every day because I was disabled. I requested transportation services which she denied, "we don't provide in-district transportation." |
| 8/14/23 | WCSD | | Ms. Eagan | I was made to drive [redacted] to and from school 8/15 - 30th |
| 8/14/23 | WC School Board | | Ms. Hernandez-Gatty | I emailed Ms. Hernandez-Gatty for help with WCSD and WCI retaliation. She declined and forwarded my email to WCSD. |
| 8/30/23 | Tice Creek | Y | IEP meeting | Boy pushing |
| 9/11/23 | Tice Creek | Y | IEP meeting | MCL attended in person. I was asked to sign an IEP meeting form that didn't happen. |
| 9/11/23 | Tice Creek | | Dylan Scott, Principal | Slapped, kicked, berated, bullied, harassed by Jay at Tice Creek from August to October |
| 10/2/23 | Tice Creek | Y | IEP meeting | All in attendance |
| 10/6/23 | WCSD | | Ms. Eagan | WCSD provided the Investigation Report to Serina and I |
| 10/18/23 | WCI | | Mr. Law | Not allowed to go to 6th grade skate night |
| 10/18/23 | WCI | | Mr. Law, Ms. Banister | Suspension- someone brought a nerf gun to school and [redacted] held it. [redacted] got suspended and the other boy didn't |
| 10/23/23 | Tice Creek | Y | Dylan Scott, Principal | Serina emailed Mr. Scott about a bully and "jumping" |

| | Tice Creek | Y | Dylan Scott, Principal | ██ was confronted by two bullies: ██ and ██. ██ punched his chest, pushed him 4-5 times in front of his peers. ██ was scared and shaking, too afraid to move. ██ repeatedly asked ██ to stop, leave him alone, etc.. After ██ pushed him four times, ██ said, push me again and see what happens. ██ pushed him again, and ██ punched ██ in the face again. ██ lunged at ██ again, and E██ punched ██ in the face again. Mr. Scott arrived after this. ██ was suspended. Jay was not. |
|---|---|---|---|---|
| 10/23/23 | | | | |
| 11/10/23 | WCI | | Ms. Eagan, Mr. Law | Suspensions - Serina requested all 2022-23 suspension records |
| 12/5/23 | WCI | | Mr. Law, Ms. Banister | I was in the office speaking to Mr. Law and Ms. Banister about changing ██ classes to avoid being bullied by ██ Mr. Law stated, "I should have changed ██ classes a month ago when you asked." |
| TBD | WCI | | Mr. Law, Mr. Miller | Suspension-off campus suspension for not sitting still in Mr. Miller's class. Mr. Law asked ██ to come in his office. ██ was frightened bc Ms. Banister said everything was fine. |
| TBD | WCI | | Ms. Eagan, Mr. Law | Other suspensions likely exist |

Walnut Creek School District & █████████████

Monique Lazzarini
2742 Walnut Blvd.
Walnut Creek, CA 94596
moniquelazzarini@gmail.com
925-325-2440

October 31, 2023

California Department of Education
1430 N St #5901
Sacramento, CA 95814
916-319-0800

Re: Appeal of Walnut Creek School District's Investigation Findings – UCP Complaint on behalf of
███████████████

Dear Members of the California Department of Education,

I am writing to respectfully appeal the findings of the Walnut Creek School District's investigation into WCI's behaviors, safety concerns, access to FAPE, and civil rights violations experienced by my grandson, ████████████████ (██████) across ████████ 6th grade year, August 2022 – May 2023. Further, extending this to current day as bullying and retaliation continue.

My name is Monique Lazzarini. I am Serina Santoleri's (Serina) mother, ████████████████ (████████) grandmother and guardian/caregiver when Serina is away serving in the U.S. Army. I have four amazing children and successfully head the Quality and Regulatory division of a global medical device company impacting 130 million patients annually. Also, I have previous clinical experience as a surgical nurse. My family and I lead productive lives and are active members in the Walnut Creek community. In my spare time and over the course of my life, I volunteer for various organizations such as public schools, Boys and Girls Scouts, veterans, and women in leadership. Recently, I received a Lifetime Achievement Award from the President of the United States for my lifelong commitment to building a stronger nation through volunteer services.

In 2018, Serina joined the military, and I began caring for ██████ My home is a positive one full of love, stability, consistency, and opportunity for growth. ██████ has transitioned well into our home and looks up to his aunts Emily, Gianna, and uncle Zack that live/lived in the home. They help me transport, tutor and play age-appropriate games like baseball, scootering and Yatzee with ██████. Emily is an Army pilot. Emily, Gianna, and Zack are role models with their girl/boy scouts Gold and Eagle Scout Awards respectively. ██████ is a great kid with a love for life, sports, math, and adventure like his mom. ██████ has ADHD and is a minority by disability and race; Asian and American Indian.

1

Walnut Creek School District & ████████████████

Serina is ███████ mom and by court order, sole decision-maker of ██████. She is an Army Reservist part time and works full time for Oakland Children's Hospital as a Surgical Tech specializing in pediatric trauma, cardiac, neurology, and organ harvesting cases. She is the ~0.05% of the world that can do what she does. She is a loving and caring mother to one-

██████ father, Mr. Lindsey can be challenging. We've had restraining orders in place since 2016. Mr. Lindsey only has visitation rights. Restraining orders, court orders, and appropriate documentation have always been provided to the WCSD, schools, and discussed multiple times in face-to-face meetings with principals in a timely fashion and across the school years. (WCSD is very strict with admissions documentation.) Mr. Lindsey is not an academically present father, does not attend school functions, and the schools do not contact him. Since 2018, both elementary and middle schools have communicated through Serina and I only. However, Mr. Law stopped communicating with me after I filed the complaint and initiated contact with Mr. Lindsey in March/April of 2023.

I filed the initial complaint with the Walnut Creek School District (WCSD) and Walnut Creek Intermediate (WCI) on March 13, 2023, without success. I have carefully reviewed the Walnut Creek School District's findings letter, dated October 6, 2023, as well as my initial response to the district, and I believe there are compelling reasons to reconsider the conclusions drawn in this matter. I disagree with ██████████ feelings being minimized throughout the investigation i.e., page 3 paragraph 3 of the Investigative Report states, "felt uncomfortable" when in fact, he felt humiliated, harassed, and bullied almost daily. Also, any reference to comments not done publicly are false. The school, classrooms, and hallways are public and within earshot of any passing students, teachers, and school guests. Further, I disagree with all outcomes and believe federal, state, and local regulations and policies have been violated including but not limited to HIPAA, the California Education Codes sections 200-220, Section 200-220. The basis for the appeal includes but not limited to: UCP 5 CCR 4632, 5 CCR 4610, etc.

Since, ████████ continues to experience physical and mental safety concerns as recent as 10/23/23 when he was "jumped" at school. Further, ██████ Ms. Santoleri, and I have experienced retaliation i.e., Mr. Law refusing to communicate with me for IEP, behavior, and suspension information, denied ██████ IEP services and benefits, kicked ██████ out of WCI a week before school started, and transferred him to a new school across town to name a few.

Walnut Creek School District (WCSD) has not taken reasonable steps to prevent, address, and ensure the safety of ████████████████ In addition to the egregious neglect of his wellbeing, WCSD has been and continues to fail to create and provide a least restrictive and optimal learning environment by not following the clear and specific plan to meet his educational needs as stated in his IEP (most recently dated 10/31/2023). Behaviors by district faculty, administration, and students have threatened ██████'s safety, denied access to his FAPE (Free and Appropriate Public Education), as well as infringed on his civil rights.

2

Walnut Creek School District & ████████████

The policies and procedures the WCSD posts on their official website indicates offering an environment that prevents violence and provides adequate supervision of students in addition to prompt response regarding incidents of violence. Each of these points are discredited in the specific information shared below that describes each incident in which ██████ was violated physically, emotionally, mentally, socially, and academically. This ultimately supports WCSD's failure of compliance with their own policies as well as laws upheld by the ADA (Americans with Disabilities Act) and the State of California.

██████ was subjected to fear of harm to his person and property: hit, kicked, punched, pushed, strangled, laptop stolen, bike broken, hat stolen, etc. which caused ██████ to experience a substantially detrimental effect on his physical and mental health. As a result, this caused ██████ to experience substantial interference with his academic performance and ability to participate in or benefit from the services, activities, or privileges provided by a school.

## Appeal

I am appealing based on one or more of the below A-E. I tried my best to bucket them how I saw fit. If I have bucketed them incorrectly, please make the appropriate corrections.

    A.  District failed to follow its complaint procedures.
    B.  Relative to the allegations of the compliant, the district's investigation report lacks material findings of fact necessary to reach a conclusion of the law.
    C.  The material findings of fact in the district's investigation report are not supported by substantial evidence.
    D.  The legal conclusion in the district's investigation report is inconsistent with the law.
    E.  In a case in which the district found noncompliance, the corrective actions fail to provide proper remedy.

## A.  District failed to follow its complaint procedures.

1.  **INVESTIGATION REPORT DELAYED:** The investigation and report took 7 months which is longer than 45 days allotted in the procedure to complete the report. Untimely and excessive.

2.  **INTIMIDATION and FALSIFICATION:** From the district, Ms. Eagan initially set up a phone intake call. The day before the meeting, she said an in-person intake was required which is incorrect. Ms. Eagan falsified the requirements of the complaint procedure.

3.  **INCOMPLETE INVESTIGATION:** The UCP complaint was biasedly scoped, analyzed, and omitted key complaints and information such as psychological safety, sexual assault by a student, physical assault by a student, denied IEP benefits and services, harassment, humiliation, civil rights violations, student testimony from Mr. Peterson's investigation, etc. Further, the investigation often boils down to he said, she said. From incidents happening one or twice to ██████ Ms. Santoleri, and I providing evidence that incidents occurred across the year.

3

Walnut Creek School District & ███████████████

4. **INCOMPLETE INVESTIGATION:** The Law Firm was only scoped to investigate the five allegations they deemed important which omitted allegations from the original complaint. See Table VI. Further, allegations are confirmed throughout but not cited as findings.

5. **SCOPE #3 CORRECTION:** WCSD scoped allegation #3 should have been.. AND disciplined Braylon more harshly when he reacted to such behaviors.

6. **Failed to Provide Uniform Complaint Policies:** Ms. Kelly Eagan did not provide the UCP documents in a timely fashion. Filed 3/13/23. Policy provided on 4/10/23.

7. **Failed to Protect the Complainant from RETALIATION:** The WCSD, Ms. Eagan, bullied Ms. Santoleri and I after the complaint was filed, "requiring in person intake... accusers have the right to face you" (See Table III). We have and are currently experiencing retaliation amongst other violations of CU regulations and policies. <u>After</u> filing the district complaint on 3/13/23:
   a) **DISCRIMINATION/HARASSMENT/INTIMIDATION/BULLYING:** Mr. Law suspended Braylon 4-5 times for ADHD behaviors.

   b) **FAILED FAPE:** Failed to support ███████ learning and learning time as a 6th grade student. We repeatedly asked for help and IEP services but denied. ███████ IEP was delayed and quickly put together after filing the complaint. Even after filing the complaint, ███████ did not receive the benefits outlined in the plan including but not limited to: headphones, on-campus psychologist and counseling services, backpack check, teacher-aid, etc.

   c) **FAILED FAPE:** WCI admins and teachers increasingly made it difficult for ███████ to be in a classroom to receive FAPE: removed from class, discredited for speaking up, etc.

   d) **AGE/MARITAL STATUS/GENDER DISCRIMINATION/INTIMIDATION/HARASSMENT:** WCSD and WCI overwhelmed us with emails and phone calls daily and often multiple times in a day.

   e) **AGE/MARITAL STATUS/GENDER DISCRIMINATION/BULLYING:** Disregarded a restraining order which was provided to Indian Valley (Ms. Banister 2018-2023), WCI (Mr. Law 2022-23), and plea not to contact ███████ absent father Mr. Lindsey. Ms. Banister, former Indian Valley principal had experienced Mr. Lindsey in the past and understood the need to follow the order and our request not to contact him. Furthermore, in a face-to-face meeting, in Mr. Law's office, in September of 2022, Ms. Banister and I informed Mr. Law that he is not to contact Mr. Lindsey- that a restraining order is on file with the school. After filing the complaint in March 2022, Mr. Law taunted Ms. Santoleri and I about contacting Mr. Lindsey. Mr. Law contacted Mr. Lindsey, invited him to the school as "the favorite parent", and bad-mouthed Ms. Santoleri and I to Mr. Lindsey. As a result of Mr. Law and Mr. Lindsey's meeting, I understand Mr. Law had to call the police on Mr. Lindsey and that Mr. Lindsey is banned from WCI. Further as a result, it caused conflict

Walnut Creek School District & ██████████████

between Ms. Santoleri and Mr. Lindsey. Why did Mr. Law feel the need to contact Mr. Lindsey for the first time in April of 2023 and not before?

f) **AGE/MARITAL STATUS/GENDER DISCRIMINATION/INTIMIDATION/BULLYING**: Mr. Law refused to talk to me directly- claiming that he newly didn't have guardianship papers on file. However, the WCSD <u>never</u> allows anyone in the school without proper documentation including guardianship papers. When my daughter, Serina Santoleri joined the military in 2018, I provided guardianship documents to WCSD, Indian Valley Elementary, and WCI annually 8/2018-8/2023. Further, Ms. Santoleri gave permission and instructed WCSD/WCI repeatedly to include me in communications. I was in constant communication with Indian Valley principal Ms. Banister 2018-2023 and Mr. Law across 2022-2023. I had a need to talk to him because he and Ms. Banister were managing ███████'s IEP.

g) **DISCRIMINATION/HARASSMENT**: WCSD/WCI failed to inform me to register ██████ for the 2023-24 school year. Ms. Santoleri was deployed overseas during registration. On August 8, 2023, a week before school started, WCSD forwarded an email sent to Ms. Santoleri about transferring ██████ out of the school district. WCSD/WCI had us jump through hoops to complete registration only to be transferred to another school in the district which created a hardship for our family to transport ██████ across town to Tice Creek Middle School. FYI- ██████ has lived with me since my daughter joined the military. WCI is two blocks from our home. Tice Creek is approximately 2 miles.

h) **Fraudulent IEP Meeting** – During an IEP meeting on 9/11/23 at Tice Creek Middle School, the District psychologist asked me to backdate and sign documentation to an IEP meeting in March or April 2023 that didn't exist. When I brought it up to the IEP panel, they all realized it was a meeting that didn't occur. I didn't sign the document and the psychologist; Lynn Childers took it back.

i) **INTIMIDATION**: The WCSD, Ms. Eagan, bullying Ms. Santoleri and I after the complaint was filed, "requiring in person intake... accusers have the right to face you."

j) **BULLYING** 10/23/23: Two Tice Creek 7th grade students, ██ and ██ have been taunting and applying direct physical aggression towards ██████ at his new school. Recently, rumors were spread that ██ and ██ were going to "jump" ██████ on Monday, 10/23/23. ██████ was terrified and didn't want to go to school. ██████ went anyways. Ms. Santoleri sent the principal, Mr. Dylan Scott an email to inform him the two boys planned on jumping ██████ and to please watch out for ██████. Around 11am at school, the two boys walked up to ██████ in the hallway. ██ tried to get ██ to punch ██████ ██ declined, "I don't want to get suspended or expelled." ██ made threatening comments and gestured to hit ██████ With a crowd of students around, ██ aggressively pushed ██████ 4-5 times while continuing to tease, make threatening comments of violence. ██████ was scared, asked ██ to stop, felt he couldn't move, and warned ██ if he pushed him again that he'd do something about it. ██ aggressively pushed ██████ back again, and ██████ reacted by punching ██ . ██ lunged forward at

Walnut Creek School District & Braylon Lindsey-Santoleri

████ as if to hit him. ████ hit █ before he could hit ████ Mr. Scott arrived to break up the fight. ████ was suspended and ███ was not. ██ happens to be African American and wonder if ████ race played a factor in the disciplinary actions. Further, it was explained that ████ would have needed to be on the ground and being beaten for it to be "ok" to defend himself. ████ physical and psychological well-being is not protected under the district's policies.

k) **Lack of WC School Board Support**: On August 14, 2023, I sent an urgent email request to meet with Walnut Creek School Board President, Heidi Hernandez Gatty. Ms. Hernandez Gatty deflected the issue back to the WCSD individuals whom I was complaining about. I replied asking her to reconsider meeting with me and she didn't bother to respond.

B. Relative to the allegations of the compliant, the district's investigation report lacks material findings of fact necessary to reach a conclusion of the law.

1. **Investigation Evidence**:

The investigation failed to take the student's articulated experiences as evidence. Other than articulating and the videotape, what evidence would the district like a 11-year-old boy with ADHD to provide? When there is said to be "insufficient evidence", the investigator discounts and discredits ████ experiences as if his courageous voice is insignificant. This behavior and treatment of ████ is consistent with WCSD/WCI and our complaint. ████ tried often to speak up but, matters just got worse when he tried to self-advocate.

2. **Mr. Peterson Investigation Evidence**:

In the classroom filled with disabled peers, the resource teacher, Mr. Peterson grabbed ████ arm in anger. Mr. Peterson's assault on ████ left a mark on ████ wrist. Mr. Peterson's actions frightened ████ and other students in the classroom. ████ ran out of the classroom and hid in the bathroom for 15 minutes until administration could find him. ████ explained what happened to Mr. Law and other teachers. No report home or investigation occurred until I brought it back to their attention. An investigation occurred two weeks after the incident and ████ account and his disabled peers accounts were discredited because, "they were friends." However, ████ and his disabled peers were the only people in the room at the time of the incident. Why else would ████ run out of the room. He had never done that before. In fact, Mr. Peterson physically assaulted ████ A police report was filed. I believe the investigation lacked a nonbiased analysis and request the investigation be reopened and managed properly.

C. The material findings of fact in the district's investigation report are not supported by substantial evidence.

**From the Investigative Report** – so many false, inaccurate, misleading statements by WCSD/WCI. Choosing a few to highlight.

*Section A*

**IEP Team**: What IEP team? I only worked with Mr. Law and Ms. Banister.

Walnut Creek School District & ▮▮▮▮▮▮▮

**IEP Requests:** Ms. Santoleri and I worked with Mr. Law, Mrs. Banister, and Mr. Miller almost daily from August 2022 – March 2023. We requested headphones, hard-copy homework, one-on-one time with an aide, counseling, etc. The requests were repeated within and outside of IEP meetings. I don't understand why they didn't end up in the IEP. If the "requests could have been "easily granted" why weren't they?

**Supporting Braylon:** How did WCI support ▮▮▮▮▮ Removing him from class, suspending him, denying him IEP services, sending him home for counseling sessions. Ms. Santoleri requested a schedule change on 9/7/22 because of shared classes and bullying by ▮▮▮▮. It took Mr. Law two months to agree to the change. By then, physical, and psychological damage was experienced and traumatic.

**Resource Specialist:** ▮▮▮▮▮ started off with a new, younger teacher who I believe was overwhelmed by the class size and responsibilities. ▮▮▮▮▮ was transferred into Mr. Peterson's resource class. Mr. Peterson dealt with ▮▮▮▮ ADHD negatively. Mr. Peterson raised his voice often which triggered ▮▮▮▮ ADHD symptoms and aggressively grabbed ▮▮▮▮▮ wrist-leaving a mark and humiliating and frightening ▮▮▮▮ to the extent ▮▮▮▮ ran out of the room to hide in the bathroom. ▮▮▮▮▮ was assigned a new Resource Specialist after Mr. Peterson.

**Instructional Aide:** "Provided ▮▮▮▮ with an Instructional Aide" is false and one of our biggest complaints throughout the year. ▮▮▮▮ had an Instructional Aide once – one day, for a one-hour class out of the entire year.

**Absent Late January:** Concerns about his absence and behavior? Why wasn't this reported to Ms. Santoleri and me?

**Reach the Ultimate Answers:** Educational goals needed to be met. Not answers and solutions. Who suggested "anyone gave up"? WCI failed to provide ▮▮▮▮ FAPE and continuously made his educational experience unsafe.

**Felt Uncomfortable:** ▮▮▮▮▮ feelings being minimized throughout the investigation i.e., page 3 paragraph 3 of the Investigative Report states, "felt uncomfortable" when in fact, he felt humiliated, harassed, and bullied almost daily.

_**Section B**_
#2 **allegation** details changed from page 1's allegation details.

**Dismissive Acknowledgement of Abuse:** Punching and humping ▮▮▮▮ is ok? Typical middle school boy? Is hitting, punching, and humping allowed? Abuse and bullying do not indicate mutually agreed consent. This perpetude is outdated and a dismissive acknowledgement of the unwanted and unconsented abuse ▮▮▮▮ experienced.

Walnut Creek School District & █████████████

**Intent to Harm:** Behaviors by others resulted in harm to ██████ regardless of intent. It is still problematic. If ██████ experiences don't constitute bullying, what do they define?

