United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

B.L.S.,

Plaintiff,

v.

WALNUT CREEK SCHOOL DISTRICT,

Defendant.

Case No. 25-cv-05378-PHK

**ORDER ON DISCOVERY DISPUTES RE: MENTAL EXAMINATION OF PLAINTIFF B.L.S.**

Re: Dkts. 50, 51

## INTRODUCTION

Plaintiff B.L.S. ("Plaintiff"), a minor, brings this action against Defendant Walnut Creek School District ("Defendant" or "WCSD") alleging violations of both federal and state law relating to alleged incidents (and resulting harms) at Plaintiff's school. [Dkt. 1]. All Parties have consented to magistrate judge jurisdiction over this case. [Dkts. 6, 9]. Now before the Court are two Discovery Letter Briefs filed independently by each Party (instead of the Joint Discovery Letter Brief required by the Court's Standing Discovery Order) concerning the proposed mental examination of Plaintiff. [Dkts. 50, 51]. The Court finds the disputes herein suitable for resolution without oral argument and resolves the disputes as set forth herein. *See* Civil L.R. 7-1(b).

## LEGAL STANDARD

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to

United States District Court
Northern District of California

tailor discovery narrowly and to dictate the sequence of discovery”). For example, the Court may limit the scope of any discovery method if it determines that “the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.” Fed. R. Civ. P. 26(b)(2)(C)(i).

The relevant legal standards for discovery are well-known. Rule 26(b)(1) delineates the scope of discovery in federal civil actions and provides that “[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.” Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass “any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.” *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) (“Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.”) (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) (“Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries.”). Information, even if relevant, must be “proportional to the needs of the case” to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: “The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse.” Fed. R. Civ. P. 26 advisory committee’s note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers “the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

With regard to proportionality, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (*citing Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

///

## DISCUSSION

The current dispute revolves around a proposed Stipulation which covers the manner and scope of the mental examination and interview of Plaintiff B.L.S. which the Parties were negotiating but were reportedly incompetent to finalize. A copy of the proposed Stipulation is attached to Defendant's Letter Brief. [Dkt. 50 at 4-8]. As noted above, the Parties could not even cooperate in filing the standard Joint Discovery Letter Brief on their disputes, but rather required Court intervention to order the parties to file their portions of the Discovery Letter Brief separately. [Dkts. 48-49].

### I. LENGTH OF EXAMINATION

The primary dispute between the Parties concerns the length of time for the mental examination of B.L.S. by Defendant's expert (including testing, interview and self-reporting questionnaires). The Parties do not dispute that this process will go forward, nor do they dispute the location or manner of recording. The Parties agree that the total time spent shall exclude time for breaks and that Plaintiff will be able to take reasonable breaks as needed.

Defendant requests seven hours total to complete the examination and interview. [Dkt. 50 at 2]. Plaintiff argues that seven hours is "unreasonable, unrealistic, and unnecessary." [Dkt. 51 at 2]. Plaintiff's expert estimates that the time needed for the tests to be performed totals a maximum of 1.5 hours and thus argues that five or more hours for the remaining portion (including the interview) "would be grueling" and objectionable. *Id.* Plaintiff requests that the total time be limited to three hours (excluding breaks). *Id.* at 3.

Defendant admits that "we understand that most examinations can be completed within five hours" but argues that "the examiner requires that a total of seven hours be allocated for the exam, including the time needed for the self-reporting questionnaires and excluding breaks." [Dkt. 50 at 2]. Defendant provides no reasons why the examiner "requires" a total of seven hours. According to Plaintiff, "Plaintiff has asked that Dr. Shaw [Defendant's expert] provide a more realistic timeframe, but Defendant is not willing to compromise." [Dkt. 51 at 2].

Negotiating length of time for examinations is a discovery-related task which the Court expects competent counsel to resolve without the need for Court intervention. This is particularly

true where (as here) the Plaintiff is a minor, and the examination involves known tests which are not objected to.