**Progressive Discipline:** I believe this to be noncompliant with ADA standards. Discipline is clear to differentiate. ██████ have never been a treat, presented a dangerous to himself or others, yet suspended and made to write letters unlike anyone else. On page 14, the district confirms that ██████ "discipline was NOT uniform or equal." And if not uniform and equal, why wasn't ██████ disability factored into his discipline?

**Supervision:** "██████ stacked chairs up high in the classroom, climb on desks or fences, yell into classrooms, hide in the bathrooms…" Where's the appropriate supervision for safety? How did it get this far without being noticed or stopped?

**Defiance or Disrespect:** Often when children are bullied, humiliated, physically/psychologically abused, disrespected, not believed, harassed, and/or educationally neglected they act out. Though I don't condone disrespect, I do understand how a child could act this way. However, the behavior can be easily changed in a positive, trusting, safe environment.

**Ms. Montgomery likely Grew Frustrated:** How do you think ██████ feels? This is neglect. These WCI employees are adults that should be role modeling. Instead, they were negligent and overlooked abuse and withheld ADA benefits and services across the year- going as far as to patch things up with an emergency IEP meeting at the end of the year.

**Unjustly Deprive Braylon of learning time:** So, Mr. Law deprived him justly? Was he able to focus in the hallway? Bathroom? Office? How is he gaining FAPE and appropriate learning time in the hallway? How is the missed learning time made up? WCSD is collecting state funds for Braylon to be in a seat in a classroom. This is discrimination.

### Section C

**Did not treat you differently:** "Mr. Law was not willing to provide you or ██████ the same level of support…" An administrator not willing to provide the same level of support? Why not? Which support requests were extraordinary that support couldn't be provided? Mr. Law is a bully and sexist. He has a "straightforward communication style…" which the district, his subordinates, parents, and students "perceive as too direct and harsh." The district recognizes Mr. Law's ineffective communication style which doesn't make how he treats me and others ok. Mr. Law is narcissistic and sexist. He gaslit Ms. Santoleri and me. He tried to intimidate me, intentionally caused turmoil and disruption in my family by contacting Mr. Lindsey against court orders, deflected my compliments and efforts. I asked him to help me keep peace in my home and not contact Mr. Lindsey. Does he treat everyone this way? Is so, how does he have a job? A job that entrusts him with 1200 impressionable students and 50+ teachers whom we depend on to shape our future leaders. As females and single moms, Mr. Law treated Serina and I differently: unprofessional and discriminatory and therefore, Mr. Law violated BP 4..9.21/ 4219.21 / 4319.21 – Professional Standards policy. See Table V.

Walnut Creek School District & ███████████

**D. The legal conclusion in the district's investigation report is inconsistent with the law.**

**1. ADA violations**

Listed within.

**2. Privacy, HIPAA, and FERPA Violations**

Privacy, HIPAA, and FERPA Violations finding should be a full, not partial. The conclusion was based on WCSD opinion not based privacy, HIPAA, and FERPA laws in California. See section C1 and https://www.courts.ca.gov/documents/BTB25-2O-01.pdf. Across 2022 and 2023, the principal, Mr. Law, office admins, and teachers often discussed ██████ medication to ████████ in a group setting with his peers: classroom, hallway, office. Even after repeated requests and an email from Mr. Law, WCSD employees still discussed ████████ medication. This made ████████ feel dumb and humiliated and felt like harassment. Also, the Investigative Report combines privacy with harassment- addressing privacy to an extent without addressing harassment. Further, the repetitious nature across the year in which WCSD employees brought medicating ███████ up to Ms. Santoleri and I also felt bad. It also felt like harassment. Regardless of intent, federal, state, and school HIPAA laws and privacy policies were repeatedly violated. This finding should be- Full At Fault, not partial.

**3. Violated Cal. Ed. Code § 51512**

Cal. Ed. Code § 51512 - Use of electronic listening or recording device in classroom. When Ms. Montgomery used a cell phone (electronic listening or recording device) to videotape ██████ in the classroom in a group setting with his peers without ███████, Ms. Santoleri, or my consent. Further, her cell phone is not HIPAA compliant, isn't encrypted, and doesn't guarantee privacy or confidentiality. ████████ was sitting in his seat with no indication of him being a threat. If he was being inappropriate, she could've done something different. Instead, Ms. Montgomery chose to single ███████ out, humiliate and harass him. These types of WCI employee behaviors don't create a trusting relationship in which they should be building with their students. The act was intentional. Ms. Montgomery violated the federal, state code Section 51512 of the Education Code, and school policies and her license to ensure ethical responsibility and moral duty to protecting children. The video was shown to the school district's attorney, Ms. Nepacena. State and federal law prohibits this. No findings were mentioned. The video can be seen by going to this URL: https://youtube.be/stz3w2GYBPQ?si=nthdxUbUijrf5n_b

**4. The California Student Safety and Violence Prevention Act of 2000**

"One of our schools' most important jobs is to ensure that all students are offered equal protection from potentially violent discrimination and harassment, which not only disrupt learning but also can leave lifetime scars. We feel the WCSD/WCI did not protect ████████ violating this law.

**5. Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act**

These acts prohibit public schools from discriminating against students because of their disabilities. WCSD and WCI discriminated against ████████ because of his ADHD. ████████ was

Walnut Creek School District & ██████████████

denied IEP benefits and accommodations such as classroom aides, speech therapy, individual mental health counseling, noise-canceling headphones, etc.

## 6. AB 2178 Violation

Mr. Law, Mrs. Banister, Ms. Montgomery, and Ginnie Ferranti (WCI) violated AB 2178 when they pushed ADHD medication recommendations on █████ and then, shamed, and harassed █████ Ms. Santoleri and I when he didn't take them. WCI sent Ms. Santoleri and I voice mail messages, phone calls, and face-to-face conversations about █████ taking medication. Further, it is not the responsibility of the WCSD or WCI to monitor. █████ medication. Ms. Santoleri and I felt pressured by WCI to make █████ take medication. WCI recommended the "need", "he really needs to be on medication", "why isn't he on medication" for █████ to be on ADHD medication and what felt like shame for █████ not taking medication. Referring to █████'s "need" for medication and when on the phone or in Mr. Law's presence, he would be sure to repeat to us, "you know, we spend more time with █████ than any other student." Ms. Santoleri and I heard this statement from Mr. Law at least once a week across the entire school year. Ms. Banister and Mr. Miller are witnesses. According to AB 2178, the Medical Practice Act prohibits physicians and surgeons from practicing medicine unless the physician/surgeon has a certificate issued by the Medical Board of California.

## E. In a case in which the district found noncompliance, the corrective actions fail to provide proper remedy.

### 1. Finding failed to provide proper remedy

No reasonable remedies were suggested to the HIPAA finding.

### 2. Failed FAPE remedies

Failed to Implement █████ IEP. On October 11, 2023, █████ was tested by Sylvan Learning Center. █████ is in 7th grade reading at a 3rd grade level and writing at a 2nd grade level. Sylvan Learning Center advised that they could help █████ catch up but, they didn't have a program that met the significant number of hours he actually needs- see attached.

### 3. De-scoped Allegations

WCSD failed to address the complaints and allegations as they were provided. Further, WCSD's regulations and policies outline bullying with examples but failed to recognize it in practice. Therefore, no remedies were suggested.

4. There are so many "hidden" violations that should have been findings and assigned corrective actions such as: (short list)
   a. Page 6 – "Justly deprived of learning time…"
   b. Page 7- "█████ had a right to FAPE but so did other students… It was not unreasonable to have █████ escorted out of the classroom at time… Most witnesses recalled that █████ left class almost daily…" In short, █████ did not consistently receive FAPE, was deprived of safety from the lack of supervision,

Walnut Creek School District & ███████████████

    c.    Page 7- "Mr. Law was not as willing to provide you and ████████ with the same level of support…" Discrimination and unprofessionalism. Not providing an appropriate level of support is unacceptable and clearly violates the law.

    d.    Page 14- "████████s father expressed interest." Regardless, WCSD/WCI had the restraining order, court order, and my plea not to contact Mr. Lindsey. Mr. Lindsey only has visitation rights. Serina has legal and sole custody with sole decision-making rights. When she is away on military duty, I am ████████s guardian and assume her role. Mr. Law initiated contact with Mr. Lindsey anyways.

    e.    Page 14 – "Discipline was not uniform or equal amongst all students…" Discrimination, FAPE, ADA, civil rights violations, etc..

    f.    Page 15- "Ms. Montgomery may not have always implemented best practices.." Aren't best practices reasonable and appropriate? Is there another policy that describes when a professional does not implement best practices how supervision, student goals, FAPE, and safety are ensured? This is unethical. It's either a violation or it's not.

**CORRECTIVE ACTIONS**

School is supposed to be a safe place where students can learn, grow, and thrive. Unfortunately for ████████ it doesn't feel safe. The principal and teachers haven't created a positive, trusting nor safe environment conducive of learning with a disability. WCI behaviors have threatened ███████s safety, access to FAPE, and civil rights have been traumatic for ████████ ████████ has experienced physical violence repetitiously from August 2022 – October 23, 2023:

1.    Punched by ████████ student on 10/7/22, 11/4/22, and other students on various dates.
2.    Kneed in the groin on 2/23/23 by ████████, student.
3.    Aggressively grabbed leaving a mark by Mr. Peterson, resource teacher on 4/26/23
4.    Pushed, punches, and kicked on the ground by ████████ and a girl on 10/3/22
5.    Strangled with hoodie strings leaving ligature marks by ████████ on 12/2/22- see picture attached.
6.    Hit and more.

**SUMMARY**

I've had three generations of family members go through the Walnut Creek School District (WCSD) over the past 20 years, without incident: my sisters, my three children, and now my grandson. My sisters and children did not need disability services whereas my grandson does. Walnut Creek is known for driving higher test scores, maintaining high property values, and homeowner's self-funding the Walnut Creek Education Fund which pays for art, music PE, teachers, counselors, and other school programs not funded by the state. I am concerned and feel there is a valid correlation between higher WCSD test scores and getting rid of lower performing "needy" students to drive WCEF contributions.

████████ experienced bullying as listed above and understand that bullying is a form of psychological violence that involves repeated, intentional aggression towards another person. Bullying towards ████████ has been in the form of verbal abuse (i.e., discussing medication, negative comments by the principal "what are you a baby"), social exclusion (i.e., 10/2022-

Walnut Creek School District & ████████████

denied access to 6th grade skate night, 9/15/22 suspended, removed from class 2-3+ days a week), or even physical violence (i.e., listed above).

Ms. Santoleri and I only want the best education for ████ We do not feel that ████ has received FAPE while in the WCSD as his learning assessments indicate significantly below grade level results. I do not feel WCSD/WCI had or has the appropriate training, resources, or tools to comply with disability students or FAPE regulations and policies. ████ s physical and psychological well-being is not protected under the district's policies. We ask that you provide an assessment based on appropriate governances of the WCSD and WCI (WCSD/WCI) employees behaviors towards ████ FAPE and person and Ms. Santoleri and me. We ask that appropriate corrective actions are implemented such as but not limited to:

1. District and school updates to the Bullying policies to include specific types of conduct that may constitute bullying and prohibited by the district, measures to prevent bullying, staff development, and student instruction.
2. District and school to provide written examples of bullying, plan and implement programs to create awareness including how students can best defend/protect themselves both proactively and reactively, accountability and consequences, corrective actions.
3. District and school employees receive adequate training to bullying, discrimination, harassment, intimidation to include role play.
4. District and schools to implement and conduct regular safety drills, anti-bullying campaigns and programs, and mental health counseling services with students which is intended to identify, address, and prevent potential sources of violence.
5. District to implement a public database of complaints against the district and/or schools in the district.
6. District and school employees receive adequate training on how to recognize and respond to potential threats of violence, symptoms of disabilities such as ADHD, autism, manage learning, learning styles, and learning time to maximize disabled students FAPE.
7. Replace the principal with a more professional, diverse, principal who has integrity and excels in communicating with his customers: parents, students, teachers.
8. Notify parents/guardians of such programs, drills, anti-bullying campaigns regularly.
9. Apply appropriate disciplinary actions towards those WCSD and WCI employees who have violated regulations and policies.
10. Provide ████ with FAPE.
11. Provide ████ with an informed and actionable IEP.
12. Provide ████ with transportation services to and from school at the districts expense.
13. Provide ████ with external resources to catch him up to grade level at the districts expense.
14. Provide Ms. Santoleri the option to place ████ in a school that may better suit his FAPE and educational needs at the districts expense.
15. Provide ████ with social activities such as art, dance, football, etc. at the districts expense.

Walnut Creek School District & ▮▮▮▮▮▮▮▮▮▮

**Request the OCR review the following evidence but not limited to:**
Initial Complaint
WCSD Investigation Report
Emails provided by me
Videotape – created a YouTube link to view Ms. Montgomery videotaping ▮▮▮▮▮
WCSD's hired attorney, Ms. Nepacena's documents to include but not limited to interviews, notes, reports, emails, recommendations, etc.
Police reports
Guardianship papers
Military papers
WCI Medication Authorization Forms for ▮▮▮▮▮
WCI discipline records for all students 2020-current

I appreciate your attention to this matter and thank you for your commitment to the physical, emotional, mental, social, and academic welfare of our students, namely my grandson.

Reference tables are listed below.

Respectfully,


Monique Lazzarini

13

Walnut Creek School District & ▮▮▮▮▮▮▮▮▮▮▮▮

## REFERENCE TABLES

*TABLE I: From the WCSD Board Policy Manual: Policy 1312.3 Uniform Complaint Policy*

> 10. Discrimination, harassment, intimidation, or bullying in district programs and activities, including in those programs or activities funded directly by or that receive or benefit from any state financial assistance, based on a person's actual or perceived characteristics of race or ethnicity, color, ancestry, nationality, national origin, immigration status, ethnic group identification, age, religion, marital status, pregnancy, parental status, physical or mental disability, medical condition, sex, sexual orientation, gender, gender identity, gender expression, or genetic information, or any other characteristic identified in Education Code 200 or 220, Government Code 11135, or Penal Code 422.55, or based on the person's association with a person or group with one or more of these actual or perceived characteristics  (5 CCR 4610)

> ## 20. School safety plans  (Education Code 32280-32289)

> 24. Any complaint alleging retaliation against a complainant or other participant in the complaint process or anyone who has acted to uncover or report a violation subject to this policy

*TABLE II: From the WCSD: Report of Suspected Bullying/Harassment/Discrimination*

> **Bullying/Harassment/Discrimination** are defined as: physical, verbal, nonverbal or written conduct that is so severe and pervasive that it affects a student's ability to participate in or benefit from an educational program or activity; creates an intimidating, threatening, hostile, or offensive educational environment, has the effect of substantially or unreasonably interfering with a student's academic performance; or otherwise adversely affects a student's educational opportunities.

*TABLE III: From the WCSD: Report of Suspected Bullying/Harassment/Discrimination*

> What happened: (Select all that apply)
>
> *Direct physical aggression/fighting  *Excluding or rejecting the student
> *Getting another person to hit or harm student  *Sexual name calling
> *Teasing, name-calling, threatening  *Intimidating, exploiting or extorting
> *Making rude or threatening gestures  *Spreading hurtful rumors or gossip
> *Using racial or religious slurs  *Other_____

14

Walnut Creek School District & ▮▮▮▮▮▮▮▮▮▮

*TABLE IV: From the WCSD Bullying Regulations and Policies*

**Board Policy Manual**
**Walnut Creek School District**

Regulation 5131.2: Bullying

**Status:** ADOPTED

Original Adopted Date: 09/23/2019

**Definitions**

Bullying is an unwanted, aggressive behavior that involves a real or perceived imbalance of power between individuals with the intent to cause emotional or physical harm. Bullying can be physical, verbal, or social/relational and involves repetition or potential repetition of a deliberate act.

Cyberbullying includes the electronic creation or transmission of harassing communications, direct threats, or other harmful texts, sounds, or images. Cyberbullying also includes breaking into another person's electronic account or assuming that person's online identity in order to damage that person's reputation.

Examples of the types of conduct that may constitute bullying and are prohibited by the district include, but are not limited to:

1. Physical bullying that inflicts harm upon a person's body or possessions, such as hitting, kicking, pinching, spitting, tripping, pushing, taking or breaking someone's possessions, or making cruel or rude hand gestures

2. Verbal bullying that includes saying or writing hurtful things, such as teasing, name-calling, inappropriate sexual comments, taunting, or threats to cause harm

3. Social/relational bullying that harms a person's reputation or relationships, such as leaving a person out of an activity on purpose, influencing others not to be friends with someone, spreading rumors, or embarrassing someone in public

4. Cyberbullying, such as sending demeaning or hateful text messages or emails, sending rumors by email or by posting on social networking sites, or posting embarrassing photos, videos, web site, or fake profiles

15

Walnut Creek School District & ███████████████

---

**Board Policy Manual**
**Walnut Creek School District**

**Policy 5131.2: Bullying**                                        **Status: ADOPTED**

Original Adopted Date: 06/18/2018 | Last Revised Date: 09/23/2019

The Governing Board recognizes the harmful effects of bullying on student well-being, student learning, and school attendance and desires to provide a safe school environment that protects students from physical and emotional harm. No individual or group shall, through physical, written, verbal, visual, or other means, harass, sexually harass, threaten, intimidate, cyberbully, cause bodily injury to, or commit hate violence against any student or school personnel, or retaliate against them for filing a complaint or participating in the complaint resolution process.

The Superintendent or designee shall develop strategies for addressing bullying in district schools with the involvement of students, parents/guardians, and staff. As appropriate, the Superintendent or designee may also collaborate with social services, mental health services, law enforcement, courts, and other agencies and community organizations in the development and implementation of effective strategies to promote safety in schools and the community.

Such strategies shall be incorporated into the comprehensive safety plan and, to the extent possible, into the local control and accountability plan and other applicable district and school plans.

Any complaint of bullying shall be investigated and, if determined to be discriminatory, resolved in accordance with law and the district's uniform complaint procedures specified in AR 1312.3. If, during the investigation, it is determined that a complaint is about nondiscriminatory bullying, the principal or designee shall inform the complainant and shall take all necessary actions to resolve the complaint.

Any employee who permits or engages in bullying or retaliation related to bullying shall be subject to disciplinary action, up to and including dismissal.

---

*TABLE V: From WCSD Investigative Report Page 14*

**BP 4119.21/ 4219.21/ 4319.21 – Professional Standards**

The Governing Board expects district employees to maintain the highest ethical standards, behave professionally, follow district policies and regulations, abide by state and federal laws, and exercise good judgment when interacting with students and other members of the school community. Employees shall engage in conduct that enhances the integrity of the district, advances the goals of the district's educational programs, and contributes to a positive school climate.

---

*TABLE VI: From WCSD Investigative Report page 1*

The investigation was processed pursuant to Administrative Regulation ("AR") 1312.3 (Uniform Complaint Procedures). The District retained the services of Katrina J. Nepacena, an attorney investigator with the law firm Atkinson, Andelson, Loya, Ruud & Romo, to investigate and render findings in regard to the above-described allegations. Ms. Nepacena interviewed a number of pertinent witnesses, including Braylon and the both of you, and reviewed documentary evidence related to the allegations. Thank you for your patience during this process.

16

**EXHIBIT B**

**[Exempt from payment of filing fees (Government Code § 6103)]**

KATHERINE A. ALBERTS, ESQ. (SBN: 212825)
KATHERINE G. MORROW, ESQ. (SBN: 121511)
**LEONE ALBERTS & DUUS**
A Professional Corporation
1390 Willow Pass Road, Suite 700
Concord, CA  94520
Telephone: (925) 974-8600
Email: kalberts@leonealberts.com
          kmorrow@leonealberts.com

Attorneys for Defendant
WALNUT CREEK SCHOOL DISTRICT

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF CONTRA COSTA

|  |  |
|---|---|
| _____, a minor, by and through his Guardian ad Litem, SERINA SANTOLERI, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>WALNUT CREEK SCHOOL DISTRICT, a public entity, and DOES 1 through 100, inclusive,<br><br>                    Defendants. | **Case No.:   C24-02211**<br>**[ASSIGNED FOR ALL PURPOSES TO HON. JOHN P. DEVINE, DEPT. 9]**<br><br>**DEFENDANT WALNUT CREEK SCHOOL DISTRICT'S ANSWER TO PLAINTIFF'S COMPLAINT**<br><br>Complaint filed: August 15, 2024<br>Trial Date: Not yet set |

COMES NOW defendant WALNUT CREEK SCHOOL DISTRICT and for its answer to the COMPLAINT of plaintiff _____, by and through his Guardian ad Litem, SERINA SANTOLERI, an individual, on file herein, denies and alleges as follows:

### GENERAL DENIAL

Under the provisions of Section 431.30(d) of the California Code of Civil Procedure, this answering DEFENDANT denies each and every, all and singular, generally and specifically, the allegations contained in said COMPLAINT, and further

denies that PLAINTIFF has been damaged in any sum or sums, or at all, by reason of any act or omission on the part of this answering Defendant.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State Claim)

1.      As a first affirmative defense, DEFENDANT alleges that PLAINTIFF'S COMPLAINT fails to state facts sufficient to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations)

2.      As a second affirmative defense, DEFENDANT alleges that PLAINTIFF'S COMPLAINT is barred by all applicable statutes of limitations including, but not limited to, Cal. Gov't Code § 945.6 and Cal. Code Civ. Proc. §§ 335 et seq.