Applying the legal standards enunciated above and taking into consideration the Parties' representations in briefing (particularly Defendant's admission that most examinations can be completed in under five hours), the Court determines, in the full exercise of discretion, that the total time limit for this examination (including the testing, interview, and questionnaires) shall be limited to four and one half (4.5) hours, excluding time for breaks. Accordingly, the phrase "up to 7 hours" in Paragraph 3 of the proposed Stipulation shall be edited to read "up to four and one-half (4.5) hours." The Court notes that this is a maximum time limit and the Court trusts that Defendant's expert will use reasonable, professional efforts to complete the process in less than the maximum time if possible and will not unduly extend the time simply to reach the maximum.

## II. DISPUTES AS TO SPECIFIC CLAUSES OF THE PROPOSED STIPULATION

The Parties raise a handful of disputes regarding specific clauses in the proposed Stipulation defining the topics for Defendant's expert's interview of Plaintiff. As with the time limitation issue above, the Court is disappointed that counsel were incapable of reaching a compromise on these clauses. This is the kind of dispute which the Court expects experienced, knowledgeable attorneys to be able to negotiate and resolve without intervention of the Court – particularly where (as here) virtually all other issues surrounding this examination were resolved by negotiation. Because the Parties seek the Court's ruling on these issues, however, the Court rules in light of the legal standards enunciated above.

### A. Paragraph 9

In the proposed Stipulation and briefing, the Parties agree that Defendant's medical expert will perform an interview with Plaintiff B.L.S., but Plaintiff's counsel objects to the following two "topics of inquiry" as listed in Paragraph 9 of the proposed Stipulation: "c. Background" and "e. General medical history." *Id.* at 1-2. Plaintiff argues that "Background" is overly vague as a "topic of inquiry" during the interview with no further elaboration. *Id.* at 2. As to "General medical history," Plaintiff concedes that Defendant's expert "can ask about the past as it relates to Plaintiff's claims." *Id.* at 1-2. But, Plaintiff objects to the extent this phrase is relied upon as grounds for a

United States District Court
Northern District of California

wide-ranging topic of inquiry (apparently because of the genericness of the term "General").

In briefing, Defendant states that the interview "will be limited to psychological, psychiatric, mental and/or emotional conditions placed in controversy by Plaintiff, details of the symptoms of those conditions, and relevant background information to assess the sources of Plaintiff's alleged psychological, psychiatric, mental, and/or emotional conditions." [Dkt. 50 at 2].

In view of the Parties' representations in briefing, there does not actually appear to be a substantive disagreement between the Parties and that this dispute stems from either mistrust or the inability to draft more specific language to address the concerns over overbreadth (and thus lack of proportionality). Accordingly, the Court determines, in the full exercise of discretion, that Paragraph 9(c) shall be edited to read as follows: "c. Relevant background information relating to the issues in this case, including background relevant to the sources of Plaintiff's alleged psychological, psychiatric, mental, and/or emotional conditions."

Further, the Court determines that Paragraph 9(e) in the Stipulation shall be edited to read as follows: "Medical history relevant to the psychological, psychiatric, mental and/or emotional conditions placed in controversy by Plaintiff and medical history relevant to assess the sources of Plaintiff's alleged psychological, psychiatric, mental, and/or emotional conditions."

### B. Paragraph 10

Next, Plaintiff argues that the following phrase in Paragraph 10 of the proposed Stipulation is in some way contradictory to the limitations on the scope of the examination discussed in Paragraphs 8 and 9: "The scope of the examination shall be . . . limited to the areas that are relevant, in the opinion of Dr. Shaw [Defendant's expert], based upon his education, training and experience[.]" [Dkt. 51 at 1-2; Dkt. 50 at 7]. Plaintiff argues that opening up the examination to any area that Defendant's expert subjectively deems relevant is improper and risks avoiding the specific limitations drafted in Paragraphs 8 and 9. [Dkt. 51 at 1].