## THIRD AFFIRMATIVE DEFENSE

### (Waiver and Estoppel)

3.      As a third affirmative defense, DEFENDANT alleges that PLAINTIFF'S COMPLAINT is barred by the doctrines of waiver and estoppel.

## FOURTH AFFIRMATIVE DEFENSE

### (Laches)

4.      As a fourth affirmative defense, DEFENDANT alleges that PLAINTIFF'S COMPLAINT is barred by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE

### (Negligent/Culpable Conduct of Others)

5.      As a fifth affirmative defense to PLAINTIFF'S COMPLAINT, DEFENDANT alleges that the injuries and damages sustained by PLAINTIFF, if any, were caused in whole or in part by the negligent and/or culpable conduct of others, for which DEFENDANT is not liable.

///

## SIXTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

6.     As a sixth affirmative defense, DEFENDANT alleges that PLAINTIFF'S COMPLAINT is barred in whole or in part by PLAINTIFF'S failure to mitigate damages.

## SEVENTH AFFIRMATIVE DEFENSE

(Superseding Intervening Cause)

7.     As a seventh affirmative defense, DEFENDANT alleges that the intentional tortious and/or criminal conduct of others was an independent, intervening, and superseding cause of PLAINTIFF'S alleged damages, which bars recovery against this answering DEFENDANT.

## EIGHTH AFFIRMATIVE DEFENSE

(Comparative Negligence)

8.     As an eighth affirmative defense DEFENDANT alleges that PLAINTIFF was partially, if not wholly, negligent or otherwise at fault and is barred from recovery for that portion of the damages directly attributable to his proportionate share of the negligence or fault under the doctrine of comparative negligence.

## NINTH AFFIRMATIVE DEFENSE

(Governmental Immunities)

9.     As a ninth affirmative defense, DEFENDANT alleges  that PLAINTIFF'S COMPLAINT is barred in whole or in part because all actions and conduct by DEFENDANT and its agents or employees were justified and subject to governmental immunities, including but not limited to the immunities arising under the United States Constitution and federal law, immunities arising under the California Constitution and California law, immunities arising under Government Code sections 810, *et seq.* including, but not limited to, Sections 815, 815.2, 818, 818.2, 818.8, 820.2, 820.4, 820.6, 820.8, 821.2, 821.6, and 822.2. DEFENDANT's discretionary decisions regarding discipline of students are immune from liability as well as any claims based on the adoption or failure to adopt certain policies, regulations, or procedures.

## TENTH AFFIRMATIVE DEFENSE

(Misjoinder of Parties)

10.     As a tenth affirmative defense to PLAINTIFF'S COMPLAINT, DEFENDANT alleges that there is a defect or misjoinder of parties under Code of Civil Procedure section 430.10(d). Specifically, PLAINTIFF failed to join all parties necessary for final determination of this action.

## ELEVENTH AFFIRMATIVE DEFENSE

(Proposition 51)

11.     As an eleventh affirmative defense to PLAINTIFF'S COMPLAINT, DEFENDANT alleges that the provisions of the Fair Responsibility Act of 1986 (commonly known as Proposition 51, Civil Code sections 1430 — 1432) are applicable to this action to the extent that PLAINTIFF'S injuries and damages, if any, were legally caused or contributed to by the negligence or fault of persons or entities other than this DEFENDANT.

## TWELFTH AFFIRMATIVE DEFENSE

(Failure to Comply with Claim Statute)

12.     As a twelfth affirmative defense, DEFENDANT alleges  that PLAINTIFF'S COMPLAINT is barred by PLAINTIFF'S failure to timely comply with the California Government Claims Act, Government Code §§ 905, et seq., claims presentation requirements in that PLAINTIFF failed to timely present a claim asserting all causes of action and/or all contractual and legal bases for liability asserted in the COMPLAINT, and/or failed to timely file suit following the denial of said claim. Moreover, all causes of action, contractual and/or legal allegations asserted in any timely COMPLAINT that were not asserted in any claim presented by PLAINTIFF, are barred under the California Government Claims Act.

///

///

///

DEFENDANT WALNUT CREEK SCHOOL DISTRICT'S ANSWER TO PLAINTIFF'S COMPLAINT

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Punitive Damages)

13.     As a thirteenth affirmative defense, DEFENDANT alleges that it is immune from any and all claims seeking punitive damages under California Government Code Sections 818 and 825.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Privilege)

14.     As a fourteenth affirmative defense, DEFENDANT alleges that PLAINTIFF'S COMPLAINT is barred because DEFENDANT'S conduct was privileged and/or justified.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Qualified Immunity)

15.     At all times referenced in the complaint, DEFENDANT acted with the good faith belief its actions were reasonable under the circumstances and did not violate PLAINTIFF'S rights, and, therefore, this answering DEFENDANT and/or its agents and employees acting within the course and scope of their employment are entitled to absolute and/or qualified immunity.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Scope of Employment)

16.     The conduct attributed to DEFENDANT'S agents and employees, if true, occurred outside the course and scope of their employment, and potentially constituted criminal conduct, and as such, this answering DEFENDANT cannot be held vicariously liable for such conduct. (*John R. v. Oakland Unified School District* (1989) 48 Cal.3d 438.) Further such conduct, if true, is neither acceptable nor condoned by this answering DEFENDANT.

///

///

///

DEFENDANT WALNUT CREEK SCHOOL DISTRICT'S ANSWER TO PLAINTIFF'S COMPLAINT

## SEVENTEENTH AFFIRMATIVE DEFENSE

(Defenses Unknown)

17.    DEFENDANT presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, defenses available. DEFENDANT reserves the right to assert additional defenses in the event discovery indicates that they would be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, this answering DEFENDANT prays that PLAINTIFF take nothing by his COMPLAINT and that this answering DEFENDANT be dismissed with its costs of suit incurred herein and for such other and further relief as the Court deems fit and proper, including but not necessarily limited to DEFENDANT's recovery of attorney's fees pursuant to Code of Civil Procedure § 1038.


Dated:  June 26, 2025                    LEONE ALBERTS & DUUS, APC

_____
KATHERINE A. ALBERTS, ESQ.
KATHERINE G. MORROW, ESQ.
Attorney for Defendant
WALNUT CREEK SCHOOL DISTRICT

DEFENDANT WALNUT CREEK SCHOOL DISTRICT'S ANSWER TO PLAINTIFF'S COMPLAINT

**Re:** _____ **v. Walnut Creek School District**
**Contra Costa County Superior Court Case No.: C24-02211**

## PROOF OF SERVICE

I, the undersigned, declare that I am employed in the City of Concord, State of California. I am over the age of 18 years and not a party to the within cause; my business address is 1390 Willow Pass Road, Suite 700, California.

On June 26, 2025, I served the following documents:

**DEFENDANT WALNUT CREEK SCHOOL DISTRICT'S ANSWER TO PLAINTIFF'S COMPLAINT**

on the following interested party(s) in said cause:

**PLAINTIFF'S COUNSEL**
Steven H. Cross, Esq.
Law Office of Steven H. Cross
1555 Botelho Drive, Suite 149
Walnut Creek, CA 945976
T: (925) 263-6687
Email: steven@scrosslaw.com

**VIA MAIL - CCP §§ 1013(a), 2015.5**

☐　By placing a true copy thereof enclosed in a sealed envelope(s), addressed as above and placing each for collection and mailing on that date following ordinary business practices. I am readily familiar with my firm's business practice of collection and processing of correspondence for mailing with the United States Postal Service and correspondence placed for collection and mailing would be deposited with the United States Postal Service at Concord, California, with postage thereon fully prepaid, that same day in the ordinary course of business.

☐　By placing a true copy thereof enclosed in a sealed envelope(s), addressed as above, and depositing each envelope(s), with postage thereon fully prepaid, in the mail at Concord, California.

**VIA OVERNIGHT MAIL/COURIER - CCP §§ 1031(c), 2015.5**

☐　By placing a true copy thereof enclosed in a sealed envelope(s), addressed as above, and placing each for collection by overnight mail service, or overnight courier service.  I am readily familiar with my firm's business practice of collection and processing of correspondence/documents for overnight mail or overnight courier service, and that it is to be delivered to an authorized courier or driver authorized by the overnight mail carrier to receive documents, with delivery fees paid or provided for, that same day, for delivery on the following business day.

DEFENDANT WALNUT CREEK SCHOOL DISTRICT'S ANSWER TO PLAINTIFF'S COMPLAINT

1

**VIA ELECTRONIC SERVICE - CCP §1010.6**

2

☒ By electronic transmission via email to the authorized electronic service

3

  address(es) listed above.

4

**VIA HAND-DELIVERY - CCP §§ 1011, 2015.5**

5

☐ By placing a true copy thereof enclosed in a sealed envelope(s), addressed as

6

  above, and causing each envelope(s) to be hand-served on that day by ONE
  HOUR DELIVERY in the ordinary course of my firm's business practice.

7

8

  I declare under penalty of perjury under the laws of the State of California that

9

the foregoing is true and correct and that this declaration was executed on June 26,

10

2025, at Concord, California.

11

12

_____
KEVIN HURLEY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WALNUT CREEK SCHOOL DISTRICT'S ANSWER TO PLAINTIFF'S COMPLAINT

**EXHIBIT C**

## <u>EXHIBIT C INDEX</u>

The court file in the State Court Action includes the following documents:

| # | File | Date | Filed By: |
|---|------|------|-----------|
| C:1 | Civil Case Cover Sheet | 8/15/2024 | Plaintiff |
| C:2 | Complaint | 8/15/2024 | Plaintiff |
| C:3 | Application for Order Appointing Guardian Ad Litem for Minor | 8/15/2024 | Plaintiff |
| C:4 | Order Appointing Guardian ad Litem | 8/15/2025 | Court |
| C:5 | Case Management Conference Statement Filed | 2/7/2025 | Plaintiff |
| C:6 | CMC Notice – Fast Track (4) | 2/7/2025 | Court |
| C:7 | Case Management Conference Minutes– Heard in Part | 2/14/2025 | Court |
| C:8 | Order Appointing Guardian Ad Litem for Minor Filed | 2/18/2025 | Court |
| C:9 | Summons Issued / Filed | 3/3/2025 | Court |

**EXHIBIT C1**

Case 3:25-cv-05438-TLThh Document 1-1 Filed 06/26/25 Page 58 of 122

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Steven H. Cross, SBN 316147,
1555 Botelho Dr., Ste. 149,
Walnut Creek, CA 94596
TELEPHONE NO.: (925) 263-6687       FAX NO. (Optional):
E-MAIL ADDRESS: Steven@SCrosslaw.com
ATTORNEY FOR (Name): Plaintiff

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
STREET ADDRESS: 725 Court Street,
MAILING ADDRESS:
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME:

CASE NAME:
v. Walnut Creek School District

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000) [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | C24-02211 |
| | | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[x] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties        d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more
          issues that will be time-consuming to resolve                courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence             f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action (specify): Twelve: Violations of US and State Code, Negligence and Negligent hiring, assault, etc.
5. This case [ ] is [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: August 15, 2024
Steven H. Cross
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**EXHIBIT C2**

1  STEVEN H. CROSS, Bar No. 316147
   LAW OFFICE OF STEVEN H. CROSS
2  (925) 263-6687
   steven@scrosslaw.com
3  1555 Botelho Dr., Ste. 149,
   Walnut Creek, CA 94596
4
   Attorney for Plaintiff        Per local Rule, This case is assigned to
5                                Judge Devine, John P, for all purposes.
6
7
8        SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
9
                                                    C24-02211
10  _____, a minor,  )  Case No.:
    by and through his Guardian ad Litem, )
11  SERINA SANTOLERI, an individual,      )  **COMPLAINT FOR DAMAGES FOR:**
                                          )
12              Plaintiff,                )  Violation of
                                          )  1.  42 U.S.C. 12101 (ADA);
13        vs.                             )  2.  29 U.S.C 794;
                                          )  3.  California Civil Code § 52.1, (UNRUH
14  WALNUT CREEK SCHOOL DISTRICT, a       )      ACT);
    public entity, and DOES 1 through 100,)  4.  Education Code § 220;
15  inclusive,                            )  5.  Constitutional Rights (42 U.S.C. 1983);
                                          )  6.  Safe Place to Learn Act (CA Ed. Code §
16              Defendants.               )      234);
                                          )      and
17                                        )  7.  Negligence (Gov. Code §§ 815.2, 820);
                                          )  8.  Negligent Supervision, Hiring, and/or
18                                        )      Retention (Gov. Code §§ 815.2, 820);
                                          )  9.  Negligent Infliction of Emotional Distress;
19                                        ) 10.  Intentional Infliction of Emotional Distress;
                                          ) 11.  Failure to Perform Mandatory Duty to
20                                        )      Protect Student;
                                          )
21  _____     )       **Demand for Jury Trial**
22        COMES NOW Plaintiff |_____, (hereafter "Plaintiff") a

23  minor, by and through his Guardian ad Litem, SERINA SANTOLERI, an individual, and

24  Plaintiff's mother, bring this action, complain, and alleges against Defendant WALNUT CREEK

25  SCHOOL DISTRICT and DOES 1 – 100 (together, "Defendants"), inclusive, and each of them,

on information and belief as follows:

PARTIES, JURISDICTION, AND VENUE

1.    At all relevant times, Plaintiff _____ (hereafter "_____") was a minor, residing with SERINA SANTOLERI, (hereafter "_____'s Mother") in Contra Costa County, California.

2.    At all relevant times, _____ was a student at different schools within the WALNUT CREEK SCHOOL DISTRICT (hereafter "WCSD") including Tice Creek School and Walnut Creek Intermediate School.

3.    SERINA SANTOLERI is Plaintiff's mother and filed concurrently with this Complaint is an application for her to be appointed as _____'s Guardian ad Litem.

4.    At all times relevant herein Defendant WCSD is and was a governmental entity, duly organized and existing under the laws of the State of California, and responsible for the management and administration of all public schools within the WCSD, as well as the employer of all school officials, teachers, and all other of the WCSD staff. WCSD is located at 960 Ygnacio Valley Rd, Walnut Creek, CA 94596.

5.    Defendant WCSD was, and is, charged with the implementation and enforcement of all State and Federal laws and regulations applicable to the management of all schools within the WCSD, including the training and supervision of all teachers and other staff to ensure that all State and Federal laws and regulations applicable to educational facilities are followed.

6.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 – 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is negligently responsible in some manner for the occurrences herein alleged, and that plaintiff's injuries as herein alleged were proximately caused by the negligence of these defendants.

7.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the defendants sued herein as DOES 1 – 50, inclusive, was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such

agency and employment. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the defendants sued herein as DOES 51 – 100, inclusive, was another student or family member of another student in the WCSD.

8.    Venue is proper in Contra Costa County in the State of California because it is where the subject torts took place, and where the Defendants reside, do business, and work.

9.    An award of compensatory damages is sought in an amount exceeding the minimum jurisdiction of this court and to be proven at trial.

<u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

10.    Pursuant to the California Government Claims Act, Plaintiff submitted a timely Claim to defendant WCSD; the WCSD did not acknowledge or respond to the claim. The Government Claim is attached hereto as **Exhibit 1** and is incorporated by reference herein.

<u>GENERAL ALLEGATIONS</u>

11.    _____ is entitled to an individualized education plan ("IEP") under California Law. The schools discussed below failed to timely hold the necessary meetings to evaluate and provide an effective and reasonable IEP plan. And the IEP plan that was in place was not consistently followed (or sometimes at all), causing a serious and permanent detriment to _____ s education and progress.

12.    At Walnut Creek Intermediate School (hereafter "WCI"), _____ was bullied constantly. His family complaint constantly. After many months of complaints, the principal, Mr. Law, eventually said "I should have changed _____ s classes a months ago when you asked." Instead of addressing his assailants, WCI took _____ out of class almost daily, placing him in the hallway without instruction. WCI did not provide on-campus counseling services or other necessary and reasonable accommodations under the requirements of his IEP. In addition to failing to implement the terms of his IEP plan, the school also denied him access to third-party assistance provided by his parents and health care providers.

13.    Across the 2022-2023 school year, _____ brought his school issued chromebook and personal cell phone and backpack to school. Often, students in Ms. Montgomery's class would take these items out of _____'s backpack and taunt him. Students would go further to break and

steal his cell phone, break and steal his chromebook, and vandalize his property. No teacher intervention occurred to stop student taunting. _____ was often sent to the office where he remained for the day without instruction. While at WCI,_____ s scooter was stolen, three bikes were damaged by other students, and he came home often with scrapes, bruises, and bumps as he reported being punched, pushed daily, humped in the bathroom, slapped, kicked, berated, harassed, bullied, and humiliated by other students. He was pushed off his bike and had his backpack, laptop, cell phone, hat, and other items stolen or taken and thrown on the ground by other students.

14.    Most days across the 2022-2023 school year, his teacher, Ms. Montgomery, openly discussed, humiliated, or shamed _____ about his medication in front of the class and other students. Further, administration, office personnel, and other teachers such as Mrs. McIntyre openly discussed, encouraged, recommended _____ take medication in phone calls, parent/teacher meeting, face-to-face meetings, at the front office desk, and shamed _____ and his family regarding his medication. _____'s mother and grandmother brought the issues to the attention of employees of the WCSD such as Mr. Law and Ms. Banister constantly.

15.    In August, 2022,_____ rode his bike to school and parked it with the other bikes on campus. Students made fun of _____ for having a "girly" blue colored bike. After school and on campus,_____ pushed _____ off his bike several times._____ believes _____ vandalized his bike by letting the air out of the tires as his bike was unrideable. _____ informed Mr. Law and the PE teacher. No action or remedy occurred other than taking _____ out of class.

16.    On September 14, 2022, Mr. Law made the unreasonable decision to suspend _____ and insisted that _____ write an apology letter to his bully.

17.    In September, 2022,_____ rode his bike to school and parked it with the other bikes on campus. After school,_____ found that his bike's chain and gear were removed, the chain was broken it in half, and unrideable. _____ informed Ms. Banister who called his grandmother to pick up him up from school because his bike was broken. No action or remedy occurred other than taking him out of class.

18.    In September, 2022,_____ was gifted a Warriors hat for his birthday and wore it to school. Another student stole it. _____ and his mother informed Ms. Banister. No action or

remedy occurred.

19.    On October 28, 2022, that same student intentionally ripped _____ s Halloween costume and he informed Ms. Banister.

20.    On November 7, 2022, Mr. Law (principal) saw _____ in the hall and, after a recent bullying incident, asked _____, "<u>what are you, a baby</u>?" During a meeting with Mr. Law and Mrs. Banister in Mr. Law's office, Mr. Law informed _____'s grandmother that "he made a mistake. I said something to _____ in front of other students that I shouldn't have…"

21.    On December 2, 2022, _____ came home with strangulation marks from his hoodie strings due to another student strangling him. That same student mentioned above pulled the draw strings tight around _____ neck and lifted _____ up off the ground. Mr. Law's response: "They are friends and nothing further was said or done about the matter." A police report was made with the WCPD.

22.    On January 10, 2023, _____ got a new bike for Christmas. _____ rode his bike to school and parked it with the other bikes on campus. After school, _____ found his new bike brakes broken with the spokes cut. _____ informed Mr. Law. No action or remedy occurred.

23.    On January 28, 2023, _____ brought his chromebook to school. However, students from Ms. Montgomery's class took it and would drop it on the cement or hide it from him, hindering his ability to learn. Ms. Banister was informed. Other than the librarian helping to fix the computer, no other action was taken by the school.

24.    On February 23, 2023, an eighth grader came up to him with six other older boys and assaulted and battered _____, kicking him in the testicles.  All seven boys laughed and walked away. _____ told his PE teacher, Mr. Loving, about the incident. To _____ knowledge, Mr. Loving didn't do anything about it. After Mr. Law was informed, he chose not to believe _____ and dismissed his complaint. Later, it was revealed that those students had done exactly as _____ had stated and they were made to apologize, with no other action by the school. Even after it was shown to be the truth, Mr. Law continued to invalidate and dismiss and minimize the way _____ was treated.

25.    On February 27, 2023, Mr. Law acknowledges multiple HIPPA violations by Mrs.

Montgomery via email to _____ s mother, "In regard to Mrs. Montgomery... I agree. She should not make any references to _____ s medication publicly. I will remind her that she should keep these comments private."

26.    On March 3, 2023, Ms. Jenny, the front office person, spoke loudly in the office while on speaker phone about _____'s private medical and mental health information on speaker phone with his family. On March 22, 2023, Ms. Montgomery acknowledged video recording _____ in front of the class, even after _____ asked her not to. _____ was embarrassed and humiliated.