Defendant's portion of this Discovery Letter Brief does not address this issue directly. Based on the overall tenor of Defendant's arguments, the Court is not convinced that Defendant intended this language in Paragraph 10 to provide an end-run around the specific limitations in Paragraphs 8 and 9. As noted above, this appears to be a dispute based on mistrust and stemming from an inability

United States District Court
Northern District of California

to draft more precise language.

Accordingly, in the exercise of discretion, the Court determines that the second clause of Paragraph 10 shall be edited to read as follows: "limited to the areas that are relevant to this lawsuit and Dr. Shaw shall use his education, training, and experience to comply with the specific limitations set forth herein[.]"

**C. Paragraph 11**

Plaintiff raises two ancillary drafting issues for which there appears to be no dispute based on the briefing. In Paragraph 11, according to Plaintiff, the Parties latest exchanged version of the Stipulation included the following language in bold which is missing from the version of the Stipulation provided as an exhibit to Defendant's portion of the instant Discovery Letter Brief: "A copy of the recordings will be provided to counsel within **ten (10) days** of the examination." *Id.* at 2 (emphasis in original). Defendant's portion of the Discovery Letter Brief does not address this issue specifically.

In the exercise of discretion, the Court determines that the second sentence of Paragraph 11 shall be edited to read as follows: "A copy of the recordings referenced in this Paragraph 11 will be provided to counsel for Plaintiff, upon written request, within a reasonably prompt time agreed to by the Parties after the date of such request (where delivery of the copy within a period of up to ten (10) business days after the date of such request shall be presumptively deemed to be reasonably prompt)."

**D. Paragraph 12**

Similarly, Plaintiff asserts that the first sentence of Paragraph 12 of the Stipulation originally read as follows: "**Plaintiff will be provided** with a copy of the written report within 30 days from the date of the examination." *Id.* (emphasis in original). The first sentence of Paragraph 12 in the version of the Stipulation provided to the Court reads as follows: "If Plaintiff requests a copy of the written report of the examination, it will be provided 30 days from the date of the examination." [Dkt. 50 at 7]. Defendant's portion of the Discovery Letter Brief does not address this issue specifically.

A review of the language requested by Plaintiff and the version provided to the Court reveals

no major substantive difference, other than to include language that requires Plaintiff to simply request a copy of the report (a request entirely within Plaintiff's control and not burdensome). The Court notes that the disputed language here implicitly assumes that the Plaintiff will request a copy of the report promptly at or immediately after the examination but does not account for delays in the preparation of the report or for delays in making the request.

Accordingly, in the exercise of discretion, the Court determines that the first sentence of Paragraph 12 shall be edited to read as follows: "If Plaintiff reasonably promptly at or after the examination requests in writing a copy of the written report of the examination, such copy shall be provided to Plaintiff within thirty (30) days from the date of the examination (assuming Defendant's expert competently and diligently completes the report within that time frame) or within any other reasonably prompt deadline agreed to by the Parties after the date of such request (if, for good cause shown at the time, the report is not completed by the Defendant's expert within thirty days of the examination, then delivery of the copy within a period of up to seven (7) calendar days after the completion of the written report shall be presumptively deemed to be reasonably prompt)."

## CONCLUSION

The Court will issue a separate Order based on the proposed Stipulation which incorporates the edits discussed herein. To the extent the Court refers to the Parties' proposed Stipulation herein, those same comments and directives apply to the separate Order (based on the proposed Stipulation) which will issue.

The Court **ORDERS** the Parties and their counsel to communicate reasonably and promptly to finalize the date and location of the examination, and **ORDERS** the Parties to file by August 21, 2026, a Joint Status Report on the finalizing of the scheduling and logistics of the examination.

The Court further **ORDERS** the Parties to file within seven business days of the completion of the examination a Further Joint Status Report, to report on the completion of the examination and to report on the schedule for follow up such as providing copies of recordings, reports, and other materials as contemplated by the Parties' proposed Stipulation.

This Order **RESOLVES** Dkts. 50 and 51.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: August 18, 2026

PETER H. KANG
United States Magistrate Judge