27.    On April 26, 2023, during resource class and to support him, Mr. Peterson grabbed _____'s wrist with anger and force-leaving a red mark on _____'s wrist. Mr. Peterson frightened him such that he understandably ran out of the classroom and hid in a bathroom. It took the administration 15 minutes to find him. After, _____ shared with Mr. Law and Ms. Banister what happened. No actions were taken to investigate Mr. Peterson's actions towards _____. When _____ got home, he shared the Peterson assault incident with his family who immediately called the school to form a complaint and the Walnut Creek Police Department to file a police report. Ms. Banister investigated and found no wrongdoing on Mr. Peterson's part. However, student eyewitness statements support _____ in that they were also shaken by the incident with Ms. Peterson.

28.    In April, 2023, _____ rode his scooter to school and parked it with the other bikes and scooters on campus. After school, _____ found his new scooter had been stolen. _____ identified a female student who stole it. _____ informed Mr. Law, Ms. Banister, and Mr. Miller. No action or remedy occurred.

29.    In April, 2023, students from Ms. Montgomery's class took _____ s chromebook off his desk during class, out of his backpack during recess and would drop it on the cement or hide it from _____ so that he didn't have it to learn with. The chromebook never was returned and _____ went without a chromebook for 7-10 days. Ms. Banister was informed. No action or remedy occurred. 7-10 days later, Ms. Jenny, from the school indicated that he would need a new one.

30.    On May 4, 2023, _____ was suspended for being out of his seat and standing up during

class. Mr. Miller had yelled at _____ to sit down before sending _____ out of the classroom. _____ was kept alone in the office until he could be picked up. _____ remained in the office the full day without instruction.

31.    When _____'s guardians have voiced their concerns, they have been invalidated. When _____ voices his fear and concerns, they are invalidated. When concerns are raised, Mr. Law was abrasive, combative, negative, and not supportive. After a complaint with the district was filed, Mr. Law became even colder, distant, and stopped responding. This made IEP all but impossible since Mr. Law was their point of contact.

32.    _____ was transferred to Tice Creek from WCI without consulting his guardians. In April, 2023, _____'s guardian made a Complaint to WCI regarding the way he was being treated and the lack of FAPE / IEP provided to him due to his disability. Instead of addressing her concerns, they retaliated and decided to have him transferred. _____ was transferred a week before school was to start by preventing _____'s guardians from receiving the appropriate registration. On August 8, 2023, a week before school started, WCSD forwarded an email about transferring _____ out of the school district. His guardians scrambled to complete registration only to be transferred anyway. Apparently, the registration information was timely-sent to _____'s father, who has never been involved in his education or upbringing (there is a restraining order against him on file with the school). This inappropriate and abrupt transfer completely uprooted _____ without notice and caused additional hardship as Tice Creek is miles from his home (unlike WCI, which is two blocks away). This disruption to his education, emotional well-being at school, and upheaval was enacted by the school due to his disability – they got rid of a "problem" child instead of protecting him, educating him, or otherwise addressing his guardian's complaints and implementing proper IEP (any IEP).

33.    Since transferring to Tice Creek, in August, 2023, _____ has been consistently bullied by other students. He has been punched, slapped, kicked, berated, harassed, threatened, pushed, and jumped. Tice Creek has been made aware of this bullying on multiple occasions in August, September, & October, has not acted reasonably to protect _____; Tice Creek has also failed to reasonably discipline his assailants, and denied reasonable tutoring. As an example, on October 23,

2023, _____ was told he would be jumped by another student. Tice Creek was made aware but did not stop "___" (assailant) or protect _____. Sure enough, later that day, _____ was punched in the chest, pushed, and embarrassed in front of other students by ___. _____ was injured physically and emotionally. He was too afraid to go back to school because of the attack. Instead of preventing the attack, separating the student who made the threat, changing classes, or otherwise, the school did <u>nothing</u>.

34. _____ s guardians requested an IEP meeting while at WCI. They were in contact with the school almost daily from August, 2022, to March, 2023, to try to set up IEP. The district failed to evaluate and implement an IEP by ignoring these requests. The items requested were headphones, hard-copy homework, one-on-one time with an aide, counseling, psychotherapy, tutoring, backpack checks, etc. These requests were made during informal meetings and admin/teacher meetings to no avail. It wasn't until the Complaint mentioned above was sent to the school that an actual IEP meeting was hastily, finally, set up around May, 2023. September, 2022 to May, 2023, is an unreasonable delay in conducting an IEP evaluation. During the meeting, Ms. Banister (WCI) indicated that these requests (headphones, hard-copy homework, etc.) would "easily be granted." <u>They never were.</u> The district failed to comply with their duty to provide IEP for any of the requests made.

35. Tice Creek did not perform any better. During an IEP meeting at Tice Creek (9/11/23), _____ s guardians were asked to backdate and sign documentation related to an IEP meeting in March or April, 2023. When the guardian informed the IEP panel that no such meeting occurred, the psychologist, Lynn Childers, took the form back. Clearly, they unreasonably delayed evaluation and implementation of IEP and have failed to hide their tracks.

36. On October 11, 2023, _____ was tested by Sylvan Learning Center; he is in 7th grade with a 3rd grade and 2nd grade reading and writing level. It is the district's failure to evaluate and implement a proper IEP that has caused him to be so far behind. A proper IEP should have been in effect and implemented to give _____ access to an appropriate and reasonable education to address loss of learning and lack of educational growth.

37. _____ has also been improperly disciplined on multiple occasions and this has affected

his education (as he has been pulled out of class) and will likely affect his future, due to the negative impact of having those items on his record., _____ was suspended when defending himself around October 23, 2023. The school did nothing. On October 18, 2022, Braylon was not allowed to participate in the 6th grade Skate night, without reason. On another occasion, he was suspended when someone else brought a nerf gun to school. He was also suspended on May 4, 2022, and September 15, 2022, without good reason. He has received the brunt of exceptional and swift and unreasonable punishment due to him being a "problem", when his only crime has been having ADHD. Outside of being formally punished, his education has been severely hindered by the schools pulling him out of class and sending him to the office. He missed almost half a year at WCI from being pulled from class. Instead of addressing his needs, they just remove him. \

38.    Due to his ADHD, _____ was excluded from the participation in, denied the benefits of, and subjected to discrimination.

39.    Plaintiff has suffered verbal and physical abuse at the hands of other students and the WCSD has failed to create and/or implement appropriate and reasonable accommodations, leading to additional issues and emotional distress.

### FIRST CAUSE OF ACTION
(Violation of 42 U.S.C. 12101; American with Disabilities Act against WCSD and Does 1-50)

40.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

41.    As a public learning institution, Defendant is covered for the purposes of Title II of the ADA. Plaintiff has a learning disability protected under the ADA act. Defendant discriminated against Plaintiff as outlined above and including but not limited to ignoring his pleas for help from bullying, and removing him from class and hindering his education. The reason for these actions is clear: Defendant WCSD's staff viewed Plaintiff as a "problem child" due to his disabilities. As the result, he was not taken seriously and ignored at the detriment to his physical, emotional, and education health. Defendant further failed to reasonably accommodate Plaintiff's disability.  As a result of that discrimination, Plaintiff suffered damages in an amount according to proof, and was

prevented from receiving the education and degree with which he sought.

## SECOND CAUSE OF ACTION
(Violation of 29 U.S.C 794 (Section 504 of the Rehabilitation Act of 1973) against WCSD and
Does 1 - 50)

42.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

43.    As a public learning institution, Defendant is a covered entity for purposes of Section 504 of the Rehabilitation Act of 1973. Plaintiff has a learning disability protected under the ADA act. Defendant discriminated against Plaintiff as outlined above and including but not limited to ignoring his pleas for help from bullying, removing him from class and hindering his education, and allowing inappropriate touching to occur by staff. The reason for these actions is clear: Defendant WCSD's staff viewed Plaintiff as a "problem child" due to his disabilities. As the result, he was not taken seriously and ignored at the detriment to his physical, emotional, and education health. Defendant further failed to reasonably accommodate Plaintiff's disability. As a result of that discrimination, Plaintiff suffered damages in an amount according to proof, and was prevented from receiving the education and degree with which he sought.

## THIRD CAUSE OF ACTION
(Violation of California Civil Code § 52.1, (UNRUH ACT) asserted against all Defendants)

44.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

45.    Plaintiff, as a result of Defendants, and each of their conduct as alleged above, was unable enjoy the right to his state sponsored education as a result of either his disability or his or his parent's reporting of the school and/or its administration's treatment of Plaintiff.

46.    Defendants' actions were made in an attempt to interfere with Plaintiff's right to said education. As a result of Defendants' conduct, Plaintiff suffered damages in a sum according to proof.

47.    Plaintiff is also entitled to an award of attorney's fees under the UNRUH Act.

1

2

### FOURTH CAUSE OF ACTION
(Violation of Education Code § 220 asserted against all Defendants)

48.   Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

49.   Education Code § 200 provides "It is the policy of the State of California to afford all persons in public schools, regardless of their disability ... equal rights, and opportunities in the educational institutions of the state. The purpose of this chapter is to prohibit acts that are contrary to that policy and to provide remedies therefor…no person shall be subjected to discrimination on the basis of disability ... in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid." Defendants allowed and/or caused Plaintiff to suffer severe and pervasive bullying, harassment, assault, and battery.  Defendants had actual knowledge that Plaintiff was bullied and harassed because of his disabilities. Plaintiff and his parents informed WCSD that Plaintiff was subjected to severe bullying and harassment, but WCSD was deliberately indifferent by failing to take any actions to prevent the ongoing bullying, harassment, assault, or battery.  Defendants continued the practice of allowing Plaintiff and his assailants to be unsupervised.

50.   The conduct of Defendants discriminated against Plaintiff on the basis of his disability by denying him the right to equal access to the educational benefits and opportunities of the state in violation of Education Code § 220. Due to these acts and failures to act as hereinabove described, Defendants proximately caused the injuries to Plaintiff and are subject to liability pursuant to California Government Code 22 §§ 815.2(a) and 820(a). As a direct and proximate result of the acts, omissions, and intentional conduct of Defendants, Plaintiff was injured and he continues to suffer therefrom, serious emotional distress.

51.   As a result of Defendants' conduct, Plaintiff suffered damages in a sum according to proof. Non-Public Entity Defendants' actions were in reckless disregard for the probability that severe injury would result from their failure to carefully adhere to their duties, and this said conduct amounts to physical abuse, neglect, recklessness, oppression, fraud and/or malice. An award of

punitive damages is justified and appropriate.

**FIFTH CAUSE OF ACTION**
(Violation of Constitutional Rights (42 U.S.C. 1983) asserted against all Defendants)

52.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

53.    Defendants participated in the deprivation of constitutional rights of Plaintiff by discriminating against, harassing, intimidating, and bulling Plaintiff as alleged.

54.    Defendants intentionally discriminated against Plaintiff as a member of an identifiable class (student with disabilities) by knowingly failing to address the severe abuse he experienced while within the WCSD that was based on disability.

55.    Defendants violated Plaintiffs rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by actions, including, but not limited to, depriving him of equal protection under the law on the basis of his disability.

56.    Defendants acted with deliberate indifference in responding to the complaints of physical, verbal, and emotional abuse and repeatedly exposed Plaintiff to the risk of abuse, harassment, intimidation, bullying, discrimination and ultimately, attacks that left him with severe injuries. As a proximate result of the violations alleged herein above, Plaintiff has suffered damages according to proof.

**SIXTH CAUSE OF ACTION**
(Violation of Safe Place to Learn Act (CA Ed. Code § 234))

57.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

58.    California's Safe Place to Learn Act, codified at Ed. Code, §§ 234 et. seq., mandates and governs WCSD existing policies and procedures to remedy discrimination, harassment, intimidation, and bullying based on characteristics set forth in Ed. Code, § 220, such as disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual

orientation, or association with a person or group with one or more of these actual or perceived characteristics. The Ed. Code requires all school personnel who witness or receive reports of an act of discrimination, harassment, intimidation, or bullying must take immediate steps to intervene.

59.    Under the Act, the WCSD policy addressing discrimination, harassment, violence, intimidation, or bullying must be posted in all schools and offices, including staff lounges and student government meeting rooms. The posting must provide information to students, parents and guardians, employees, members of the Board of Education, and the general public on how to file a complaint at the school, the process for investigating complaints, and all timelines.

60.    Any student, parent or guardian, or other individual may report an incident to a teacher, the principal, a compliance officer, or any other available school employee. The complaint alleging unlawful discrimination, harassment, intimidation, or bullying against any student, employee, or other person participating in WCSD programs and activities must be investigated and resolved through the Uniform Complaint Procedures, as described in this section.

61.    Any student who engages in acts of discrimination, harassment, violence, intimidation, or bullying related to school activity or school attendance occurring within a WCSD school is subject to prompt disciplinary action up to and including expulsion.

62.    California law provides additional specific protections for students harassed and discriminated against, including specific statutes governing school-place bullying and harassment of students. The statutory framework mandates that when a school and its school district are aware of alleged harassment and discrimination, it must respond in a manner that is not clearly unreasonable by taking timely and appropriate action to investigate what occurred. If an investigation reveals that discriminatory harassment has occurred, the school must respond.

63.    When a school district's employees choose to take no action when confronted with a discriminatory and hostile environment, that implicates discriminatory intent.

64.    The seriousness of the harassment and intimidation by students against Plaintiff has manifested itself in actual physical distress and personal injury for which Plaintiff requires counseling. The injurious harassment also impacted Plaintiff's ability to perform and enjoy his education. The discrimination also includes a failure to discipline and enforce any policies against

known harassing students. Defendants' failure to act reasonably, and as a direct and proximate cause of said failure, Plaintiff has been injured according to proof.

<u>SEVENTH CAUSE OF ACTION</u>
(Negligence Asserted against all Defendants)

65.   Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

66.   Plaintiff had the right to a safe, secure, and peaceful school environment. Defendants failed to acknowledge and correct unsafe conditions, thereby promoting hazing and violence against Plaintiff. Defendants had a duty at all times to supervise the conduct of students on school campus and to enforce those rules and regulations necessary for the protection of the students and exercise ordinary care to protect students from the type of attacks described above.

67.   Defendants were negligent and careless in their lack of response, discipline, and/or assistance to Plaintiff; they failed to exercise ordinary care in supervising the conduct of other students to prevent the relentless bullying Plaintiff endured.

68.   Prior to occurrence of the injuries herein alleged, Defendants had actual and constructive notice that fights, beatings, and attacks such as have been alleged herein had occurred before, and were likely to occur again, in the absence of adequate supervision; defendants were negligent and careless in that having such knowledge they nevertheless failed to use ordinary care in the supervision of students and failed to provide adequate supervision or any supervision at all.

<u>EIGHTH CAUSE OF ACTION</u>
(Negligent Supervision, Hiring, and/or Retention against all Defendants.)

69.   Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

70.   Defendant WCSD employed teachers and administrators charged with protecting the safety of their students including Plaintiff.

71.   Defendant WCSD owns, operates, and/or manages WCI and Tice Creek. Their staff were unfit to protect and supervise Plaintiff. A significant part of their job was to supervise students and

1   ensure they refrained from placing them in unreasonable or avoidable danger.

2   72.   Tice Creek and WCI received multiple calls/ e-mails regarding Plaintiff being bullied.

3   Defendant did nothing. WCSD was on notice as to the unfitness of their employees and knew or

4   should have known that the staff was unfit to supervise and protect Plaintiff. Had Plaintiff been

5   adequately supervised by school staff, they would have taken steps to address previous complaints

6   about bullying of Plaintiff. However, Defendant WCSD failed to take adequate action against the

individuals bullying Plaintiff and the faculty and staff continuously failed to protect him.

7   73.   As a result of the inaction and lack of supervision, Plaintiff was harmed and suffered

8   greatly as a result of the incompetence, unfitness, and reckless disregard for student safety by the

9   schools' faculty, staff, and administration.

10   74.   As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer

11   great physical and emotional pain, embarrassment, loss of self-esteem, and loss of enjoyment of

life, and has incurred and will continue to incur expenses for medical and psychological treatment,

12   physical therapy, and counseling.

13   ### NINTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress against all Defendants.)

14

15   75.   Plaintiffs repeat, reiterates, and re-alleges each and every allegation of this Complaint in

16   each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth

herein.

17   76.   Defendants' conduct caused Plaintiff to suffer severe emotional distress. Defendants'

18   conduct was negligent and Plaintiff suffered serious emotional distress.

19   77.   Defendants' negligence was a substantial factor in causing Plaintiff's serious emotional

20   distress. Defendants acted with reckless disregard of the probability that Plaintiff would suffer

21   emotional distress. Plaintiff has suffered severe emotional distress and Defendants were a

22   substantial factor in causing this severe emotional distress.

23   78.   Non-Public Entity Defendants' actions were in reckless disregard for the probability that

24   severe injury would result from their failure to carefully adhere to their duties, and this said

25   conduct amounts to physical abuse, neglect, recklessness, oppression, fraud and/or malice. An

1    award of punitive damages is justified and appropriate.

2                          TENTH CAUSE OF ACTION
               (Intentional Infliction of Emotional Distress against all Defendants)

3    79.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in

4    each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth

5    herein.

6    80.    Defendants' conduct caused Plaintiff to suffer severe emotional distress. Defendants'

7    conduct was outrageous and was intended to cause Plaintiff emotional distress. Also, Defendants

8    acted with reckless disregard of the probability that Plaintiffs would suffer emotional distress,

     Plaintiff has suffered severe emotional distress and Defendants were a substantial factor in causing

9    this severe emotional distress.

10   81.    Non-Public Entity Defendants' actions were intentional and in reckless disregard for the

11   probability that severe injury would result from their failure to carefully adhere to their duties, and

12   this conduct amounts to physical abuse, neglect, recklessness, oppression, fraud and/or malice. An

13   award of punitive damages is justified and appropriate.

14                        ELEVENTH CAUSE OF ACTION
          (Failure to Perform Mandatory Duty to Protect Student against all Defendants)

15   82.    Plaintiff repeats, reiterates, and re-alleges each and every allegation of this Complaint in

16   each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth

17   herein.

18   83.    Gov. Code §815.6 imposes liability on WCSD for its violations of the mandatory duties

19   relating to supervision of students and their protection. In addition, Plaintiff is informed and

20   believes, and thereon alleges that there is a State Constitutional right conferred on students to be

     provided with a safe environment. (See: Cal. Const., art. 1, Section 28(a)(7), and discussion in

21   *M.N. v. Morgan Hill Unified School Dist.* (2018) 20 Cal.App.5th 607,617). In addition, Plaintiff is

22   informed and believes, and thereon alleges that there are a myriad of antibullying statutes and

23   regulations imposing a duty on the district to prevent bullying in the Education Code.

24   84.    As a direct and proximate result of acts by the Defendants, specifically their failure to

25   protect Plaintiff or prevent bullying or the battery, Plaintiff suffered the damages and injuries

hereinafter alleged. Their failure to perform mandatory duties owed to Plaintiff, including the failure to supervise the bullies and prevent bullying and physical harm, Plaintiff was hurt and injured. As a further direct and proximate result of the Defendants' failures, Plaintiff will incur medical expenses and other damages according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendants on each of the above-referenced claims and Causes of Action as set forth after each cause of action and as follows:

## ALL CAUSES OF ACTION

1.  For general damages including but not limited to mental distress and pain & suffering;

2.  For medical, compensatory, economic, and other special damages caused by Defendants' actions described herein according to proof;

3.  For costs of suit herein incurred;

4.  For pre-judgment and post-judgment interest at the maximum legal rate;

5.  For Attorney's Fees pursuant to the Rehabilitation Act of 1973;

6.  For such other and further relief as the court may deem just and proper;

## CAUSES OF ACTION FOUR, NINE, & TEN,

7.  For punitive damages against Non-Public Entity Defendants;

Dated: 8/15/24                          **LAW OFFICE OF STEVEN H. CROSS**

By_____
STEVEN H. CROSS

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: 8/15/24                          **LAW OFFICE OF STEVEN H. CROSS**

By_____
STEVEN H. CROSS

# **EXHIBIT 1**

STATE OF CALIFORNIA
**GOVERNMENT CLAIM**
DGS ORIM 006 (Rev. 08/19)

DEPARTMENT OF GENERAL SERVICES
OFFICE OF RISK AND INSURANCE MANAGEMENT

| CLAIMANT INFORMATION | | | |
|---|---|---|---|
| LAST NAME | FIRST NAME | | MIDDLE INITIAL |
| INMATE OR PATIENT IDENTIFICATION NUMBER (if applicable) | BUSINESS NAME(if applicable) | | |
| TELEPHONE NUMBER<br>(925) 325-2440 | EMAIL ADDRESS<br>serina.santoleri@yahoo.com | | |
| MAILING ADDRESS<br>2742 Walnut Blvd. | CITY<br>Walnut Creek | STATE<br>CA | ZIP<br>94596 |
| IS THE CLAIMANT UNDER 18 YEARS OF AGE?<br>☑ Yes ☐ No | INSURED NAME(Insurance Company Subrogation) | | |
| IS THIS AN AMENDMENT TO A PREVIOUSLY EXISTING CLAIM?<br>☐ Yes ☑ No | EXISTING CLAIM NUMBER (if applicable) | EXISTING CLAIMANT NAME(if applicable) | |

| ATTORNEY OR REPRESENTATIVE INFORMATION | | | |
|---|---|---|---|
| LAST NAME<br>Cross | FIRST NAME<br>Steven | | MIDDLE INITIAL<br>H. |
| TELEPHONE NUMBER<br>(925) 263-6687 | EMAIL ADDRESS<br>steven@scrosslaw.com | | |
| MAILING ADDRESS<br>1555 Botelho Dr., Ste. 149 | CITY<br>Walnut Creek | STATE<br>CA | ZIP<br>94596 |

| CLAIM INFORMATION | |
|---|---|
| STATE AGENCIES OR EMPLOYEES AGAINST WHOM THE CLAIM IS FILED<br>Walnut Creek School District | DATE OF INCIDENT<br>8/15/22 - present |

LATE CLAIM EXPLANATION (Required, if incident was more than six months ago)

Claimant's mother is on active military service.

| DOLLAR AMOUNT OF CLAIM<br>10,000,000 | CIVIL CASE TYPE(Required, if amount is more than $10,000)<br>☐ Limited ($25,000 or less) ☑ Non-Limited (over $25,000) |
|---|---|

DOLLAR AMOUNT EXPLANATION
Failure to protect a vulnerable disabled student, failure to initiate proper IEP, and retaliation against student.

INCIDENT LOCATION
Walnut Creek Intermediate School & Tice Creek School

SPECIFIC DAMAGE OR INJURY DESCRIPTION

See attached.

CIRCUMSTANCES THAT LED TO DAMAGE OR INJURY

See attached.

EXPLAIN WHY YOU BELIEVE THE STATE IS RESPONSIBLE FOR THE DAMAGE OR INJURY

See Attached/

STATE OF CALIFORNIA
**GOVERNMENT CLAIM**
DGS ORIM 006 (Rev. 08/19)

DEPARTMENT OF GENERAL SERVICES
OFFICE OF RISK AND INSURANCE MANAGEMENT

| AUTOMOBILE CLAIM INFORMATION | | |
|---|---|---|
| DOES THE CLAIM INVOLVE A STATE VEHICLE?<br>☐ Yes  ☑ No | VEHICLE LICENSE NUMBER(if known) | STATE DRIVER NAME (if known) |
| HAS A CLAIM BEEN FILED WITH YOUR INSURANCE CARRIER?<br>☐ Yes  ☑ No | INSURANCE CARRIER NAME | INSURANCE CLAIM NUMBER |
| HAVE YOU RECEIVED AN INSURANCE PAYMENT FOR THIS DAMAGE OR INJURY?<br>☐ Yes  ☑ No | AMOUNT RECEIVED (if any) | AMOUNT OF DEDUCTIBLE(if any) |

| NOTICE AND SIGNATURE |
|---|

I declare under penalty of perjury under the laws of the State of California that all the information I have provided is true and correct to the best of my information and belief. I further understand that if I have provided information that is false, intentionally incomplete, or misleading I may be charged with a felony punishable by up to four years in state prison and/or a fine of up to $10,000 (Penal Code section 72).

| SIGNATURE | PRINTED NAME<br>Steven Cross on behalf of claimant | DATE<br>12/8/23 |
|---|---|---|

| INSTRUCTIONS |
|---|

- Include a check or money order for $25, payable to the State of California.
  - $25 filing fee is not required for amendments to existing claims.
- Confirm all sections relating to this claim are complete and the form is signed.
- Attach copies of any documentation that supports your claim. Do not submit originals.

Mail the claim form and all attachments to:
    Office of Risk and Insurance Management
    Government Claims Program
    P.O. Box 989052, MS414
    West Sacramento, CA 95798-9052

Claim forms can also be delivered to:
    Office of Risk and Insurance Management
    Government Claims Program
    707 3rd Street, 1st Floor
    West Sacramento, CA 95605
    1-800-955-0045

| Department of General Services Privacy Notice on Information Collection |
|---|

This notice is provided pursuant to the Information Practices Act of 1977, California Civil Code Sections 1798.17 & 1798.24 and the Federal Privacy Act (Public Law 93-579).

The Department of General Services (DGS), Office of Risk and Insurance Management (ORIM), is requesting the information specified on this form pursuant to Government Code Section 905.2(c).

The principal purpose for requesting this data is to process claims against the state  The information provided will/may be disclosed to a person, or to another agency where the transfer is necessary for the transferee-agency to perform its constitutional or statutory duties, and the use is compatible with a purpose for which the information was collected and the use or transfer is accounted for in accordance with California Civil Code Section 1798.25.

Individuals should not provide personal information that is not requested.

The submission of all information requested is mandatory unless otherwise noted.  If you fail to provide the information requested to DGS, or if the information provided is deemed incomplete or unreadable, this may result in a delay in processing.

**Department Privacy Policy**
The information collected by DGS Is subject to the limitations in the Information Practices Act of 1977 and state policy (see State Administrative Manual 5310-5310.7). For more information on how we care for your personal information, please read the DGS PrivacyPolicy.

**Access to Your Information**
ORIM is responsible for maintaining collected records and retaining them for 5 years. You have a right to access records containing personal information maintained by the state entity. To request access, contact:

**DGS ORIM**
**Public Records Officer**
**707 3rd St., West Sacramento, CA 95605**
**(916) 376-5300**



██████ was diagnosed with ADHD several years ago and receives regular medical care. ██████ has been registered in the WCSD since first grade. During the 2022-23, ██████ was in sixth grade at Walnut Creek Intermediate School (WCI). Across the year, ██████ experienced unwanted bullying, assault, discrimination, harassment, intimidation, unactioned IEP, and lack of safety by students, teacher, and the principal which directly impacted ██████ s access to a free, appropriate public education (FAPE) and hindering his mental wellness. ██████ came home often with marks on his body from student assault: bloody scrapes from being pushed down, ligature marks on his neck from being strangled with hoodie strings, kneed in the testicles for "being annoying", etc. Further, the special ed teacher has been aggressive towards ██████ grabbed his hand in anger leaving a mark and scarring ██████ and other students. ██████ ran out to the class and hid in the bathroom for 30 minutes before administration found him. No investigation was conducted until we requested it. The "investigation" determined the teacher innocent and student witnesses "tampered with since they were friends." Police reports were filed. The principal and teachers humiliated Braylon in peer group settings about his disability and medication, "██████ did you take your medication today?" Without authorization, a teacher videotaped ██████ during class. Regularly, ██████ was sent out of class missing so much course material and social development skills across the year. He was denied IEP services like headphones, psych evaluation, teachers aid, etc. He was made to go off campus to take his mental wellness therapy phone calls. When concerns were raised to Mr. Law, he invalidated our concerns. The administration overwhelmed us with emails and phone calls. We raised a school district and Dept. of Education complaint on 3/13/23. The principal, Jason Law, retaliated by no longer communicating with me and began a slew of suspensions for ██████ ADHD behaviors, "I'm going to punish him just like the others." The district scheduled an initial complaint intake phone call with us. At the last minute, the district changed the informal meeting to an in-person meeting with WCI staff, "they have a right to face their accusers." The complaint was transferred to their attorney. No outcomes have been communicated. Just this week we learned WCI tried to kick him out of the school, "we no longer accept inter-district transfers." I live in the district and each year provide evidence of my relationship and address. My grandson deserves the right to public school education without the fear of mental or physical abuse and retaliation.

| Date | School | Informed School Y/N | Who was Informed | Incident Description |
|---|---|---|---|---|
| 8/15/22 | WCI | | Mr. Law, Ms. Banister | Reported HIPPA concerns from August - May 2023 |
| 8/15/22 | WCI | | Mr. Law, Ms. Banister | Across August - May 2023: Antagonized and humiliated in Ms. Montgomery, Mr. Peterson, Mr. Miller's classes |
| 8/15/22 | WCI | | Mr. Law, Ms. Banister | Across August - May 2023: Scooter stolen, scrapes, bumps, bruises, slapped, kicked, berated, bullied, harassed, humiliated, etc. |
| 8/15/22 | WCI | | Mr. Law, Ms. Banister | Across August - November 2022: Cut Braylon's bicycle chain. Had 3 bikes that were all tampered with and damaged by students |
| 8/16/22 | WCI | | Mr. Law | Pushed off his bike when riding to and from school |
| 8/22/22 | WCI | | Mr. Law, Ms. Banister | Aug. 2022 - March 2023 IEP requested multiple times in person and over the phone IEP meetings, implementation, and change of classroom to support ████'s safety. Requests and services delayed and denied: headphones, on-campus psych and counseling services, backpack check, teacher-aid, etc. |
| 8/30/22 | WCI | | Ms. Banister | Warriors hat stolen by ████. Informed Ms. Banister several times. Never returned ████'s hat. |
| 9/6/22 | WCI | | Ms. Banister | Nathan takes his backpack, cell phone, laptop, and throws them |
| 9/7/22 | WCI | | Mr. Law, Ms. Banister | Serina emailed Mr. Law to request a class change due to ████ and others bullying and antagonizing ████ in class. Took Mr. Law two months to agree. |
| 9/15/22 | WCI | | Mr. Law, Ms. Banister | Suspension- after a girl bullied ████, he sent her a picture of his knife comb. No threat was made. Safety was not in geopardy ████ was suspended and made to write the girl an apology letter which humiliated him. |
| 9/19/22 | WCI | | Mr. Law, Ms. Banister | Mr. Law set up a F2F meeting. No bullying solution, no IEP support |
| 9/21/22 | WCI | | Mr. Law, Ms. Banister | Reported bullying concerns via email to Mr. Law and Ms. Banister that ████ was being ANTAGONIZED by ████ and students in class |
| 9/29/22 | WCI | | Mr. Law, Ms. Banister | Shamed- Ms. Montgomery talking about pills in front of the class, Monique asked Mr. Law F2F not to discuss pill to ████ or in group settings |
| 10/3/22 | WCI | | Mr. Law, Ms. Banister | ████ PUSHED ████ while standing in line, Serina sent an email |
| 10/3/22 | WCI | | Mr. Law, Ms. Banister | The girl ████ PUSHED ████ into PUSHED ████ down on the ground, Serina sent an email |
| 10/3/22 | WCI | | Mr. Law, Ms. Banister | ████ PUNCHED ████ in the head, Serina sent an email |
| 10/7/22 | WCI | | Mr. Law, Ms. Banister | ████ PUNCHED ████ in the arm, Serina email requested ████ be moved out fo the class |
| 10/7/22 | WCI | | Mr. Law, Ms. Banister | Serina emailed Mr. Law - ████ hitting, punching, pushing ████ daily. |
| 10/24/22 | WCI | | Mr. Law, Ms. Banister | Denied therapy session on campus by Ms. Banister |
| 11/4/22 | WCI | | Mr. Law, Ms. Banister | Serina emailed Mr. Law - ████ humping ████ in the bathroom. Safety - shouldn't be happening |
| 11/7/22 | WCI | | Mr. Law, Ms. Banister | I was in the office speaking to Mr. Law and Ms. Banister about an incident involving ████. Mr. Law told me he made a mistake. He saw ████ in the hallway and said, "what are you a baby?" Mr. Law later realized that he should not have said that to ████ and apologized. |
| 11/7/22 | WCI | | | 504- we asked if a 504 would be appropriate and WCI said no |
| 12/2/22 | WCI | | Mr. Law, Ms. Banister | Strangulation marks from a student that strangled ████ around the neck with hoodie strings |

| | | | | |
|---|---|---|---|---|
| 2/23/23 | WCI | Y | Principal, Mr. Law | **Thursday, 5pm**<br>After school and as usual, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮" came to my home. ▮▮▮▮▮ informed me that he did not have a good day ▮▮▮▮▮ said, "I was kneed in the balls by an eighth grader named ▮▮▮▮ for no reason." ▮▮▮ was in PE and ▮▮▮▮▮came up to him with six other older boys. Unwantedly, ▮▮▮▮▮came up to ▮▮▮ and asked, "are you ▮▮▮▮?" ▮▮▮said "yes." Then, ▮▮▮kneed ▮▮ in the testicles. All seven boys laughed at ▮▮▮▮ then, walked away. ▮▮▮▮ fell to his knees in pain ▮▮▮ witnessed this act. A few minutes later the ▮▮▮▮ and his friends returned to ▮▮ and asked, "did it hurt?" ▮▮▮ replied, yes. Then, ▮▮▮ and his friends walked away again. ▮▮▮ was left in pain, humiliated. and confused why these boys he didn't know would do that to him.<br><br>▮▮▮▮ told his PE teacher, Mr. Loving about the incident. To ▮▮▮▮s knowledge, Mr. Loving didn't do anything about it. I called the school and left a message for the Principal, Mr. laws to call me back about the incident. Mr. Law return my phone call around 5pm. Within ▮▮▮▮ beside me, I told Mr. Law about incident. "There's ▮▮▮▮s story which we know isn't the whole story," said Mr. Law |
| | | | | Mr. Law advised that he'd investigate the situation in the morning with ▮▮▮▮, ▮▮▮▮, and witnesses. We advised ▮▮▮ was a witness.<br><br>Mr. Laws seemingly invalidated ▮▮▮▮s statement as if it was a half-truth or lie. I advised ▮▮▮was a witness and six other friends of ▮▮▮▮▮. I told Mr. Law that I was tired of ▮▮▮ being abused at school, and was concerned for his physical and mental safety. Further, that I thought that ▮▮▮ was being bullied. Mr. laws said this was a one off, which doesn't constitute being bullying. I replied, "I'm aware of the definition of bullying, and it didn't half to be a repetitious unwanted act.<br><br>"We'll, today we took B out of class and had him in the office bc there was a sun and didn't want ▮▮▮ acting out to the sub." I said, thank you. ▮▮▮ seemed to like that quiet time and got a lot done. Mr Laws snapped back, "▮▮ should be in class and not in the office." Wait a minute, I said, seems I can't win here. Damned if I do and damned if I don't. I didn't want my emotions to get the best of me so I said as much and looked forward to his investigation and the outcome tomorrow. We ended the call. |

| 2/24/23 | WCI | Y | Mr. Law, VP. Mr. Miller | Friday, 4pm, Mr. Laws and Mr. Miller<br>Mr. Laws advised ▇▇▇ was a 7th grader, ▇▇▇ apologized to ▇▇▇, ▇▇'s parents were notified, ▇▇▇ spent time in the office for detention (why not suspension or written apology note like ▇▇▇ was made to do for the girl). ▇▇▇ and his friends were kneeing each other in the balls and felt the need to do it to ▇▇▇ what ▇▇▇ had described on Thursday was exactly what happened. Mr. laws stated the cause, ▇▇▇ said, "I did it bc ▇▇▇ is annoying."<br>I think them for the information and asked if we could talk about a couple other topics that Serina was going to bring to their attention on Monday<br>Pills- I asked if we could work on not mentioning ▇▇▇ taking pills in front of other students in the classroom or outside the classroom as it violates his HIPPA rights Mr. laws, or Mr. Miller made the comment that ▇▇▇ will sometimes say to Mr. Laws/Miller, in the hallways, "I took my pill today." I explained it didn't matter if ▇▇▇ was saying it I was asking that the teachers not do it because it violates his rights and it makes him feel humiliated and didn't make him feel good. Come to the school and sit with ▇▇▇, walk from class to class – we've been asking to do this. Oh, Serina did come to the school replied, Mr. Miller and Mr. Law repeated. However, Serina was only shown around the school not allowed to accompany B. Discussed four concerns: Pills, ▇▇▇ & computer- learning-<br>Serina & better assignment info to support B-, Bullying- GOING TO BRING B IN FOR INVESTIGATION |
| | | | | 2/24/22 After investigating, Mr. Law and VP Mr. Miller called me. In fact, ▇▇▇, a 7th grader, kneed ▇▇▇ in the testicles because, "he's annoying." On that call, I expressed for pressing concerns; 1. administration and teachers openly asking ▇▇▇ about taking his ADHD medication in front of the class, students, on campus and violating HIPPA laws, 2. one teaching style and ▇▇▇ challenges of focusing on a computer for education, 3. Serina's challenge of supporting ▇▇▇'s homework without clear instructions, 4. bullying. Mr. Law invalidated each concern; 1. sometimes ▇▇▇ tells us he takes his pill, 2. we teach multiple styles, etc. 3. maybe you or Serina should come sit with him 4. we have a complaint here that alleges bullying by ▇▇▇ and are VERY concerned about ▇▇▇. Mr. Law stated, "you know, we spend more..." I interrupted him, "more time with ▇▇▇ that anyone else in this school. You know how I know that, because you tell Serina and I every time we talk on the phone or meet in person. I am sincerely grateful that you provide him educational support..., Mr. Laws interrupted, "it doesn't sound like you are grateful." The conversation was abrasive, combative, negative, and did not support solutions. Respectfully, I choose to end the call in hopes of coming back fresh and positive on Monday. A police report was filed. |
| 2/27/23 | WCI | Y | Principal, Mr. Law | Emailed Serina... retaliatory tone. |
| 2/27/23 | WCI | N | WCPD | Reported 2/23/23 ▇▇▇ bullying incident and other concerns around bullying at WCI |
| 3/1/23 | WCI | | Mr. Law | Even after we and Mr. Law requested, Ms. Montgomery and the front office lady continued to discuss, advise, and humiliate Braylon about ADHD medication. See email from Mr. Law dated 3/1/23 |
| 3/3/23 | WCI | Y | Jenny, secretary | HI, it's Jenny at WCI. I'm just calling about um were're just checking to make sure he took his meds this morning. There's one in his boxes, Friday's still is a pill in it. And he said he did take it. Um but the teacher said he's just all over the place this morning. If you could call me back 925-944-68-40 ext 8801 |
| 3/13/23 | WCSD | | Ms. Eagan | Submitted initial complaint to the WCSD |
| 3/14/23 | WCI | | Mr. Law, Ms. Banister | Mr. Law called me to ask how to reach Serina or Rick. I ask what the issue was and he said he no longer felt comfortable talking to me. He refused to speak with me or include me in emails after the complaint was filed. I had a need to discuss the IEP, bullying, suspensions, etc. which he managed. |

| Date | Entity | Y | Person | Description |
|---|---|---|---|---|
| 3/15/23 | WCI | | Mr. Law | Mr. Law taunted Serina by initiating contact with Braylon's father which is astranged and restrained by court order which is on file at the school |
| 3/15/23 | WCI | | Mr. Law | When Braylon tried to self advocate hi voice was minimized, made to feel insignificant, dismissed, not believed, etc. Ex: Mr. Peterson assault, |
| 3/20/23 | WCI | | Mr. Law, Ms. Banister | March 20 - May 2023: WCSD/WCI overwhelmed Serina with emails and phone calls |
| 3/20/23 | WCI | | Mr. Law | teachers and admins increasing removed ▉ from class and sat him in the office by himself |
| 3/22/23 | WCSD | Y | Ms. Montgomery videotaped | Ms. Montgomery videotaped ▉ in class without his or our consent. VIDEO available. |
| 4/10/23 | WCSD | | Ms. Eagan | Ms. Eagan bullied Serina and I into believing we were required to meet in person for the initial complaint and "complaintants have a right to face their accusers." |
| 4/11/23 | WCSD | | Ms. Eagan | Ms. Eagan sent notice of transfer --> district hired an attorney to manage the complaint. Also, 1st time WCSD provided UPC documentation |
| 4/24/23 | WCSD | | Ms. Nepacena | WCSD attorney Katrina J. Nepacena initial meeting. Showed her the video. |
| 4/26/23 | WCI | | Mr. Law, Ms. Banister | Mr. Peterson grabbed ▉ arm leaving a mark. An investigaton was made only after we requested it. Investigation discounted students who witnessed it. Not found at fault |
| 5/4/23 | WCI | | Mr. Miller | Suspension- on campus suspension |
| 8/3/23 | WCSD | | Ms. Mendiola | Enrollment team sent Serina an email regarding Inter Distric Transfer. We never asked nor wanted ▉ transferred. Serina was deployed when this email was sent. |
| 8/4/23 | WCSD | | Ms. Eagan | Ms. Eagan forwarded an district transfer email. Serina was deployed and should've included me on the initial email. TWO things: 1. why the district transfer. Our paperwork has always been accurate and lived in the district. 2. why didn't they send it to me |
| 8/4/23 | WCI | | Ms. Craven | Called Earlene Craven at WCI to complete registration. |
| 8/9/23 | WCI | | Mr. Arlene | Hand delivered registration documentation to Arlene Craven. Mr. Law saw ▉ and ignored him. |
| 8/10/23 | WCSD | | Ms. Eagan | Ms. Eagan called to inform me that ▉ was being transferred to Tice Creek Middle School 1.6 miles away because, 1. we registered too late, 2. WCI had no room because they were short two resource teachers. I informed Ms. Eagan that I could not ge ▉ to and from school every day because I was disabled. I requested transportation services which she denied, "we don't provide in-district transportation." |
| 8/14/23 | WCSD | | Ms. Eagan | I was made to drive ▉ to and from school 8/15 - 30th |
| 8/14/23 | WC School Board | | Ms. Hernandez Gatty | I emailed Ms. Hernandez-Gatty for help with WCSD and WCI retaliation. She declined and forwarded my email to WCSD. |
| 8/30/23 | Tice Creek | Y | IEP meeting | Boy pushing ▉ |
| 9/11/23 | Tice Creek | Y | IEP meeting | MCL attended in person. I was asked to sign an IEP meeting form that didn't happen. |
| 9/11/23 | Tice Creek | | Dylan Scott, Principal | Slapped, kicked, berated, bullied, harassed by Jay at Tice Creek from August to October |
| 10/2/23 | Tice Creek | Y | IEP meeting | All in attendance |
| 10/6/23 | WCSD | | Ms. Eagan | WCSD provided the Investigation Report to Serina and I |
| 10/18/23 | WCI | | Mr. Law | Not allowed to go to 6th grade skate night |
| 10/18/23 | WCI | | Mr. Law, Ms. Banister | Suspension- someone brought a nerf gun to school and ▉ held it. ▉ got suspended and the other boy didn't |
| 10/23/23 | Tice Creek | Y | Dylan Scott, Principal | Serina emailed Mr. Scott about a bully and "jumping" Braylon |

| 10/23/23 | Tice Creek | Y | Dylan Scott, Principal | ████ was confronted by two bullies: ██ and █████ punched his chest, pushed him 4-5 times in front of his peers. ████ was scared and shaking, too afraid to move ████ repeatedly asked ██ to stop, leave him alone, etc. After pushed him four times, █████ said, push me again and see what happens. ██ pushed him again, and █████ punched him in the face. ██ lundged at █████ again, and █████ punched ██ in the face again. Mr. Scott arrived after this. ████ was suspended ██ was not. |
|---|---|---|---|---|
| 11/10/23 | WCI | | Ms. Eagan, Mr. Law | Suspensions - Serina requested all 2022-23 suspension records |
| 12/5/23 | WCI | | Mr. Law, Ms. Banister | I was in the office speaking to Mr. Law and Ms. Banister about changing ████████ classes to avoid being bullied by ████ Mr. Law stated, "I should have changed █████'s classes a month ago when you asked." |
| TBD | WCI | | Mr. Law, Mr. Miller | Suspension- off campus suspension for not sitting still in Mr. Miller's class. Mr. Law asked █████ to come in his office. ██████ was frightened bc Ms. Banister said everything was fine. |
| TBD | WCI | | Ms. Eagan, Mr. Law | Other suspensions likely exist |

Walnut Creek School District & ▊▊▊▊▊▊▊▊▊▊▊▊▊▊

Monique Lazzarini
2742 Walnut Blvd.
Walnut Creek, CA 94596
moniquelazzarini@gmail.com
925-325-2440

October 31, 2023

California Department of Education
1430 N St #5901
Sacramento, CA 95814
916-319-0800

Re: Appeal of Walnut Creek School District's Investigation Findings – UCP Complaint on behalf of
▊▊▊▊▊▊▊▊▊▊▊▊▊▊

Dear Members of the California Department of Education,

I am writing to respectfully appeal the findings of the Walnut Creek School District's
investigation into WCI's behaviors, safety concerns, access to FAPE, and civil rights violations
experienced by my grandson, ▊▊▊▊▊▊▊▊▊▊▊▊▊ ▊▊▊▊▊) acros▊▊▊▊▊▊ 6th grade
year, August 2022 – May 2023. Further, extending this to current day as bullying and retaliation
continue.

My name is Monique Lazzarini. I am Serina Santoleri's (Serina) mother, ▊▊▊▊▊▊▊▊
▊▊▊▊▊▊ (▊▊▊▊▊) grandmother and guardian/caregiver when Serina is away serving in the
U.S. Army. I have four amazing children and successfully head the Quality and Regulatory
division of a global medical device company impacting 130 million patients annually. Also, I have
previous clinical experience as a surgical nurse. My family and I lead productive lives and are
active members in the Walnut Creek community. In my spare time and over the course of my
life, I volunteer for various organizations such as public schools, Boys and Girls Scouts, veterans,
and women in leadership. Recently, I received a Lifetime Achievement Award from the President
of the United States for my lifelong commitment to building a stronger nation through volunteer
services.

In 2018, Serina joined the military, and I began caring for ▊▊▊▊▊. My home is a positive one full
of love, stability, consistency, and opportunity for growth. ▊▊▊▊▊ has transitioned well into our
home and looks up to his aunts Emily, Gianna, and uncle Zack that live/lived in the home. They
help me transport, tutor and play age-appropriate games like baseball, scootering and Yatzee
with ▊▊▊▊▊. Emily is an Army pilot. Emily, Gianna, and Zack are role models with their girl/boy
scouts Gold and Eagle Scout Awards respectively. ▊▊▊▊▊ is a great kid with a love for life,
sports, math, and adventure like his mom. ▊▊▊▊▊ has ADHD and is a minority by disability and
race; Asian and American Indian.

1

Walnut Creek School District & ██████████████████

Serina is ████████ mom and by court order, sole decision-maker of ████████. She is an Army Reservist part time and works full time for Oakland Children's Hospital as a Surgical Tech specializing in pediatric trauma, cardiac, neurology, and organ harvesting cases. She is the ~0.05% of the world that can do what she does. She is a loving and caring mother to one- Braylon.

████████s father, Mr. Lindsey can be challenging. We've had restraining orders in place since 2016. Mr. Lindsey only has visitation rights. Restraining orders, court orders, and appropriate documentation have always been provided to the WCSD, schools, and discussed multiple times in face-to-face meetings with principals in a timely fashion and across the school years. (WCSD is very strict with admissions documentation.) Mr. Lindsey is not an academically present father, does not attend school functions, and the schools do not contact him. Since 2018, both elementary and middle schools have communicated through Serina and I only. However, Mr. Law stopped communicating with me after I filed the complaint and initiated contact with Mr. Lindsey in March/April of 2023.

I filed the initial complaint with the Walnut Creek School District (WCSD) and Walnut Creek Intermediate (WCI) on March 13, 2023, without success. I have carefully reviewed the Walnut Creek School District's findings letter, dated October 6, 2023, as well as my initial response to the district, and I believe there are compelling reasons to reconsider the conclusions drawn in this matter. I disagree with ████████ feelings being minimized throughout the investigation i.e., page 3 paragraph 3 of the Investigative Report states, "felt uncomfortable" when in fact, he felt humiliated, harassed, and bullied almost daily. Also, any reference to comments not done publicly are false. The school, classrooms, and hallways are public and within earshot of any passing students, teachers, and school guests. Further, I disagree with all outcomes and believe federal, state, and local regulations and policies have been violated including but not limited to HIPAA, the California Education Codes sections 200-220, Section 200-220. The basis for the appeal includes but not limited to: UCP 5 CCR 4632, 5 CCR 4610, etc.

Since, ████████ continues to experience physical and mental safety concerns as recent as 10/23/23 when he was "jumped" at school. Further, ██████, Ms. Santoleri, and I have experienced retaliation i.e., Mr. Law refusing to communicate with me for IEP, behavior, and suspension information, denied ████████ IEP services and benefits, kicked ████████ out of WCI a week before school started, and transferred him to a new school across town to name a few.

Walnut Creek School District (WCSD) has not taken reasonable steps to prevent, address, and ensure the safety of ███████████████████████i. In addition to the egregious neglect of his wellbeing, WCSD has been and continues to fail to create and provide a least restrictive and optimal learning environment by not following the clear and specific plan to meet his educational needs as stated in his IEP (most recently dated 10/31/2023). Behaviors by district faculty, administration, and students have threatened ████████ safety, denied access to his FAPE (Free and Appropriate Public Education), as well as infringed on his civil rights.

2

Walnut Creek School District & ██████████████████

The policies and procedures the WCSD posts on their official website indicates offering an environment that prevents violence and provides adequate supervision of students in addition to prompt response regarding incidents of violence. Each of these points are discredited in the specific information shared below that describes each incident in which ████████ was violated physically, emotionally, mentally, socially, and academically. This ultimately supports WCSD's failure of compliance with their own policies as well as laws upheld by the ADA (Americans with Disabilities Act) and the State of California.

████████ was subjected to fear of harm to his person and property: hit, kicked, punched, pushed, strangled, laptop stolen, bike broken, hat stolen, etc. which caused ████████ to experience a substantially detrimental effect on his physical and mental health. As a result, this caused ████████ to experience substantial interference with his academic performance and ability to participate in or benefit from the services, activities, or privileges provided by a school.

**Appeal**
I am appealing based on one or more of the below A-E. I tried my best to bucket them how I saw fit. If I have bucketed them incorrectly, please make the appropriate corrections.
- A. District failed to follow its complaint procedures.
- B. Relative to the allegations of the compliant, the district's investigation report lacks material findings of fact necessary to reach a conclusion of the law.
- C. The material findings of fact in the district's investigation report are not supported by substantial evidence.
- D. The legal conclusion in the district's investigation report is inconsistent with the law.
- E. In a case in which the district found noncompliance, the corrective actions fail to provide proper remedy.

**A. District failed to follow its complaint procedures.**
1. **INVESTIGATION REPORT DELAYED:** The investigation and report took 7 months which is longer than 45 days allotted in the procedure to complete the report. Untimely and excessive.

2. **INTIMIDATION and FALSIFICATION:** From the district, Ms. Eagan initially set up a phone intake call. The day before the meeting, she said an in-person intake was required which is incorrect. Ms. Eagan falsified the requirements of the complaint procedure.

3. **INCOMPLETE INVESTIGATION:** The UCP complaint was biasedly scoped, analyzed, and omitted key complaints and information such as psychological safety, sexual assault by a student, physical assault by a student, denied IEP benefits and services, harassment, humiliation, civil rights violations, student testimony from Mr. Peterson's investigation, etc. Further, the investigation often boils down to he said, she said. From incidents happening one or twice to Braylon, Ms. Santoleri, and I providing evidence that incidents occurred across the year.

3

Walnut Creek School District &██████████████████

4. **INCOMPLETE INVESTIGATION:** The Law Firm was only scoped to investigate the five allegations they deemed important which omitted allegations from the original complaint. See Table VI. Further, allegations are confirmed throughout but not cited as findings.

5. **SCOPE #3 CORRECTION:** WCSD scoped allegation #3 should have been.. AND disciplined Braylon more harshly when he reacted to such behaviors.

6. **Failed to Provide Uniform Complaint Policies:** Ms. Kelly Eagan did not provide the UCP documents in a timely fashion. Filed 3/13/23. Policy provided on 4/10/23.

7. **Failed to Protect the Complainant from RETALIATION:** The WCSD, Ms. Eagan, bullied Ms. Santoleri and I after the complaint was filed, "requiring in person intake... accusers have the right to face you" (See Table III). We have and are currently experiencing retaliation amongst other violations of CU regulations and policies. <u>After</u> filing the district complaint on 3/13/23:

   a) **DISCRIMINATION/HARASSMENT/INTIMIDATION/BULLYING:** Mr. Law suspended Braylon 4-5 times for ADHD behaviors.

   b) **FAILED FAPE:** Failed to support ██████ learning and learning time as a 6th grade student. We repeatedly asked for help and IEP services but denied. ████████s IEP was delayed and quickly put together after filing the complaint. Even after filing the complaint ████████ did not receive the benefits outlined in the plan including but not limited to: headphones, on-campus psychologist and counseling services, backpack check, teacher-aid, etc.

   c) **FAILED FAPE:** WCI admins and teachers increasingly made it difficult for ██████ to be in a classroom to receive FAPE: removed from class, discredited for speaking up, etc.

   d) **AGE/MARITAL STATUS/GENDER DISCRIMINATION/INTIMIDATION/HARASSMENT:** WCSD and WCI overwhelmed us with emails and phone calls daily and often multiple times in a day.

   e) **AGE/MARITAL STATUS/GENDER DISCRIMINATION/BULLYING:** Disregarded a restraining order which was provided to Indian Valley (Ms. Banister 2018-2023), WCI (Mr. Law 2022-23), and plea not to contact██████ absent father Mr. Lindsey. Ms. Banister, former Indian Valley principal had experienced Mr. Lindsey in the past and understood the need to follow the order and our request not to contact him. Furthermore, in a face-to-face meeting, in Mr. Law's office, in September of 2022, Ms. Banister and I informed Mr. Law that he is not to contact Mr. Lindsey- that a restraining order is on file with the school. After filing the complaint in March 2022, Mr. Law taunted Ms. Santoleri and I about contacting Mr. Lindsey. Mr. Law contacted Mr. Lindsey, invited him to the school as "the favorite parent", and bad-mouthed Ms. Santoleri and I to Mr. Lindsey. As a result of Mr. Law and Mr. Lindsey's meeting, I understand Mr. Law had to call the police on Mr. Lindsey and that Mr. Lindsey is banned from WCI. Further as a result, it caused conflict

Walnut Creek School District & ██████████████████

between Ms. Santoleri and Mr. Lindsey. Why did Mr. Law feel the need to contact Mr. Lindsey for the first time in April of 2023 and not before?

f) **AGE/MARITAL STATUS/GENDER DISCRIMINATION/INTIMIDATION/BULLYING**: Mr. Law refused to talk to me directly- claiming that he newly didn't have guardianship papers on file. However, the WCSD **never** allows anyone in the school without proper documentation including guardianship papers. When my daughter, Serina Santoleri joined the military in 2018, I provided guardianship documents to WCSD, Indian Valley Elementary, and WCI annually 8/2018-8/2023. Further, Ms. Santoleri gave permission and instructed WCSD/WCI repeatedly to include me in communications. I was in constant communication with Indian Valley principal Ms. Banister 2018-2023 and Mr. Law across 2022-2023. I had a need to talk to him because he and Ms. Banister were managing Braylon's IEP.

g) **DISCRIMINATION/HARASSMENT**: WCSD/WCI failed to inform me to register ██████ for the 2023-24 school year. Ms. Santoleri was deployed overseas during registration. On August 8, 2023, a week before school started, WCSD forwarded an email sent to Ms. Santoleri about transferring ██████ out of the school district. WCSD/WCI had us jump through hoops to complete registration only to be transferred to another school in the district which created a hardship for our family to transport ██████ across town to Tice Creek Middle School. FYI- ██████ has lived with me since my daughter joined the military. WCI is two blocks from our home. Tice Creek is approximately 2 miles.

h) **Fraudulent IEP Meeting** – During an IEP meeting on 9/11/23 at Tice Creek Middle School, the District psychologist asked me to backdate and sign documentation to an IEP meeting in March or April 2023 that didn't exist. When I brought it up to the IEP panel, they all realized it was a meeting that didn't occur. I didn't sign the document and the psychologist; Lynn Childers took it back.

i) **INTIMIDATION**: The WCSD, Ms. Eagan, bullying Ms. Santoleri and I after the complaint was filed, "requiring in person intake... accusers have the right to face you."

j) **BULLYING** 10/23/23: Two Tice Creek 7th grade students, ██and ██have been taunting and applying direct physical aggression towards ██████ at his new school. Recently, rumors were spread that██ and██ were going to "jump" ██████ on Monday, 10/23/23. ██████was terrified and didn't want to go to school. ██████ went anyways. Ms. Santoleri sent the principal, Mr. Dylan Scott an email to inform him the two boys planned on jumping██████ and to please watch out for ██████. Around 11am at school, the two boys walked up to ██████ in the hallway. ██ tried to get ██to punch ██████. ██ declined, "I don't want to get suspended or expelled."██ made threatening comments and gestured to hit ██████. With a crowd of students around, ██ aggressively pushed ██████4-5 times while continuing to tease, make threatening comments of violence. ██████ was scared, asked ██ to stop, felt he couldn't move, and warned██ if he pushed him again that he'd do something about it. ██ aggressively pushed ██████ back again, and██ ██████ reacted by punching██. ██ lunged forward at

5

Walnut Creek School District & █████████████████████

███████ as if to hit him. ████████ hit ██ before he could hit ████████. Mr. Scott arrived to break up the fight. ████████ was suspended and ██ was not. ██ happens to be African American and wonder if ██'s race played a factor in the disciplinary actions. Further, it was explained that ████████ would have needed to be on the ground and being beaten for it to be "ok" to defend himself. ████████ physical and psychological well-being is not protected under the district's policies.

k) **Lack of WC School Board Support**: On August 14, 2023, I sent an urgent email request to meet with Walnut Creek School Board President, Heidi Hernandez Gatty. Ms. Hernandez Gatty deflected the issue back to the WCSD individuals whom I was complaining about. I replied asking her to reconsider meeting with me and she didn't bother to respond.

B. **Relative to the allegations of the compliant, the district's investigation report lacks material findings of fact necessary to reach a conclusion of the law.**

1. **Investigation Evidence**:

The investigation failed to take the student's articulated experiences as evidence. Other than articulating and the videotape, what evidence would the district like a 11-year-old boy with ADHD to provide? When there is said to be "insufficient evidence", the investigator discounts and discredits ████████s experiences as if his courageous voice is insignificant. This behavior and treatment of ████████ is consistent with WCSD/WCI and our complaint. ████████ tried often to speak up but, matters just got worse when he tried to self-advocate.

2. **Mr. Peterson Investigation Evidence**:

In the classroom filled with disabled peers, the resource teacher, Mr. Peterson grabbed ████████ arm in anger. Mr. Peterson's assault on ████████ left a mark on ████████s wrist. Mr. Peterson's actions frightened ████████ and other students in the classroom. ████████ ran out of the classroom and hid in the bathroom for 15 minutes until administration could find him. ████████ explained what happened to Mr. Law and other teachers. No report home or investigation occurred until I brought it back to their attention. An investigation occurred two weeks after the incident and ████████ account and his disabled peers accounts were discredited because, "they were friends." However, ████████ and his disabled peers were the only people in the room at the time of the incident. Why else would ████████ run out of the room. He had never done that before. In fact, Mr. Peterson physically assaulted ████████ A police report was filed. I believe the investigation lacked a nonbiased analysis and request the investigation be reopened and managed properly.

C. **The material findings of fact in the district's investigation report are not supported by substantial evidence.**

**From the Investigative Report** – so many false, inaccurate, misleading statements by WCSD/WCI. Choosing a few to highlight.

_**Section A**_
**IEP Team**: What IEP team? I only worked with Mr. Law and Ms. Banister.

Walnut Creek School District & ███████████████

**IEP Requests:** Ms. Santoleri and I worked with Mr. Law, Mrs. Banister, and Mr. Miller almost daily from August 2022 – March 2023. We requested headphones, hard-copy homework, one-on-one time with an aide, counseling, etc. The requests were repeated within and outside of IEP meetings. I don't understand why they didn't end up in the IEP. If the "requests could have been "easily granted" why weren't they?

**Supporting Braylon:** How did WCI support ███████? Removing him from class, suspending him, denying him IEP services, sending him home for counseling sessions. Ms. Santoleri requested a schedule change on 9/7/22 because of shared classes and bullying by ██████. It took Mr. Law two months to agree to the change. By then, physical, and psychological damage was experienced and traumatic.

**Resource Specialist**██████ started off with a new, younger teacher who I believe was overwhelmed by the class size and responsibilities███████ was transferred into Mr. Peterson's resource class. Mr. Peterson dealt with ████████s ADHD negatively. Mr. Peterson raised his voice often which triggered ███████s ADHD symptoms and aggressively grabbed ███████s wrist-leaving a mark and humiliating and frightening ██████ to the extent ███████ ran out of the room to hide in the bathroom██████ was assigned a new Resource Specialist after Mr. Peterson.

**Instructional Aide:** "Provided ██████ with an Instructional Aide" is false and one of our biggest complaints throughout the year. ████████had an Instructional Aide once – one day, for a one-hour class out of the entire year.

**Absent Late January:** Concerns about his absence and behavior? Why wasn't this reported to Ms. Santoleri and me?

**Reach the Ultimate Answers:** Educational goals needed to be met. Not answers and solutions. Who suggested "anyone gave up"? WCI failed to provide ███████ FAPE and continuously made his educational experience unsafe.

**Felt Uncomfortable:** Braylon's feelings being minimized throughout the investigation i.e., page 3 paragraph 3 of the Investigative Report states, "felt uncomfortable" when in fact, he felt humiliated, harassed, and bullied almost daily.


### _Section B_
#2 **allegation** details changed from page 1's allegation details.

**Dismissive Acknowledgement of Abuse:** Punching and humping ███████ is ok? Typical middle school boy? Is hitting, punching, and humping allowed? Abuse and bullying do not indicate mutually agreed consent. This perpetude is outdated and a dismissive acknowledgement of the unwanted and unconsented abuse ██████ experienced.

Walnut Creek School District & ██████████████

**Intent to Harm**: Behaviors by others resulted in harm to ██████ regardless of intent. It is still problematic. If ██████s experiences don't constitute bullying, what do they define?

**Progressive Discipline**: I believe this to be noncompliant with ADA standards. Discipline is clear to differentiate. ██████ have never been a treat, presented a dangerous to himself or others, yet suspended and made to write letters unlike anyone else. On page 14, the district confirms that ██████ "discipline was NOT uniform or equal." And if not uniform and equal, why wasn't Braylon's disability factored into his discipline?

**Supervision**: "██████ stacked chairs up high in the classroom, climb on desks or fences, yell into classrooms, hide in the bathrooms…" Where's the appropriate supervision for safety? How did it get this far without being noticed or stopped?

**Defiance or Disrespect**: Often when children are bullied, humiliated, physically/psychologically abused, disrespected, not believed, harassed, and/or educationally neglected they act out. Though I don't condone disrespect, I do understand how a child could act this way. However, the behavior can be easily changed in a positive, trusting, safe environment.

**Ms. Montgomery likely Grew Frustrated**: How do you think ██████ feels? This is neglect. These WCI employees are adults that should be role modeling. Instead, they were negligent and overlooked abuse and withheld ADA benefits and services across the year- going as far as to patch things up with an emergency IEP meeting at the end of the year.

**Unjustly Deprive Braylon of learning time**: So, Mr. Law deprived him justly? Was he able to focus in the hallway? Bathroom? Office? How is he gaining FAPE and appropriate learning time in the hallway? How is the missed learning time made up? WCSD is collecting state funds for ██████ to be in a seat in a classroom. This is discrimination.

### *Section C*
**Did not treat you differently**: "Mr. Law was not willing to provide you or ██████ the same level of support…" An administrator not willing to provide the same level of support? Why not? Which support requests were extraordinary that support couldn't be provided? Mr. Law is a bully and sexist. He has a "straightforward communication style…" which the district, his subordinates, parents, and students "perceive as too direct and harsh." The district recognizes Mr. Law's ineffective communication style which doesn't make how he treats me and others ok. Mr. Law is narcissistic and sexist. He gaslit Ms. Santoleri and me. He tried to intimidate me, intentionally caused turmoil and disruption in my family by contacting Mr. Lindsey against court orders, deflected my compliments and efforts. I asked him to help me keep peace in my home and not contact Mr. Lindsey. Does he treat everyone this way? Is so, how does he have a job? A job that entrusts him with 1200 impressionable students and 50+ teachers whom we depend on to shape our future leaders. As females and single moms, Mr. Law treated Serina and I differently: unprofessional and discriminatory and therefore, Mr. Law violated BP 4..9.21/ 4219.21 / 4319.21 – Professional Standards policy. See Table V.

8

Walnut Creek School District & ▊▊▊▊▊▊▊▊▊▊▊

**D. The legal conclusion in the district's investigation report is inconsistent with the law.**
**1. ADA violations**
Listed within.

**2. Privacy, HIPAA, and FERPA Violations**
Privacy, HIPAA, and FERPA Violations finding should be a full, not partial. The conclusion was based on WCSD opinion not based privacy, HIPAA, and FERPA laws in California. See section C1 and https://www.courts.ca.gov/documents/BTB25-2O-01.pdf. Across 2022 and 2023, the principal, Mr. Law, office admins, and teachers often discussed ▊▊▊▊s medication to ▊▊▊▊ in a group setting with his peers: classroom, hallway, office. Even after repeated requests and an email from Mr. Law, WCSD employees still discussed ▊▊▊▊▊ medication. This made▊▊▊▊ feel dumb and humiliated and felt like harassment. Also, the Investigative Report combines privacy with harassment- addressing privacy to an extent without addressing harassment. Further, the repetitious nature across the year in which WCSD employees brought medicating ▊▊▊▊ up to Ms. Santoleri and I also felt bad. It also felt like harassment. Regardless of intent, federal, state, and school HIPAA laws and privacy policies were repeatedly violated. This finding should be- Full At Fault, not partial.

**3. Violated Cal. Ed. Code § 51512**
Cal. Ed. Code § 51512 - Use of electronic listening or recording device in classroom. When Ms. Montgomery used a cell phone (electronic listening or recording device) to videotape▊▊▊▊▊ in the classroom in a group setting with his peers without ▊▊▊▊'s, Ms. Santoleri, or my consent. Further, her cell phone is not HIPAA compliant, isn't encrypted, and doesn't guarantee privacy or confidentiality▊▊▊▊ was sitting in his seat with no indication of him being a threat. If he was being inappropriate, she could've done something different. Instead, Ms. Montgomery chose to single ▊▊▊▊ out, humiliate and harass him. These types of WCI employee behaviors don't create a trusting relationship in which they should be building with their students. The act was intentional. Ms. Montgomery violated the federal, state code Section 51512 of the Education Code, and school policies and her license to ensure ethical responsibility and moral duty to protecting children. The video was shown to the school district's attorney, Ms. Nepacena. State and federal law prohibits this. No findings were mentioned. The video can be seen by going to this URL: https://youtube.be/stz3w2GYBPQ?si=nthdxUbUjjrf5n_b

**4. The California Student Safety and Violence Prevention Act of 2000**
"One of our schools' most important jobs is to ensure that all students are offered equal protection from potentially violent discrimination and harassment, which not only disrupt learning but also can leave lifetime scars. We feel the WCSD/WCI did not protect Braylon, violating this law.

**5. Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act**
These acts prohibit public schools from discriminating against students because of their disabilities. WCSD and WCI discriminated against ▊▊▊▊ because of his ADHD. ▊▊▊▊ was

9

Walnut Creek School District & ███████████████████

denied IEP benefits and accommodations such as classroom aides, speech therapy, individual mental health counseling, noise-canceling headphones, etc.

**6. AB 2178 Violation**

Mr. Law, Mrs. Banister, Ms. Montgomery, and Ginnie Ferranti (WCI) violated AB 2178 when they pushed ADHD medication recommendations on ██████ and then, shamed, and harassed ██████h, Ms. Santoleri and I when he didn't take them. WCI sent Ms. Santoleri and I voice mail messages, phone calls, and face-to-face conversations about ██████ taking medication. Further, it is not the responsibility of the WCSD or WCI to monitor██████ medication. Ms. Santoleri and I felt pressured by WCI to make ██████ take medication. WCI recommended the "need", "he really needs to be on medication", "why isn't he on medication" for ██████ to be on ADHD medication and what felt like shame for ██████ not taking medication. Referring to ██████ "need" for medication and when on the phone or in Mr. Law's presence, he would be sure to repeat to us, "you know, we spend more time with ██████ than any other student." Ms. Santoleri and I heard this statement from Mr. Law at least once a week across the entire school year. Ms. Banister and Mr. Miller are witnesses. According to AB 2178, the Medical Practice Act prohibits physicians and surgeons from practicing medicine unless the physician/surgeon has a certificate issued by the Medical Board of California.

**E. In a case in which the district found noncompliance, the corrective actions fail to provide proper remedy.**

**1. Finding failed to provide proper remedy**

No reasonable remedies were suggested to the HIPAA finding.

**2. Failed FAPE remedies**

Failed to Implement ██████'s IEP. On October 11, 2023, ██████ was tested by Sylvan Learning Center. ██████ is in 7th grade reading at a 3rd grade level and writing at a 2nd grade level. Sylvan Learning Center advised that they could help ██████ catch up but, they didn't have a program that met the significant number of hours he actually needs- see attached.

**3. De-scoped Allegations**

WCSD failed to address the complaints and allegations as they were provided. Further, WCSD's regulations and policies outline bullying with examples but failed to recognize it in practice. Therefore, no remedies were suggested.

4. There are so many "hidden" violations that should have been findings and assigned corrective actions such as: (short list)
    a. Page 6 – "Justly deprived of learning time…"
    b. Page 7- "██████ had a right to FAPE but so did other students… It was not unreasonable to have ██████ escorted out of the classroom at time… Most witnesses recalled that ██████ left class almost daily…" In short, ██████ did not consistently receive FAPE, was deprived of safety from the lack of supervision,

Walnut Creek School District & ███████████████

c. Page 7- "Mr. Law was not as willing to provide you and ██████ with the same level of support…" Discrimination and unprofessionalism. Not providing an appropriate level of support is unacceptable and clearly violates the law.

d. Page 14- ██████████ father expressed interest." Regardless, WCSD/WCI had the restraining order, court order, and my plea not to contact Mr. Lindsey. Mr. Lindsey only has visitation rights. Serina has legal and sole custody with sole decision-making rights. When she is away on military duty, I am ██████ guardian and assume her role. Mr. Law initiated contact with Mr. Lindsey anyways.

e. Page 14 – "Discipline was not uniform or equal amongst all students…" Discrimination, FAPE, ADA, civil rights violations, etc..

f. Page 15- "Ms. Montgomery may not have always implemented best practices.." Aren't best practices reasonable and appropriate? Is there another policy that describes when a professional does not implement best practices how supervision, student goals, FAPE, and safety are ensured? This is unethical. It's either a violation or it's not.

## CORRECTIVE ACTIONS

School is supposed to be a safe place where students can learn, grow, and thrive. Unfortunately for ██████, it doesn't feel safe. The principal and teachers haven't created a positive, trusting nor safe environment conducive of learning with a disability. WCI behaviors have threatened ██████'s safety, access to FAPE, and civil rights have been traumatic for ██████. ██████ has experienced physical violence repetitiously from August 2022 – October 23, 2023:

1. Punched by ██████ student on 10/7/22, 11/4/22, and other students on various dates.
2. Kneed in the groin on 2/23/23 by ██████ student.
3. Aggressively grabbed leaving a mark by Mr. Peterson, resource teacher on 4/26/23
4. Pushed, punches, and kicked on the ground by ██████ and a girl on 10/3/22
5. Strangled with hoodie strings leaving ligature marks by ██████ on 12/2/22- see picture attached.
6. Hit and more.

## SUMMARY

I've had three generations of family members go through the Walnut Creek School District (WCSD) over the past 20 years, without incident: my sisters, my three children, and now my grandson. My sisters and children did not need disability services whereas my grandson does. Walnut Creek is known for driving higher test scores, maintaining high property values, and homeowner's self-funding the Walnut Creek Education Fund which pays for art, music PE, teachers, counselors, and other school programs not funded by the state. I am concerned and feel there is a valid correlation between higher WCSD test scores and getting rid of lower performing "needy" students to drive WCEF contributions.

██████ experienced bullying as listed above and understand that bullying is a form of psychological violence that involves repeated, intentional aggression towards another person. Bullying towards ██████ has been in the form of verbal abuse (i.e., discussing medication, negative comments by the principal "what are you a baby"), social exclusion (i.e., 10/2022-

Walnut Creek School District &▓▓▓▓▓▓▓▓▓▓▓▓▓▓

denied access to 6th grade skate night, 9/15/22 suspended, removed from class 2-3+ days a week), or even physical violence (i.e., listed above).

Ms. Santoleri and I only want the best education for▓▓▓▓ We do not feel that ▓▓▓▓ has received FAPE while in the WCSD as his learning assessments indicate significantly below grade level results. I do not feel WCSD/WCI had or has the appropriate training, resources, or tools to comply with disability students or FAPE regulations and policies▓▓▓▓ physical and psychological well-being is not protected under the district's policies. We ask that you provide an assessment based on appropriate governances of the WCSD and WCI (WCSD/WCI) employees behaviors towards ▓▓▓▓FAPE and person and Ms. Santoleri and me. We ask that appropriate corrective actions are implemented such as but not limited to:

1. District and school updates to the Bullying policies to include specific types of conduct that may constitute bullying and prohibited by the district, measures to prevent bullying, staff development, and student instruction.
2. District and school to provide written examples of bullying, plan and implement programs to create awareness including how students can best defend/protect themselves both proactively and reactively, accountability and consequences, corrective actions.
3. District and school employees receive adequate training to bullying, discrimination, harassment, intimidation to include role play.
4. District and schools to implement and conduct regular safety drills, anti-bullying campaigns and programs, and mental health counseling services with students which is intended to identify, address, and prevent potential sources of violence.
5. District to implement a public database of complaints against the district and/or schools in the district.
6. District and school employees receive adequate training on how to recognize and respond to potential threats of violence, symptoms of disabilities such as ADHD, autism, manage learning, learning styles, and learning time to maximize disabled students FAPE.
7. Replace the principal with a more professional, diverse, principal who has integrity and excels in communicating with his customers: parents, students, teachers.
8. Notify parents/guardians of such programs, drills, anti-bullying campaigns regularly.
9. Apply appropriate disciplinary actions towards those WCSD and WCI employees who have violated regulations and policies.
10. Provide ▓▓▓ with FAPE.
11. Provide ▓▓▓ with an informed and actionable IEP.
12. Provide▓▓▓ with transportation services to and from school at the districts expense.
13. Provide▓▓▓ with external resources to catch him up to grade level at the districts expense.
14. Provide Ms. Santoleri the option to place▓▓▓ in a school that may better suit his FAPE and educational needs at the districts expense.
15. Provide▓▓▓ with social activities such as art, dance, football, etc. at the districts expense.

12

Walnut Creek School District & ▓▓▓▓▓▓▓▓▓▓▓

**Request the OCR review the following evidence but not limited to:**
Initial Complaint
WCSD Investigation Report
Emails provided by me
Videotape – created a YouTube link to view Ms. Montgomery videotaping ▓▓▓▓
WCSD's hired attorney, Ms. Nepacena's documents to include but not limited to interviews, notes, reports, emails, recommendations, etc.
Police reports
Guardianship papers
Military papers
WCI Medication Authorization Forms for ▓▓▓▓
WCI discipline records for all students 2020-current

I appreciate your attention to this matter and thank you for your commitment to the physical, emotional, mental, social, and academic welfare of our students, namely my grandson.

Reference tables are listed below.

Respectfully,

Monique Lazzarini

Walnut Creek School District & ███████████████

**REFERENCE TABLES**

*TABLE I: From the WCSD Board Policy Manual: Policy 1312.3 Uniform Complaint Policy*

> 10. Discrimination, harassment, intimidation, or bullying in district programs and activities, including in those programs or activities funded directly by or that receive or benefit from any state financial assistance, based on a person's actual or perceived characteristics of race or ethnicity, color, ancestry, nationality, national origin, immigration status, ethnic group identification, age, religion, marital status, pregnancy, parental status, physical or mental disability, medical condition, sex, sexual orientation, gender, gender identity, gender expression, or genetic information, or any other characteristic identified in Education Code 200 or 220, Government Code 11135, or Penal Code 422.55, or based on the person's association with a person or group with one or more of these actual or perceived characteristics  (5 CCR 4610)

> 20. School safety plans  (Education Code 32280-32289)

> 24. Any complaint alleging retaliation against a complainant or other participant in the complaint process or anyone who has acted to uncover or report a violation subject to this policy

*TABLE II: From the WCSD: Report of Suspected Bullying/Harassment/Discrimination*

> **Bullying/Harassment/Discrimination** are defined as: physical, verbal, nonverbal or written conduct that is so severe and pervasive that it affects a student's ability to participate in or benefit from an educational program or activity; creates an intimidating, threatening, hostile, or offensive educational environment, has the effect of substantially or unreasonably interfering with a student's academic performance; or otherwise adversely affects a student's educational opportunities.

*TABLE III: From the WCSD: Report of Suspected Bullying/Harassment/Discrimination*

> What happened: (Select all that apply)
>
> | | |
> |---|---|
> | *Direct physical aggression/fighting | *Excluding or rejecting the student |
> | *Getting another person to hit or harm student | *Sexual name calling |
> | *Teasing, name-calling, threatening | *Intimidating, exploiting or extorting |
> | *Making rude or threatening gestures | *Spreading hurtful rumors or gossip |
> | *Using racial or religious slurs | *Other_____ |

14

Walnut Creek School District & ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*TABLE IV: From the WCSD Bullying Regulations and Policies*

**Board Policy Manual**
**Walnut Creek School District**

**Regulation 5131.2: Bullying**                                    **Status:** ADOPTED

**Original Adopted Date:** 09/23/2019

**Definitions**

Bullying is an unwanted, aggressive behavior that involves a real or perceived imbalance of power between individuals with the intent to cause emotional or physical harm. Bullying can be physical, verbal, or social/relational and involves repetition or potential repetition of a deliberate act.

Cyberbullying includes the electronic creation or transmission of harassing communications, direct threats, or other harmful texts, sounds, or images. Cyberbullying also includes breaking into another person's electronic account or assuming that person's online identity in order to damage that person's reputation.

Examples of the types of conduct that may constitute bullying and are prohibited by the district include, but are not limited to:

1. Physical bullying that inflicts harm upon a person's body or possessions, such as hitting, kicking, pinching, spitting, tripping, pushing, taking or breaking someone's possessions, or making cruel or rude hand gestures

2. Verbal bullying that includes saying or writing hurtful things, such as teasing, name-calling, inappropriate sexual comments, taunting, or threats to cause harm

3. Social/relational bullying that harms a person's reputation or relationships, such as leaving a person out of an activity on purpose, influencing others not to be friends with someone, spreading rumors, or embarrassing someone in public

4. Cyberbullying, such as sending demeaning or hateful text messages or emails, sending rumors by email or by posting on social networking sites, or posting embarrassing photos, videos, web site, or fake profiles

15

Walnut Creek School District & ████████████████

---

**Board Policy Manual**
**Walnut Creek School District**

**Policy 5131.2: Bullying**                                    **Status:** ADOPTED

Original Adopted Date: 06/18/2018 | Last Revised Date: 09/23/2019

The Governing Board recognizes the harmful effects of bullying on student well-being, student learning, and school attendance and desires to provide a safe school environment that protects students from physical and emotional harm. No individual or group shall, through physical, written, verbal, visual, or other means, harass, sexually harass, threaten, intimidate, cyberbully, cause bodily injury to, or commit hate violence against any student or school personnel, or retaliate against them for filing a complaint or participating in the complaint resolution process.

The Superintendent or designee shall develop strategies for addressing bullying in district schools with the involvement of students, parents/guardians, and staff. As appropriate, the Superintendent or designee may also collaborate with social services, mental health services, law enforcement, courts, and other agencies and community organizations in the development and implementation of effective strategies to promote safety in schools and the community.

Such strategies shall be incorporated into the comprehensive safety plan and, to the extent possible, into the local control and accountability plan and other applicable district and school plans.

Any complaint of bullying shall be investigated and, if determined to be discriminatory, resolved in accordance with law and the district's uniform complaint procedures specified in AR 1312.3. If, during the investigation, it is determined that a complaint is about nondiscriminatory bullying, the principal or designee shall inform the complainant and shall take all necessary actions to resolve the complaint.

Any employee who permits or engages in bullying or retaliation related to bullying shall be subject to disciplinary action, up to and including dismissal.

---

*TABLE V: From WCSD Investigative Report Page 14*

BP 4119.21/ 4219.21/ 4319.21 – Professional Standards

> The Governing Board expects district employees to maintain the highest ethical standards, behave professionally, follow district policies and regulations, abide by state and federal laws, and exercise good judgment when interacting with students and other members of the school community. Employees shall engage in conduct that enhances the integrity of the district, advances the goals of the district's educational programs, and contributes to a positive school climate.

---

*TABLE VI: From WCSD Investigative Report page 1*

The investigation was processed pursuant to Administrative Regulation ("AR") 1312.3 (Uniform Complaint Procedures). The District retained the services of Katrina J. Nepacena, an attorney investigator with the law firm Atkinson, Andelson, Loya, Ruud & Romo, to investigate and render findings in regard to the above-described allegations. Ms. Nepacena interviewed a number of pertinent witnesses, including Braylon and the both of you, and reviewed documentary evidence related to the allegations. Thank you for your patience during this process.

16

**EXHIBIT C3**

CIV-010/FL-935

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|
| NAME: Steven H. Cross | | |
| FIRM NAME: Law Office of Steven H. Cross | | |
| STREET ADDRESS: 1555 Botelho Dr., #149, | | |
| CITY: Walnut Creek   STATE: CA   ZIP CODE: 94596 | | |
| TELEPHONE NO.: (925) 263-6687   FAX NO.: | | |
| EMAIL ADDRESS: steven@scrosslaw.com | | |
| ATTORNEY FOR (name): Plaintiff | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA**
STREET ADDRESS: 725 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME:

PLAINTIFF/PETITIONER: ███████████████
DEFENDANT/RESPONDENT: Walnut Creek School District
OTHER PARENT/PARTY:

| APPLICATION FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL AND FAMILY LAW [x] EX PARTE | CASE NUMBER: C24-02211 |
|---|---|

*This form is for use in a civil or family law proceeding in which a party is a minor, a person who lacks legal capacity to make decisions, or a person for whom a conservator has been appointed. A person who seeks the appointment of a guardian ad litem in a proceeding under the Probate Code—other than a proceeding under Probate Code sections 3500–3613 for approval of a compromise, settlement, or disposition of judgment proceeds—should use form DE-350/GC-100. NOTE: A person may not act as a guardian ad litem unless the person is represented by an attorney, is an attorney, or, in an action under the Uniform Parentage Act (Family Code, §§ 7600–7730), is an adult relative of a minor party.*

1. I (applicant's name): Serina Santoleri
   am (check all that apply):
   a. [x] the parent of (name): ████████████████
   b. [ ] the guardian of (name):
   c. [ ] the conservator of (name):
   d. [ ] a party to the suit.
   e. [ ] the minor to be represented (if the minor is 14 years of age or older).
   f. [ ] another interested person (specify capacity):

2. I am asking the court to appoint the following person as guardian ad litem (name, address, phone number, and email address):
   SERINA SANTOLERI,

   , (707) 567-5474, 1595 Sunnyvale Avenue, #32, Walnut Creek, CA 94595

3. The guardian ad litem will represent the interest of (name, address, and, if applicable, phone number and email address):
   BRAYLON LINDSEY-SANTOLERI , same as above.

4. The person named in item 3 is a party and is (check all that apply):
   a. [x] a minor (date of birth): 8/29/11
   b. [ ] a person who lacks legal capacity to make decisions (explain the basis for claiming lack of capacity):

   [ ] Continued on Attachment 4b.
   c. [ ] a person for whom a conservator has been appointed (provide the details of the appointment):

   [ ] Continued on Attachment 4c.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CIV-010/FL-935 [Rev. January 1, 2024] | APPLICATION FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL AND FAMILY LAW | Code of Civil Procedure, § 372 et seq.; Family Code, §§ 6229, 7635 www.courts.ca.gov |
|---|---|---|

**CIV-010/FL-935**

| PLAINTIFF/PETITIONER:<br>DEFENDANT/RESPONDENT:<br>OTHER PARENT/PARTY: | CASE NUMBER: |
|---|---|

5. ☒ The person named in item 3 is a minor and is *(check one)*:
    a. ☒ a plaintiff or petitioner in this action and the summons has not been issued.
    b. ☐ a defendant or respondent in this action. More than 10 days have passed since service of the summons, and no one has
        applied for the appointment of a guardian ad litem.

6. I am asking the court to appoint a guardian ad litem because the person named in item 3 *(check all that apply)*:
    a. ☐ is a minor who is a party to an action under the Uniform Parentage Act (Family Code, §§ 7600–7730).
    b. ☐ is a minor who is requesting or opposing a request for an injunction or restraining order described in Code of Civil
        Procedure sections 372(b)(1) and 374(a). *(If the minor is 12 years of age or older, check one of the following):*
        The minor ☐ does ☐ does not object to the appointment of the person named in item 2.
        ☐ I don't know whether the minor objects to the appointment of the person named in item 2.
    c. ☐ has no guardian or conservator of the estate.
    d. ☐ has a guardian or conservator of the estate, but the guardian or conservator is inadequate to represent the person's
        interest in this action or proceeding because *(explain)*:

    ☐ Continued on Attachment 6d.
    The guardian or conservator of the estate is *(name, address, telephone number, and email address):*

    *(After filing this application, you must give notice and a copy of the application to the guardian or conservator above.)*

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person named in item 3.

Steven Cross
    (TYPE OR PRINT NAME)                    ▶          (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 8/15/24

Serina Santoleri
    (TYPE OR PRINT NAME)

**DISCLOSURES AND CONSENT TO ACT AS GUARDIAN AD LITEM**

8. I have the following relationship with the person named in item 3 *(check one)*:
    a. ☐ No relationship
    b. ☒ A familial relationship *(specify):* Mother
    c. ☐ An affiliate (nonfamilial) relationship *(specify):*

9. I am *(check one)*:
    a. ☒ not aware of any actual or potential conflicts of interest that would or might arise from the appointment.
    b. ☐ aware of the following actual or potential conflicts that would or might arise from the appointment *(describe the actual or*
        *potential conflicts of interest and explain why the proposed guardian should still be appointed):*

    ☐ Continued on Attachment 9b.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. I consent to act as
guardian ad litem in this action or proceeding. If I become aware that a potential conflict of interest has become an actual conflict, or
that a new potential or actual conflict exists, I will promptly disclose the conflict of interest to the court.

Date: 8/15/24

Serina Santoleri
    (TYPE OR PRINT NAME)                   ▶       (SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

[ Print this form ]    [ Save this form ]    [ Clear this form ]

**EXHIBIT C4**

DE-351/GC-101

| ATTORNEY OR PARTY WITHOUT ATTORNEY | | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY          STATE BAR NUMBER: 316147

NAME: Steven H. Cross

FIRM NAME: Law Office of Steven H. Cross

STREET ADDRESS: 1555 Botelho Dr., Ste. 149,

CITY: Walnut Creek          STATE: CA          ZIP CODE: 94596

TELEPHONE NO.: (925) 263-6687          FAX NO.:

EMAIL ADDRESS: steven@scrosslaw.com

ATTORNEY FOR (name): Plaintiff

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA**

STREET ADDRESS: 725 Court Street,

MAILING ADDRESS:

CITY AND ZIP CODE: Martinez, CA 94553

BRANCH NAME:

MATTER OF (name):

_____ v. Walnut Creek School District

[ ] DECEDENT  [ ] CONSERVATEE  [x] MINOR

**ORDER APPOINTING GUARDIAN AD LITEM—PROBATE**

[x] **EX PARTE**

CASE NUMBER: C24-02211

1. The court has considered the petition for appointment of a guardian ad litem for *(name of person to be represented):*

   filed by *(name of petitioner):* Serina Santoleri
   on *(date):* August 15, 2024          .

2. The person for whom appointment of a guardian ad litem is requested is *(check one):*

   a. [x] A minor *(date of birth):* August 29, 2011
   b. [ ] A person who lacks legal capacity to make decisions.
   c. [ ] An unborn person.
   d. [ ] An unascertained person or a designated class of unascertained persons or persons who are not in being.
   e. [ ] A person whose identity or address is unknown.

**THE COURT FINDS**

3. a. [x] Notice has been given as required by law.
   b. [ ] For good cause, notice does not need to be given to the following persons *(name all):*

4. Representation of the interest of the person to be represented would be inadequate without appointment of a guardian ad litem.

**THE COURT ORDERS**

5. *(Name):* Serina Santoleri
   is hereby appointed guardian ad litem for *(name):* Braylon Lindsey-Santoleri

6. The guardian ad litem [ ] is  [x] is *not*  authorized to waive or disclaim any substantive rights of the represented person without further order of this court.

7. The guardian ad litem must promptly report to the court any potential conflict of interest with the represented person that ripens into an actual conflict as well as any new potential or actual conflict of interest that arises during the course of the representation.

8. [ ] Other orders *(specify):*

   [ ] Continued on Attachment 8.

9. Number of pages attached: _____

Date:

_____
(SIGNATURE OF JUDICIAL OFFICER)
[ ] SIGNATURE FOLLOWS LAST ATTACHMENT

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
DE-351/GC-101 [Rev. January 1, 2024]

**ORDER APPOINTING GUARDIAN AD LITEM—PROBATE**

Probate Code, § 1003
www.courts.ca.gov

**EXHIBIT C5**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Steven H. Cross, 1555 Botelho Dr., Ste. 149,  SBN 316147  Walnut Creek, CA 94596 | |

TELEPHONE NO.: (925) 263-6687      FAX NO. *(Optional):*
E-MAIL ADDRESS: steven@scrosslaw.com
ATTORNEY FOR *(Name):* Plaintiff

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA**
STREET ADDRESS: 725 Court Street,
MAILING ADDRESS:
CITY AND ZIP CODE: Martinez, CA
BRANCH NAME:

PLAINTIFF/PETITIONER: [　　　　　　　] v.
DEFENDANT/RESPONDENT: Walnut Creek School District

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):* [x] **UNLIMITED CASE**     [ ] **LIMITED CASE** | C24-02211 |

*(Check one):* [x] **UNLIMITED CASE**  (Amount demanded exceeds $25,000)  [ ] **LIMITED CASE**  (Amount demanded is $25,000 or less)

---

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: 2/14/25     Time: 8:30 a.m.     Dept.: 12     Div.:     Room:

Address of court *(if different from the address above):*

[x] Notice of Intent to Appear by Telephone, by *(name):* Steven H. Cross

---

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. [x] This statement is submitted by party *(name):* Plaintiff
   b. [ ] This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):* October 16, 2023
   b. [ ] The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [ ] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed
   b. [x] The following parties named in the complaint or cross-complaint
      (1) [x] have not been served *(specify names and explain why not):*
         The Court hasn't signed the GAL Order
      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names):*
      (3) [ ] have had a default entered against them *(specify names):*
   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in [x] complaint    [ ] cross-complaint    *(Describe, including causes of action):*
      Violations of ED Code.

Page 1 of 5

**CM-110**

| PLAINTIFF/PETITIONER:  September Rose | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Bishal Ghimire, Babita Sitaula, RIDS Brother Company, Inc. | C23-02613 |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*
Student has been bullied and his rights violated based upon disability.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☒ a jury trial    ☐ a nonjury trial.    *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐ The trial has been set for *(date):*
   b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
   a. ☒ days *(specify number):* 5
   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial    ☒ by the attorney or party listed in the caption    ☐ by the following:
   a. Attorney:
   b. Firm:
   c. Address:
   d. Telephone number:    f. Fax number:
   e. E-mail address:    g. Party represented:
   ☐ Additional representation is described in Attachment 8.

9. **Preference**
   ☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
   a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

   (1) For parties represented by counsel: Counsel ☐ has    ☐ has not    provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
   (2) For self-represented parties: Party ☐ has    ☐ has not    reviewed the ADR information package identified in rule 3.221.
   b. **Referral to judicial arbitration or civil action mediation** (if available).
   (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
   (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
   (3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CM-110**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  September Rose | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Bishal Ghimire, Babita Sitaula, RIDS Brother Company, Inc. | C23-02613 |

10. c.  Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | ☒ | ☒ Mediation session not yet scheduled<br>☐ Mediation session scheduled for  *(date):*<br>☐ Agreed to complete mediation by *(date):*<br>☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date):*<br>☐ Agreed to complete settlement conference by *(date):*<br>☐ Settlement conference completed on *(date):* |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for  *(date):*<br>☐ Agreed to complete neutral evaluation by *(date):*<br>☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for  *(date):*<br>☐ Agreed to complete judicial arbitration by *(date):*<br>☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for  *(date):*<br>☐ Agreed to complete private arbitration by  *(date):*<br>☐ Private arbitration completed on  *(date):* |
| (6) Other *(specify):* | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for  *(date):*<br>☐ Agreed to complete ADR session by *(date):*<br>☐ ADR completed on  *(date):* |

**CM-110**

| PLAINTIFF/PETITIONER:  September Rose | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Bishal Ghimire, Babita Sitaula, RIDS Brother Company, Inc. | C23-02613 |

**11. Insurance**

    a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

    b. Reservation of rights: ☐ Yes ☐ No

    c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

    a. ☐ There are companion, underlying, or related cases.

        (1) Name of case:

        (2) Name of court:

        (3) Case number:

        (4) Status:

        ☐ Additional cases are described in Attachment 13a.

    b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

    a. ☐ The party or parties have completed all discovery.

    b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| <u>Party</u> | <u>Description</u> | <u>Date</u> |
|---|---|---|
| Plaintiff | Written Discovery | Per Code |

    c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

**CM-110**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  September Rose | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Bishal Ghimire, Babita Sitaula, RIDS Brother Company, Inc. | C23-02613 |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*
s

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: 2/7/25

Steven H. Cross
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

**EXHIBIT C6**

## Superior Court of California, Contra Costa County

CV - Martinez-Wakefield Taylor Courthouse
725 Court Street
Martinez CA  94553
925-608-1000
www.cc-courts.org



K. Bieker
Court Executive Officer

| CASE NAME: | VS.  WALNUT CREEK SCHOOL DISTRICT | CASE NUMBER:<br>C24-02211 |
|---|---|---|

1. NOTICE IS HEREBY GIVEN THAT A CASE MANAGEMENT CONFERENCE IS SET IN THE ABOVE ENTITLED CASE AND WILL BE HELD IN THIS COURT ON:

| HEARING DATE:<br>02/14/2025 | HEARING TIME:<br>8:30 AM | HEARING LOCATION:<br>DEPARTMENT 09<br>725 COURT ST  RM 305  MARTINEZ, CA 94553 |
|---|---|---|

THIS FORM, A COPY OF THE NOTICE TO DEFENDANTS, THE ADR INFORMATION SHEET, A BLANK CASE MANAGEMENT STATEMENT, AND A BLANK ADR CASE MANAGEMENT STIPULATION AND ORDER FORM ARE TO BE SERVED ON OPPOSING PARTIES.  ALL PARTIES SERVED WITH SUMMONS AND COMPLAINT/CROSS-COMPLAINT OR THEIR ATTORNEY OF RECORD MUST APPEAR.

2. YOU MAY STIPULATE TO AN EARLIER CASE MANAGEMENT CONFERENCE. IF ALL PARTIES AGREE TO AN EARLY CASE MANAGEMENT CONFERENCE, PLEASE CONTACT THE COURT CLERK'S OFFICE AT (925)608-1000 FOR UNLIMITED CIVIL AND LIMITED CIVIL CASES FOR ASSIGNMENT OF AN EARLIER DATE.

3. YOU MUST BE FAMILIAR WITH THE CASE AND BE FULLY PREPARED TO PARTICIPATE EFFECTIVELY IN THE CASE MANAGEMENT CONFERENCE AND TO DISCUSS THE SUITABILITY OF THIS CASE FOR THE EASE PROGRAM, PRIVATE MEDIATION, BINDING OR NON-BINDING ARBITRATION, AND/OR USE OF A SPECIAL MASTER.

4. AT ANY CASE MANAGEMENT CONFERENCE THE COURT MAY MAKE PRETRIAL ORDERS INCLUDING THE FOLLOWING:
   a) AN ORDER ESTABLISHING A DISCOVERY SCHEDULE
   b) AN ORDER REFERRING THE CASE TO ARBITRATION
   c) AN ORDER TRANSFERRING THE CASE TO LIMITED JURISDICTION
   d) AN ORDER DISMISSING FICTITIOUS DEFENDANTS
   e) AN ORDER SCHEDULING EXCHANGE OF EXPERT WITNESS INFORMATION
   f) AN ORDER SETTING SUBSEQUENT CONFERENCE AND THE TRIAL DATE
   g) AN ORDER CONSOLIDATING CASES
   h) AN ORDER SEVERING TRIAL OF CROSS-COMPLAINTS OR BIFURCATING ISSUES
   i) AN ORDER DETERMINING WHEN DEMURRERS AND MOTIONS WILL BE FILED

### SANCTIONS

IF YOU DO NOT FILE THE CASE MANAGEMENT STATEMENT OR ATTEND THE CASE MANAGEMENT CONFERENCE OR PARTICIPATE EFFECTIVELY IN THE CONFERENCE, THE COURT MAY IMPOSE SANCTIONS (INCLUDING DISMISSAL OF THE CASE AND PAYMENT OF MONEY).

**SUPERIOR COURT OF CALIFORNIA, CONTRA COSTA COUNTY**

I DECLARE UNDER PENALTY OF PERJURY THAT I AM NOT A PARTY TO THE WITHIN ACTION OR PROCEEDING; THAT ON THE DATE BELOW INDICATED, I SERVED A COPY OF THE FOREGOING NOTICE BY DEPOSITING SAID COPY ENCLOSED IN A SEALED ENVELOPE WITH POSTAGE THEREON FULLY PREPAID IN THE UNITED STATES MAIL AT MARTINEZ, CALIFORNIA AS INDICATED ABOVE.

DATE:    8/22/2024                           BY:

C.  JACALA, DEPUTY CLERK

## Superior Court of California, Contra Costa County

CV - Martinez-Wakefield Taylor Courthouse
725 Court Street
Martinez CA  94553
925-608-1000
www.cc-courts.org



K. Bieker
Court Executive Officer

NOTICE OF HEARING HAS BEEN PRINTED FOR THE FOLLOWING ATTORNEYS/FIRMS OR PARTIES FOR CASE NUMBER: C24-02211 ON 8/22/2024:


STEVEN H. CROSS
1555 BOTELHO DR STE 149
WALNUT CREEK CA  94596

**EXHIBIT C7**

## Superior Court of California, Contra Costa County

Department 09
925-608-1000
www.cc-courts.org



K. Bieker
Court Executive Officer

| | MINUTE ORDER | |
|---|---|---|
| | VS.  WALNUT CREEK SCHOOL | C24-02211 |
| **DISTRICT** | | **HEARING DATE: 02/14/2025** |

PROCEEDINGS:    *CASE MANAGEMENT CONFERENCE

DEPARTMENT 09                                    CLERK: BROOKE POOL
JUDICIAL OFFICER: JOHN P DEVINE        COURT REPORTER: NOT REPORTED

JOURNAL ENTRIES:

   **APPEARANCES**:
   COUNSEL: STEVEN CROSS APPEARS REMOTELY VIA ZOOM.

   **PROCEEDINGS**:
   NOT REPORTED.
   VIRTUAL HEARING.
   COUNSEL IS WAITING FOR THE GUARDIAN AD LITEM ORDER TO BE SIGNED BY THE COURT AND
   THEN SUMMONS CAN BE ISSUED.
   THE COURT WILL SIGN SHORTLY.
   THE COURT SETS A FURTHER CASE MANAGEMENT CONFERENCE.
   PLAINTIFF TO NOTICE DEFENDANT.

FUTURE HEARING(S):

JULY 17, 2025 8:30 AM
FURTHER CASE MANAGEMENT CONFERENCE
DEPARTMENT 09

DATED: 2/14/2025                          BY:_____

                                                      B.  POOL, DEPUTY CLERK

**EXHIBIT C8**

**DE-351/GC-101**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 316147 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Steven H. Cross | | |
| FIRM NAME: Law Office of Steven H. Cross | | |
| STREET ADDRESS: 1555 Botelho Dr., Ste. 149, | | |
| CITY: Walnut Creek    STATE: CA    ZIP CODE: 94596 | | |
| TELEPHONE NO.: (925) 263-6687    FAX NO.: | | |
| EMAIL ADDRESS: steven@scrosslaw.com | | |
| ATTORNEY FOR (name): Plaintiff | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
STREET ADDRESS: 725 Court Street,
MAILING ADDRESS:
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME:

MATTER OF (name):
v. Walnut Creek School District

☐ DECEDENT    ☐ CONSERVATEE    ☒ MINOR

F I L E D

FEB 18 2025

K. BEKKER CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By: C. Padilla, Deputy Clerk

| ORDER APPOINTING GUARDIAN AD LITEM—PROBATE    ☒ EX PARTE | CASE NUMBER: C24-02211 |
|---|---|

1. The court has considered the petition for appointment of a guardian ad litem for *(name of person to be represented):*

   filed by *(name of petitioner):* Serina Santoleri
   on *(date):* August 15, 2024    .

2. The person for whom appointment of a guardian ad litem is requested is *(check one):*

   a. ☒ A minor *(date of birth):* August 29, 2011
   b. ☐ A person who lacks legal capacity to make decisions.
   c. ☐ An unborn person.
   d. ☐ An unascertained person or a designated class of unascertained persons or persons who are not in being.
   e. ☐ A person whose identity or address is unknown.

**THE COURT FINDS**

3. a. ☒ Notice has been given as required by law.
   b. ☐ For good cause, notice does not need to be given to the following persons *(name all):*

4. Representation of the interest of the person to be represented would be inadequate without appointment of a guardian ad litem.

**THE COURT ORDERS**

5. *(Name):* Serina Santoleri
   is hereby appointed guardian ad litem for *(name).*

6. The guardian ad litem ☐ is    ☒ is *not*    authorized to waive or disclaim any substantive rights of the represented person without further order of this court.

7. The guardian ad litem must promptly report to the court any potential conflict of interest with the represented person that ripens into an actual conflict as well as any new potential or actual conflict of interest that arises during the course of the representation.

8. ☐ Other orders *(specify):*

☐ Continued on Attachment 8.

9. Number of pages attached: _____

Date:

**FEB 14 2025**

JOHN P. DEVINE
SIGNATURE OF JUDICIAL OFFICER
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

Page 1 of 1

| Form Adopted for Mandatory Use
Judicial Council of California
DE-351/GC-101 [Rev. January 1, 2024] | **ORDER APPOINTING GUARDIAN AD LITEM—PROBATE** | Probate Code, § 1003
www.courts.ca.gov |

**EXHIBIT C9**

**SUM-100**

# SUMMONS
## *(CITATION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WALNUT CREEK SCHOOL DISTRICT, a public entity, and DOES 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
███████████, a minor, by and through his Guardian ad Litem, SERINA SANTOLERI, an individual,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Contra Costa Superior Court

725 Court Street, Martinez, CA 94553

**CASE NUMBER:**
*(Número del Caso):*
C24-02211

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Steven H. Cross, SBN 316147, 1555 Botelho Dr., Ste. 149, Walnut Creek, CA 94596, (925) 263-6687

DATE: 3/3/2025 4:49 PM          Clerk, by /s/ L. Smith          , Deputy
*(Fecha)*          *(Secretario)*          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*